UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Boris A. Miksic, | ) | Court File No. 15-cv-00539-JRT-BRT |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANTS' MEMORANDUM** |
| v. | ) | **OF LAW IN SUPPORT OF THEIR** |
| | ) | **MOTION FOR SUMMARY** |
| Boeckermann Grafstrom Mayer, LLC, a | ) | **JUDGMENT** |
| Minnesota limited liability company, f/k/a | ) | |
| Johnson, West & Co. P.L.C., Boeckermann | ) | |
| Grafstrom Mayer, P.A., and Johnson West | ) | |
| & Co. P.L.C. | ) | |
| | ) | |
| Defendants. | ) | |

_____

The above-named defendants respectfully submit this Memorandum of Law in

Support of Their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure.  For the reasons discussed below, this Court properly grants the

defendants' Motion on all claims and dismisses Plaintiff Boris A. Miksic's ("Miksic")

Complaint, in its entirety and with prejudice, as a matter of law.

## I.  INTRODUCTION

This is a professional malpractice action against the defendants – an accounting

firm.[1]  With his Complaint, Miksic seeks compensation for damages he allegedly

_____

[1] In October of 2012, Johnson, West & Co. P.L.C. ("JW") merged with Boeckermann
Grafstrom Mayer, LLC ("BGM").  (*See Infra* fn. 2, Ex. 1, Parnell Dep., 31:19-32:2).  All
of Miksic's claims in this lawsuit relate to JW's work with Miksic prior to the merger.
There are no facts to support any liability findings against Boeckermann Grafstrom
Mayer, P.A.

sustained from the defendants' work in preparing his U.S. tax filings for tax years 2005 through 2010. Specifically, Miksic claims the defendants were negligent in preparing and filing U.S. tax forms 5471, 3520 and 3520-A, and TD F 90-22.1 ("FBAR"), and, as a result, he incurred IRS penalties and professional fees to correct his filing errors. All of Miksic's claims against the defendants fail as a matter of law.

As a threshold matter, Miksic's claims are all barred by the statute of limitations. According to Miksic and his causation and liability expert, Arthur H. Cobb ("Cobb"), the defendants' errors, and any damages associated with those errors, began in at least April 2006 with Miksic's 2005 tax year filings and were continuous in nature through at least his 2010 tax year filings made in 2011. Due to the continuing nature of the errors and damages from 2006 and onward, Miksic's alleged claims accrued in April 2006 with his 2005 tax year filings and the applicable six-year statute of limitations ended in 2012 – two years before Miksic commenced his lawsuit in 2014.

Further, all of Miksic's claims require expert testimony. Miksic, however, failed to provide the meaningful disclosures required by Minn. Stat. § 544.42 and his claims are now barred. Moreover, even if Miksic had met the strict requirements of Minn. Stat. § 544.42, his expert, Cobb, is not qualified to render an expert opinion in this case involving professional tax preparation issues and his testimony is necessarily excluded under Federal Rules of Evidence 702 and 403.

Additionally, even if the Court does not dismiss Miksic's time-barred claims and even if the Court allows Cobb to testify in this case, Miksic's claims are still barred by the doctrines of *in pari delicto* and laches.

-2-

For all of the reasons set forth by the defendants, this Court properly grants the defendants' motion for summary judgment and dismisses Miksic's Complaint in its entirety with prejudice.

Finally, even if Miksic could proceed with this lawsuit, which this Court properly determines that he cannot, his claims are still limited by the applicable statute of limitations and his alleged damages are also necessarily limited and cannot include any FBAR penalties, delinquent tax liabilities, or attorneys' fees for his tax court appeal and this lawsuit.

## II.    PROCEDURAL POSTURE

On November 20, 2014, Miksic signed a verified Minnesota state court complaint and served the defendants. Defendants removed Miksic's state court action to the United States District Court for the District of Minnesota on December 22, 2014. (*See* Civil Dkt. for Case No. 14-CV-05047-DWF-TNL). The parties stipulated for dismissal of that action on February 17, 2015, and it was dismissed without prejudice on February 18, 2015.

On February 18, 2015, Miksic refiled this action before this Court. (*See* Civil Dkt. for Case No.: 0:15-CV-00539-JRT-BRT). In his Complaint, Miksic asserted five claims against the defendants for: (1) accounting malpractice (Count 1); (2) breach of contract (Count 2); (3) unjust enrichment (Count 3); (4) negligent misrepresentation (Count 4); and (5) breach of fiduciary duty (Count 6) (sic). (*See generally*, Dkt. No. 1, Complaint). All of Miksic's claims relate to his allegations that the defendants breached their professional duties by: (1) improperly investigating and preparing his tax returns which

121697189v2 0966517

resulted in his late filing of IRS form 5741 to disclose his involvement with foreign corporations; (2) missed filing of forms 3520 and 3520A to disclose his involvement with a foreign trust; and (3) missed FBAR filings to disclose his interest in foreign financial accounts. (Ex. 2, Miksic Dep., 55:13-61:15, 108:16-109:13, 110:7-111:22).[2] Miksic is now seeking recovery of IRS penalties and interest relating to his U.S. tax form filings for tax years 2005 through 2010, plus fees, expenses, and costs to correct his U.S. tax form filings. (*See generally*, Dkt. No. 1, Complaint).

Defendants answered Miksic's Complaint on March 9, 2015. (Dkt. No. 5, Answer). Fact discovery closed on March 14, 2016, and expert discovery closed on May 27, 2016. (Dkt. No. 19, Scheduling Order). Defendants now move for summary judgment under Rule 56 on all of Miksic's claims.

### III.   ISSUES

A.   Can Miksic maintain his lawsuit when his claims are barred by the statute of limitations?

B.   Can Miksic maintain his lawsuit when he did not comply with Minnesota Statute § 544.42?

C.   Can Miksic maintain his lawsuit when his causation and liability expert is precluded from testifying at trial?

D.   Can Miksic maintain his lawsuit when the doctrines of *in pari delicto* and laches bar any recovery?

E.   Even if Miksic could maintain this lawsuit, are his claims and damages necessarily limited?

---

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Michael T. Berger ("Berger Dec.").

# IV.   STATEMENT OF UNDISPUTED FACTS

## A.    The Subject U.S. Tax Forms.

All of the claims in Miksic's Complaint relate to the preparation of U.S. tax documents filed with the IRS and U.S. Treasury Department, including Forms 5471, 3520 and 3520-A, and FBAR for tax years 2005 through 2010. (*See generally*, Dkt. No. 1, Complaint and Exhibits G, H, and I attached thereto; Dkt. 27-16, Miksic Ex. 23).

Under 26 U.S.C. § 6038, a U.S. taxpayer with ownership interests in a foreign corporation may be required to file Form 5471, entitled "Information of U.S. Persons with Respect to Certain Foreign Corporations" with his or her U.S. federal tax returns. *See Enesco Group, Inc. v. Campanaro*, No. 07-B-565, 2013 WL 4045756, *2 (Bankr. N.D. Ill. Aug. 8, 2013).  This form must be filed by April 15 of each calendar year with respect to foreign corporation involvement during the previous calendar year.[3]

Under 26 U.S.C. § 6048, a U.S. taxpayer who owns a foreign trust is required to file Form 3520, entitled "Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts," with his or her U.S. federal income tax returns.  *See James v. U.S.*, No. 11-CV-271, 2012 WL 3522610, *2 (M.D. Fla. Aug. 14, 2012).  A trust owned by a U.S. taxpayer must file Form 3520A, entitled "Annual Information Return of Foreign Trust with a U.S. Owner" with the owners' U.S. federal income tax

---

[3] *See* www.irs.gov/instructions/i5471/ch01.html#d0e99, last visited July 13, 2016 ("Attach Form 5471 to your income tax return (or, if applicable, partnership or exempt organization return) and file both by the due date (including extensions) for that return").

121697189v2 0966517

returns.  *Id*.  These forms must be filed by April 15 of each calendar year with respect to foreign trust involvement during the previous calendar year.[4]

Under 31 U.S.C. § 5314(a), a U.S. taxpayer with any financial interests in any bank, securities, or other financial accounts in a foreign country may be required to file Form TD F 90-22.1, entitled "Report of Foreign Bank and Financial Accounts" or FBAR, with the U.S. Department of Treasury.  *See U.S. v. Williams*, No. 10-2230, 2012 WL 2948569, *1 (4th Cir. July 20, 2012).  The FBAR must be filed on or before June 30 of each calendar year with respect to foreign financial accounts maintained during the previous calendar year.  *Id*.

**B.    Miksic and His Relationship to Defendants.**

Miksic is an engineer by training and an accomplished businessman.  He completed his doctoral thesis in polymer chemistry and completed an MBA program through Harvard University.  (Ex. 2, Miksic Dep., 14:24-18:13).  He has started, operated, sold, and acquired multi-million dollar domestic and foreign tech companies.  (*Id*.,18:24-25:17, Ex. 15, Miksic Ex. 1, pp. 57, 79-80).  Additionally, he has successfully supported himself financially through only his own stock investment strategies.  (Ex. 2,

---

[4] *See* www.irs.gov/instructions/i3520/ch01.html#d0e147, last visited on July 13, 2016 ("In general, Form 3520 is due on the date that your income tax return is due, including extensions."); *see* www.irs.gov/instructions/i3520a/ch01.hotml#d0e67, last visited on July 13, 2016 (File a complete Form 3520-A (including the statements on pages 3 and 4) with the Internal Revenue Service Center, P.O. Box 409101, Ogden, UT 84409, by the 15th day of the 3rd month after the end of the trust's tax year.").

121697189v2 0966517

Miksic Dep., 38:19-39:21).  Miksic claims he can handle cash "like a magician." (Ex. 15, Miksic Ex. 1, p. 49).

Miksic first started working with the defendants when he purchased one of his U.S. companies in 1988, and hired them to work on his personal U.S. tax returns that same year.  (Ex. 2, Miksic Dep., 49:9-50:18).  Defendants sent engagement letters to Miksic each year for their tax preparation work.  (*Id*., 50:19-52:18, 57:5-60:3; Dkt. 27-4, Miksic Ex. 4).

## C.    Defendants Followed Established Tax Preparation Procedures For the Relevant Tax Years 2005 through 2010.

At all times relevant, the defendants had an established tax preparation procedure that they would follow when preparing a client's taxes.  According to Cory Parnell, CEO of BGM, in January of each year for the relevant years 2005 through 2010, JW's administrative staff sent engagement letters to its clients for tax preparation. (Ex. 1, Parnell Dep., 36:7-12; Dkt. 27-4, Miksic Ex. 4).  JW's engagement letters included a questionnaire, which asked for information potentially useful for tax preparation.  (Ex. 1, Parnell Dep., 107:20-108:7; Dkt. 27-4, Miksic Ex. 4).

After JW sent out its engagement letters and questionnaires, it began collecting documents and information from its clients as part of its tax preparation process.  JW's tax preparation process relied on three levels of CPAs reviews from preparers, reviewers, and the relationship partner.  (Ex. 1, Parnell Dep., 24:1-22).  JW's preparers collected client information and drafted tax documents using client-provided information and information from the client's previous tax returns.  (*Id*., 25:22-27:8, 40:5-9).  Once the

-7-

preparer completed a draft return, the preparer would then send the tax documents to a CPA reviewer. JW's reviewers would then review the draft tax documents, and all supporting information, including previous year's tax documents for accuracy, and determine whether any additional information was needed from the client. (*Id.*, 44:15-24; Ex. 3, Edmunds Dep., 35:13-39:20). During this process, JW's reviewers paged through the current year tax information from the client and compared it to the draft return. If the reviewer had any questions, the reviewer would go back to the preparer and determine if there was any additional information needed from the client. (Ex. 1, Parnell Dep., 45:2-5). Once the reviewer was satisfied that all tax questions had been answered, the reviewer would approve the tax documents and send them on to the client relationship partner for a final accuracy review. (*Id.*, 45:7-46:6). During this final review, JW's client relationship partners would have follow-up conversations with the client to discuss any tax issues or positions before the returns were finalized. (*Id.*, 47:11-21). After completing this process, JW would send the finalized tax documents to the client for review, signature, and filing. JW did not file their clients' returns. (*Id.*, 81:12-17).

**D.      JW Followed its Tax Preparation Process and Properly Investigated Miksic's Financial Information for Tax Document Preparation.**

Consistent with the process set forth above, each year for relevant tax years 2005 through 2010, JW sent engagement letters and questionnaires to Miksic. The engagement letters spelled out both JW's and Miksic's obligations. Specifically, these letters to Miksic stated:

-8-

We will prepare your 2006 federal and requested state income tax returns from information that you will furnish to us. We will not audit or otherwise verify the data you submit, although it may be necessary to ask you for clarification of some of the information. We will furnish you with questionnaires and/or worksheets to guide you in gathering the necessary information. Your use of such forms will assist in keeping pertinent information from being overlooked.

It is your responsibility to provide all the information required for the preparation of complete and accurate returns. You should retain all the documents, cancelled checks, and other data that form the basis of income and deductions. These may be necessary to prove the accuracy and completeness of the returns to a taxing authority. **You have the final responsibility for the income tax returns and, therefore, you should review them carefully before you sign them.**

* * *

If the foregoing fairly sets forth your understanding of the terms of our engagement, please sign the enclosed copy of this letter in the space indicated and return it to our office.

(Ex. 2, Miksic Dep., 57:5-58:5; Dkt. 27-4, Miksic Ex. 4 (emphasis in original)). Miksic received and signed JW's engagement letters. (Ex. 2, Miksic Dep., 57:5-14; Dkt. 27-4, Miksic Ex. 4, p. BGM018045).

A questionnaire was attached to the engagement letters sent to Miksic. The questionnaire specifically asked Miksic the following:

**Income Information**

Did you have any foreign income or pay any foreign taxes during the year?

* * *

**Miscellaneous Information**

* * *

> Were you a grantor or transferor for a foreign trust, have an interest in or a signature or other authority over a bank account, securities account, or other financial account in a foreign country?

(*Id.*, BGM018047-48).

Miksic gave JW's engagement letters and questionnaires to Angie McGillivray ("McGillivray"), the CFO of Miksic's S-Corporation, Cortec Corporation ("Cortec"). She was responsible for providing all requested information to JW.[5] (Ex. 2, Miksic Dep., 62:19-23, 64:24-65:6); Ex. 4, McGillivray Dep., 33:10-34:9). According to Miksic, McGillivray was fully aware of all of his personal financial information, including his involvement with any foreign bank accounts. (Ex. 2, Miksic Dep., 85:8-12). Miksic relied on McGillivray to provide JW with any financial information needed for his tax preparation. (*Id.*, 48:23-49:8). For relevant tax years 2005 through 2010, Miksic gave McGillivray information to give to JW for his tax filings, and if JW needed any personal financial information from him, they could go to McGillivray and get it as well. (*Id.*, 49:4-8, 63:4-64:12, 136:15-18, 141:24-142:1; Ex. 4, McGillivray Dep., 32:24-33:17).

CPA Ryan Schumacher ("Schumacher") was JW's preparer for Miksic's tax documents for tax years 2005 and 2006. (Ex. 1, Parnell Dep., 41:10-13). CPA Nate

---

[5] McGillivray, who is also a CPA, also assists Miksic with most of his personal financial matters. (Ex. 2, Miksic Dep., 46:20-24, 47:12-13, 48:19-22). Importantly, before she worked for Miksic, McGillivray was a CPA and tax preparer with JW. (*Id.*, 47:6-13; Ex. 4, McGillivray Dep., 16:25-17:12, 18:2-22:10).

121697189v2 0966517

Panning ("Panning") was JW's preparer for Miksic's tax documents for tax years 2007 through 2010. (*Id.*, 41:14-16). In keeping with Miksic's wishes and instructions, Schumacher, Panning, and Edmunds worked with McGillivray to obtain Miksic's financial information needed for tax preparation. (Ex. 3, Edmunds Dep., 55:17-56:7). McGillivray admittedly served as JW's primary source for Miksic's financial information and JW frequently contacted her for any information needed for Miksic's taxes. (Ex. 4, McGillivray Dep., 26:19-27:12, 33:25-34:4).

In addition to working with McGillivray to obtain Miksic's financial information for tax preparation as Miksic expected, Parnell met with Miksic each year to gather tax information and to discuss his business. (Ex. 1, Parnell Dep., 60:15-62:22; Ex. 2, Miksic Dep., 77:15-20). Parnell would then forward any information he obtained during these meetings to JW's preparers working on Miksic's taxes. (*Id.*).

Using the information obtained from Miksic and McGillivray, JW prepared and finalized Miksic's tax documents and then mailed them to Miksic with a transmittal letter providing instructions for his review.

**E.    Unbeknownst to JW, Miksic Refused to Review his Tax Documents Because his Time Was "A Bit More Valuable Than That."**

Once JW finalized Miksic's tax returns, it would send them to Miksic for review, along with a transmittal letter. JW's transmittal letters always included the following instruction:

> Please examine these returns carefully to fully acquaint yourself with all items contained therein to ensure that there are no omissions or misstatements.

-11-

(Dkt. 27-6, Miksic Ex. 5, p. BGM000180).

For each of the relevant tax years, Part III, "Foreign Accounts and Trusts", of Schedule B for Miksic's Form 1040 included the following "yes/no" questions:

> 7a. At any time during [tax year], did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?
>
> See page B-2 for exceptions and filing requirements for Form [FBAR].
>
> b. If "Yes" enter the name of the foreign country.
>
> 8. During [tax year], did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust?  If "Yes" you may have to file Form 3520.  See page B-2.

(*Id.*, p. BGM000185).  Miksic testified that these questions were substantially the same as the questions in JW's annual questionnaire included with its engagement letters.  (*Id.*, Ex. 2, Miksic Dep., 72:14-74:13; Dkt. 27-4, Miksic Ex. 4, pp. BGM18047-18048).

Despite JW's advice to read and examine his Form 1040 for omissions or misstatements, Miksic claims he never reviewed his tax documents before he signed and filed them because his time was "*a bit more valuable than that*" and because he didn't have the patience.  (Ex. 2, Miksic Dep., 96:7-97:23).  Instead of examining his tax documents as JW directed, Miksic relied on McGillivray to review his taxes and then he would simply sign them.  (*Id.*, 84:1-85:7).  *But Miksic never told McGillivray that he expected her to review his taxes and, as a result, she never did*.  (*Id.*, 40:5-9; Ex. 4, McGillivray Dep., 44:15-45:16).  McGillivray admitted that there may have been some miscommunication with Miksic regarding her responsibility for reviewing his taxes.  (Ex. 4, McGillivray Dep., 45:17-48:7).

121697189v2 0966517

**F.    Miksic Failed to Disclose to JW Critical Information Needed for His Taxes Despite JW's Investigation and Inquiry.**

On June 29, 2007, Schumacher (JW's preparer) sent McGillivray an email asking for information relating to Miksic's foreign accounts for tax year 2006. (Dkt. 27-7, Miksic Ex. 18). McGillivray forwarded Schumacher's email to Miksic and he responded by identifying two financial accounts at Partner Banka in Croatia. (*Id.*; Ex. 2, Miksic Dep., 133:18-135:19; Ex. 4, McGillivray Dep., 64:11-66:24). Miksic, however, did not tell JW about his other foreign accounts, including six other separate financial accounts at UBS in Switzerland, Partner Banka in Croatia, Erste & Steiermarkische Bank in Croatia, and Zagrebacka Banka in Croatia, because he was traveling and he did not have time to look for his other account information.[6]  (Ex. 2, Miksic Dep., 135:9-14, 137:2-138:23; Dkt. 27-8, Miksic Ex. 16). Relying on the information provided by Miksic, JW prepared Miksic's 2006 FBAR identifying the two Partner Banka accounts, which Miksic then signed and filed in June 2007.[7]  (Ex. 2, Miksic Dep.,121:1-127:23; Ex. 13, Miksic Ex. 19).

---

[6] One of Miksic's UBS accounts that he failed to disclose to JW was owned by the Rust Foundation. (Dkt. 27-8, Miksic Ex. 16 (account number ending in 1936)). UBS documents for this account show that Miksic had signatory authority on, and could take disbursements from, this Swiss bank account as early as October, 2002. (Dkt. 27-9, Miksic Ex. 15).

[7] JW prepared FBARs for Miksic's foreign accounts as early as 1989 for tax year 1988. Miksic met with JW CPA Larry Satrom and identified an account with the United Bank of Switzerland ("UBS"). (Ex. 2, Miksic Dep., 128:23-131:9; Dkt. 27-12, Miksic Ex. 17). As a result, JW prepared a FBAR for that account which it then sent to Miksic for signature and filing. (*Id.*). After filing that FBAR, Miksic reported to JW that he had closed this UBS account as part of his divorce. (Ex. 1, Parnell Dep., 139:17-140:11).

-13-

In April 2009, Panning (another JW preparer) sent an email to McGillivray again asking for information relating to Miksic's foreign accounts for tax year 2008. (Ex. 4, McGillivray Dep. 71:6-15, Dkt. 27-10, McGillivray Ex. 33). McGillivray could not remember if she ever sent Panning's email to Miksic or if Miksic ever responded. (Ex. 4, McGillivray Dep., 71:19-72:6).

On June 16, 2011, Edmunds sent Miksic's 2010 FBAR to McGillivray for review. (Dkt. 27-11, Miksic Dep. Ex. 20). Miksic's 2010 FBAR identified two accounts at the Royal Bank of Canada in Canada, one account at Partner Banka in Croatia and one account at Erste & Steiermarkische Bank in Croatia. (*Id*., p. BGM030732-030733). Miksic signed and filed his 2010 Form FBAR, but still did not disclose his other foreign accounts, including two additional accounts at Partner Banka in Croatia, two additional accounts at Royal Bank of Canada in Canada, and an account at Zagrebacka Banka in Croatia. (Ex. 2, Miksic Dep., 121:1-127:23; Dkt. 27-8, Miksic Ex. 16.).

**G.    IRS Audits Miksic and Assesses Penalties for Miksic's Missed Form 5471, 3520 and 3520-A, and FBAR Filings.**

On March 17, 2010, the IRS began auditing Cortec's federal returns and soon thereafter began auditing Miksic's federal returns. (Dkt. No. 23-2, Ex. 44; Ex. 3, Edmunds Dep., 99:18-19). In response, Miksic began working with attorney John Fitzgerald with Gray Plant Mooty to address the IRS audits.[8] (Ex. 2, Miksic Dep., 207:13-20).

---

[8] In late 2009 or early 2010, Miksic approached Parnell with a letter he received from UBS regarding UBS's decision to terminate of one of Miksic's UBS accounts. (Ex. 1,

-14-

### 1.    Form 5471 – Foreign Corporations.

On January 27, 2011, the IRS notified Miksic that he had failed to file Form 5471 for EcoCortec for tax years 2007 through 2009.  (Dkt. No. 23-1, Ex. 24).  In response, JW filed Forms 5471 for EcoCortec for tax years 2007, 2008, and 2009.  (Ex. 3, Edmunds Dep., p. 81:11-17).  Although the IRS issued $60,000 in penalties for late Form 5471 filings, JW sent a reasonable cause explanation to the IRS.  (*Id.*, pp. 59:21-60:1; Dkt. 27-13, Parnell Ex. 52).  The IRS ultimately abated all Form 5471 penalties.  (Dkt. 27-14).

### 2.    Forms 3520 and 3520A – Foreign Trusts.

On May 18, 2012, the IRS notified Miksic that he had not properly filed Forms 3520 and 3520A to disclose his involvement with the Rust Foundation for tax years 2005 through 2008.[9]  (Dkt. 23-2, Ex. 51).  On February 4, 2014, the IRS assessed penalties for Miksic's missed filings of Forms 3520 and 3520A for the Rust Foundation for tax years 2005 through 2008.  (Dkt. 27-17, Miksic Ex. 25).  The IRS specifically noted that Miksic owned the Rust Foundation, a foreign trust, and received distributions from that trust.  (*Id.*, p. Miksic 3751).  *The IRS also noted that Miksic reported that he never disclosed the existence of his foreign trust to the defendants*.  (*Id.*, p. Miksic 3754).

---

Parnell Dep., 71:5-72:12; Dkt. 27-21, Parnell Dep. Ex. 45).  After seeing this letter and first learning about this UBS account, Parnell advised Miksic to talk to Fitzgerald. Parnell understood from his subsequent conversations with Fitzgerald that the law firm of Gray Plant Mooty was addressing any issue with Miksic's UBS account.  (Ex. 1, Parnell Dep., 71:5-72:12).

[9] In November 2011, Miksic revoked JW's "power of attorney" when he retained Kevin Packman, Esq., and Holland & Knight LLP, and gave Packman "power of attorney." As a result, JW stopped receiving IRS notifications after November 2011.  (Ex. 5, Cobb Dep., 132:3-134:3; Ex. 8, Cobb Ex. 86).

121697189v2 0966517

On July 31, 2013, Miksic and attorney Kevin Packman from Holland & Knight, LLP prepared affidavits for Parnell and Edmunds to sign.[10]  (Ex. 2, Miksic Dep., 54:4-18; Dkt. 1, Complaint, Exs. E and F).  On February 28, 2014, Miksic and Packman used Parnell's and Edmunds' affidavits to support Miksic's appeal to the IRS for abatement of Form 3520 and 3520A penalties relating to the Rust Foundation without Edmund's or Parnell's knowledge.  (Ex. 1, Parnell Dep., 141:6-16; Ex. 3, Edmunds Dep., 96:16-97:3).  In his appeal, Miksic acknowledges that even though he was in regular contact with the defendants, he never told JW about the Rust Foundation.[11]  (Dkt. 27-18, pp. 3760, 3762).

### 3. FBAR – Foreign Accounts.

On October 5, 2011, the IRS first notified Miksic that it was examining his FBAR filings.  (Dkt. No. 23-2, Ex. 45).  Packman then took over Miksic's IRS audit response from Fitzgerald and began assisting Miksic with tax compliance matters.  (Ex. 3, Edmunds Dep., 57:7-19; Ex. 2, Miksic Dep., 164:20-165:1).

---

[10] Unbeknownst to JW, Packman and Holland & Knight were now working with Miksic on preparing his malpractice case against defendant. (Ex. 2, Miksic Dep., 120:15-25).

[11] When asked at his deposition whether he ever disclosed the Rust Foundation to defendant, Miksic stated "[t]he Rust Foundation has no impact on anything." (Ex. 2, Miksic Dep., 150:12-18).  Miksic then claimed that he didn't know the Rust Foundation was a trust.  (*Id*., 152:3-6).  Then, in response to the question, "[s]o is it fair to say that if the defendants had asked you for information about your interest in any foreign trust, you would not have told them about the Rust Foundation?" Miksic responded, "[t]hey never asked me." (*Id*., 152:7-12).  Although Miksic claims that he did not know the Rust Foundation would be treated as a foreign trust for tax purposes (Dkt. No. 1, Complaint at ¶ 19), he has produced May 2010 letters from a Swiss law firm and the Swiss Federal Tax Administration advising Miksic of potential U.S. tax consequences associated with the Rust Foundation.  (Dkt. 27-19, Miksic Ex. 21; Dkt. 27-20, Miksic Ex. 22).

121697189v2 0966517

In April 2014, Packman worked with Miksic to file FBARs for tax years 2005, 2006, 2007, and 2009, and an amended 2006 FBAR. (Dkt. 27-15, Ex. 2, Miksic Dep., 167:5-169:23).

On March 26, 2015, after Packman and Miksic made Miksic's FBAR filings, the IRS first assessed "willfulness" penalties. (Dkt. 27-16, Miksic Ex. 23). In assessing these penalties, the IRS noted that when its agents questioned Miksic about "*why FBARs were not filed, Miksic stated that he did not disclose the bank accounts to his tax preparers because he was not asked about them*." (*Id*., p. MIKSIC 4246) (emphasis added). Even more, the IRS further found that each of the FBARs filed by Packman and Miksic *did not* include all the foreign bank accounts that Miksic had a financial interest in, or ownership or other authority over.[12] (*Id*., p. MIKSIC 4247). Additionally, the IRS determined that Miksic knew about his FBAR filing requirements based on his earlier 2006 FBAR filing. (*Id*.). As a result, the IRS assessed "willfulness" penalties against Miksic for not filing complete and timely FBARs for tax years 2005 through 2010. (*Id*., p. MIKSIC 4248). On May 26, 2015, Miksic appealed and asked for abatement of FBAR penalties. (Ex. 2, Miksic Dep., 186:6-187:2; Ex. 9, Miksic Ex. 27). The IRS has still not decided Miksic's appeal. (*Id*.).

**H.    Miksic's Claimed Damages.**

For his damages in this lawsuit, Miksic is claiming the following:

---

[12] Taggart found that Miksic made at least 17 separate failures to report his foreign account involvement for years 2005-2010. (Ex. 12, Taggart Report, p. 16, Appendix A).

1. $2,095,709.50 in IRS penalties and taxes.

2. $83,361.28 paid to defendant for negligent tax advice.

3. $39,593.19 paid to accountants in connection with IRS audit.

4. $14,200 paid to accounting in connection with IRS audit.

5. $480,638 paid to outside counsel in Florida in connection with the IRS audit.

6. $130,810.34 paid to law firms in connection with these tax matters and this case.

(Ex.6, Supplemental Answer to Interrogatory No. 12).

The $2,095,709.50 Miksic is claiming for IRS penalties and taxes relates to the IRS penalties associated with Miksic's missed Form 5471, 3520 and 3520-A, and FBAR filings for tax years 2005 through 2010. (Ex. 2, Miksic Dep., 175:4-17). His claimed penalties for Form 5471 were $60,000 for tax years 2007 through 2009. (Dkt. 1, Complaint, ¶ 44, Ex. G). His claimed penalties for Form 3520 were $408,893.10 for tax years 2005 through 2008 and for Form 3520-A were $130,164.55 for tax years 2005 through 2007. (Dkt. 1, Complaint, ¶¶ 45-46, Exs. H and I; Ex. 2, Miksic Dep., 176:21-178:4). Miksic also claims the IRS assessed $1,404,862 in penalties for his FBAR filings for tax years 2005 through 2010.[13] (Ex. 2, Miksic Dep., 184:17-185:21; Dkt. 27-16, Miksic Ex. 23, p. Miksic 004257).

---

[13] The total amount of the IRS' assessed penalties for Forms 5471, 3520 and 3520-A, and FBAR filings is only $2,003,919.70. The remaining portion of Miksic's claimed

-18-

Of the IRS' assessed penalties, Miksic paid $609,305.30 for his claimed Form

5471, 3520 and 3520-A penalties.  (Ex. 2, Miksic Dep., 181:19-182:8).  The IRS later

abated the $60,000 in penalties for Miksic's Form 5471 filings and returned that money to

Miksic.  (Dkt. 27-14).  Miksic is currently appealing his FBAR penalties and has not paid

them.  (Ex. 2, Miksic Dep., 186:6-187:2).  Consequently, Miksic has only paid a total of

$549,305.30 for Form 3520 and 3520-A penalties for tax years 2005 through 2008.

## V.    SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper if,

drawing all reasonable inferences in favor of the non-moving party, there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In particular, summary

judgment is mandated where a plaintiff cannot show an issue of fact as to an essential

element of his claim.  *Id.* at 322.  The moving party bears the initial responsibility of

identifying the documents and testimony that demonstrate the absence of a genuine issue

of material fact; this may be done by demonstrating an *absence* of evidence to support the

non-moving party's case.  *Id.* at 325.  The moving party is not required to negate the

elements of the non-movant's case.  *Id.* at 323.

Once the moving party has shown the absence of a genuine issue of material fact

as to an essential element of the non-movant's case, the non-moving party must do more

---

$2,095,709.50 (or $91,789.80) for IRS penalties and taxes is presumably for tax
deficiencies.  (Ex. 6, Supplemental Answers to Interrogatory No. 12).

121697189v2 0966517

than express doubt as to the truth of the moving party's factual submissions, and must show "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wingate v. Gage Cnty. Sch. Dist.*, No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008). If a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23; *Smith v. Basin Park Hotel, Inc.*, 350 F.3d 810, 813 (8th Cir. 2003) ("[T]he non-moving party must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial").

## VI.    ARGUMENT

### A.    Miksic's Claims are Time-Barred in Their Entirety.

"Statutes of limitation serve a general purpose of repose, the interest of both the defendant and society in freedom from stale claims." *Bartlett v. Miller & Schroeder Muns., Inc.*, 355 N.W.2d 435, 439 (Minn. Ct. App. 1984). Although Miksic's Complaint includes five separate claims, i.e. accounting malpractice (Count 1), breach of contract (Count 2), unjust enrichment (Count 3), negligent misrepresentation (Count 4), and breach of fiduciary duty (Count 6) (sic), all of these claims rely on the same facts and are all derivative of his accounting malpractice claim. *Afremov v. Sulloway & Hollis, PLLC*, 922 F. Supp. 2d 800, 815 (D. Minn. 2013) (finding that claims for breach of fiduciary duty and unjust enrichment, which were based on the same facts and party relationship, were derivative of a malpractice claim).

-20-

Professional negligence claims, including accounting-malpractice claims, must be brought within six years.  Minn. Stat. § 541.05, subd. 1(5)[14]; *see Bonhiver v. Graff*, 248 N.W.2d 291, 296 (Minn. 1976).  The limitation period starts to run when the cause of action accrues, which occurs "when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn. 2006).

In *Antone*, the Minnesota Supreme Court reaffirmed that a legal malpractice action accrues when the plaintiff sustained "some damage" as the result of the defendant's negligence.  *Antone*, 720 N.W.2d at 335-36; *see also Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999).  The cause of action accrues upon occurrence of *any* compensable damage, not just the damage for which the precise relief is sought in the complaint.  *Antone*, 720 N.W.2d at 336 n. 6.  Mere ignorance of a cause of action will not toll the accrual of the claim.  *Id*. at 335.  Of course, *Antone* was a legal malpractice claim and this is an accounting malpractice claim.  But the statute of limitations is the same for both kinds of professional negligence cases.  The same subdivision – Minn. Stat. § 541.05, subd. 1(5) – applies to both legal and accounting malpractice claims.  And for both kinds of malpractice cases, the limitations period begins to run at the time the plaintiff(s) could bring a claim that would survive a motion to dismiss.

---

[14] "[A] federal court sitting in diversity is to apply the proper state's substantive and federal procedural law.  *Ellington v. Walgreen Co*., 78 F. Supp. 2d 965, 968 (D. Minn. 1999).

The rationale of the unpublished decision in *Reid Enters., Inc. v. Deloitte & Touche*, No. C8-99-1801, 2000 WL 665684 (Minn. Ct. App. 2000) demonstrates that claims for accounting malpractice accrue in the same manner as claims for legal malpractice.  In *Reid*, Deloitte prepared the plaintiff's tax returns for a number of years beginning in 1982.  The plaintiff alleged that Deloitte provided negligent advice about the "LIFO Conformity Rule."  Because Deloitte negligently prepared the returns beginning in 1982, the court held that "[t]he district court correctly concluded that Reid could have commenced its lawsuit any time after 1982 and survived a motion to dismiss."  Thus, the *Reid* opinion shows that an accounting malpractice claim – like a legal malpractice claim – accrues at the time the plaintiff could bring an action that would survive a Rule 12 motion to dismiss.

"A cause of action survives a motion to dismiss as long as 'some damage' has occurred as a result of the alleged malpractice."  *Herrmann*, 590 N.W.2d at 643; *see also Antone*, 720 N.W.2d at 336.  It is immaterial if the damage that occurred is not the damage for which the relief is sought in the complaint. *Antone*, 720 N.W.2d at 336 n. 6. Minnesota courts have consistently given a broad interpretation to the "some damage" rule and have held that even "minimal" damages will start the running of the statute of limitations.  *See Noske v. Friedberg*, 670 N.W.2d 740, 742 (Minn. 2003) ("The showing that a plaintiff must make in order to survive a motion to dismiss under Rule 12.2(e) is minimal").  *Antone* also illustrates the broad interpretation given to the "some damage" rule wherein the court held that the plaintiff had suffered "some damage" upon the signing of a prenuptial agreement, even though the damage was not manifested until the

-22-

marital separation many years later. *Antone*, 720 N.W.2d at 337-38. In short, the six year statute of limitations applicable to Miksic's claims accrued in April 2006 when he filed his tax forms for tax year 2005 and Miksic allegedly suffered "some damage" as a result of the defendants' conduct. *See Ames & Fischer Co., II, LLP v. McDonald*, 798 N.W.2d 557, 563-64 (Minn. Ct. App. 2011) (finding that the statute of limitations accrued when some damage was incurred with the filing of tax return).

Any argument that the six-year statute of limitations re-sets with the filing of a subsequent year's tax return is without legal support. *Hermann* is dispositive on this issue. In *Herrmann*, the plaintiff sought damages arising out of the participation in a series of essentially identical transactions that were prohibited under Federal tax law. *Herrmann*, 590 N.W.2d at 642. The Minnesota Supreme Court held that the claim accrued at the time of the first of these transactions. *Id.* at 643-44. *Herrmann* is similar to this case in that the opportunity for Miksic to identify foreign accounts and foreign trust involvement in Part III, "Foreign Accounts and Trusts", of Schedule B for his 1040 form was identical in each of the relevant tax years. (*see, e.g.,* Dkt. 27-6, Miksic Ex. 5). Thus, under the rationale of *Herrmann*, Miksic's failure to properly identify foreign account and foreign trust activity for tax years after 2005 in tax forms filed after April 2006 did not re-set the statute of limitations, which accrued in April 2006, and Miksic's claims remained time-barred after April 2012.

*Reid* further supports the defendants' position. In *Reid*, the alleged negligence consisted of the CPA's failure to properly apply the "LIFO Conformity Rule." This error was made in tax returns which Deloitte prepared "in each and every year" from 1982 at

least through 1991. *Reid Enters., Inc.*, 2000 WL 665684 at *2. The district court held that the claim accrued at the time Deloitte prepared the first tax return in 1982. The Minnesota Court of Appeals affirmed and noted that the claim accrued "in the 1980s." *Id.* at *2. The court also rejected Reid's argument that there was separate negligence in each year in which the returns were prepared. The court noted,

> But Minnesota law is clear that when a professional provides a series of separate and distinct services over a period of years, the existence of an ongoing relationship does not toll the statute of limitations with regard to negligence for which service has been completed.

*Id.* at *3 (*citing Herrmann*, 590 N.W. 2d at 643-44). Thus, the rationale in *Herrmann* and *Reid* demonstrates that when a tax preparer makes the same alleged error in one set of tax returns and repeats that error in later years, the claim accrues upon the preparation of the first return.

Here, like in *Hermann*, Miksic's claims are based on his argument that the defendants made the same continuing errors over the course of several years. (*See generally*, Dkt. No. 1, Complaint). Cobb opines that the defendants erred by indicating in Part III, "Foreign Accounts and Trusts", of Schedule B for Miksic's Form 1040 that Miksic had no foreign accounts requiring FBAR reporting and this error related to damages Miksic allegedly suffered for tax year 2005. (Ex. 5, Cobb Dep., 179:12-181:6). Cobb summarized his first criticism of the defendants as:

> "Failing to exercise due professional care to be thorough or to obtain sufficient relevant data to prepare and file the required IRS forms for Mr. Miksic or to advise Mr. Miksic of requirements to IRS forms."

121697189v2 0966517

(Ex. 14, Cobb Ex. 85, p. 33).  When asked about that statement, Cobb clarified that his opinion was based, in part, on the defendants' failure to look at prior years' returns to find potential errors when preparing each years' return.  (Ex. 5, Cobb Dep., 207:9-208:7). Cobb further testified that, by failing to review prior years' returns when preparing Miksic's tax forms, the defendants committed the same sequence or continuation of errors for tax years 2005 through 2010 that resulted in a continuation of damages for the same tax years.  (*Id*., 209:1-215:5).

Following Cobb's views and the Minnesota Court of Appeal's decisions in *Hermann* and *Reid*, the six-year state of limitations began to run on Miksic's claims in April 2006 when he filed his 2005 tax forms and his claims became time-barred after 2012.  Therefore, because Miksic waited until 2014 before commencing litigation in Minnesota state court, all of his claims are time-barred and necessarily dismissed in their entirety with prejudice.

## B.    Miksic Cannot Maintain His Action Because He Failed To Comply With Minn. Stat. § 544.42.

Under Minnesota Statute § 544.42, subd. 2(2), Miksic was required to provide a Second Affidavit of Expert Review (the "Second Affidavit") within 180 days of the commencement of discovery setting forth "the substance of the facts and opinions to which the expert is expected to testify, and the summary of the grounds for each opinion" sufficient to establish a *prima facie* case.  *See Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Waint, Van Korff & Hobbs, Ltd*., 783 N.W.2d 733, 746 (Minn. Ct. App. 2010). Miksic served his Second Affidavit on August 17, 2015.  (Ex. 7).

121697189v2 0966517

As noted above, all of Miksic's claims against the defendants are derivative of his accountant malpractice claim (Count I) and, as a result, Miksic's Second Affidavit was necessary to support all of his claims against the defendants. *See Afremov*, 922 F. Supp. 2d at 815; *see also Club Vista Financial Services, L.L.C. v. Maslon, Edelman, Borman & Brand, LLP*, 10-CV-3174, 2011 WL 4947629, *15 (D. Minn. Oct. 18, 2011) (noting that Minnesota courts have applied Minn. Stat. § 544.42 to all claims derivative of professional malpractice claims).  Miksic's Second Affidavit was therefore required to provide the substance of the facts and opinions from Cobb and the summary of the grounds for each of his opinions on each element needed to support a *prima facie* case for accounting malpractice, including: (1) duty (i.e. the existence of an accountant-client relationship), (2) breach of that duty (i.e. the failure of the defendants to discharge any duty owed to Miksic under the specific accountant-client relationship), (3) factual causation (i.e. "but for" causation for any claimed damages), (4) proximate causation (i.e. identify whether any damages were a foreseeable consequence of the defendants' actions), and (5) damages (i.e. identify Miksic's actual damages suffered as a result of the defendants' actions). *Brown-Wilbert*, 732 N.W.2d 209, 218 n. 4 (Minn. 2007) (citing *Vernon J. Rockler & Co., Inc. v. Glickman, Isenberg, Lurie & Co.*, 273 N.W.2d 647, 650 (Minn. 1978)); *see also Pearson v. Oxford Prop. Advisors, LLC*, No. A10-1766, 2011 WL 1833133, *3 (Minn. Ct. App. May 16, 2011) (noting that expert testimony is necessary to establish the existence of an attorney-client relationship and the duties owed under that relationship).  Miksic's Second Affidavit does not provide the meaningful disclosures required under Minn. Stat. § 544.42 and his Complaint is necessarily

121697189v2 0966517

dismissed in its entirety with prejudice. *See Afremov*, 922 F. Supp. 2d at 816 ("Minnesota courts have strictly enforced the requirements of § 544.42, even when strict enforcement has led to harsh results").

The Minnesota Supreme Court's analysis in *Guzick v. Kimball*, 869 N.W.2d 42 (Minn. 2015) is instructive. In *Guzick*, the court considered whether the plaintiff's second affidavit of expert review met the requirements of Minn. Stat. §544.42, subd. 2. *Id*. at 46. In its review, the court first determined whether expert testimony was required in the second affidavit to establish "but-for" causation. *Id*. at 50. In deciding that expert testimony was necessary, the court noted that the facts needed to establish "but-for" causation were outside of the common knowledge and comprehension of a lay jury. *Id*. The court then reviewed the second affidavit and found that, although it implied that the defendant's actions were the proximate cause of the plaintiff's injuries, it was substantively deficient. *Id*. at 51. The court found that the affidavit provided only conclusory statements – it did not explicitly explain the expert's opinion on how the alleged negligent acts were the proximate cause of any injury, and, as a result, it lacked a meaningful disclosure of an expert's opinion on a necessary element of the *prima facie* case. *Id*. Accordingly, the Minnesota Supreme Court found that the district court did not abuse its discretion in dismissing the plaintiff's professional malpractice case with prejudice for failing to comply with Minn. Stat. § 544.42.

Here, like in *Guzick*, Miksic needs expert testimony to support all elements of his accounting malpractice claim, which is premised on his allegations that the defendants' breached their duty of care, and caused damages, by not properly preparing and filing

-27-

U.S. tax Forms 5471, 3520 and 3520-A, and FBAR (Dkt. 1, Complaint).  Determining

issues of "duty" (the existence of an accountant-client relationship), "breach" (the alleged

failure of the defendants to discharge their duty of reasonable care), factual causation

("but for" causation), and proximate causation (that Miksic's alleged damages were

foreseeable by the defendants) are not within the common knowledge and lay

comprehension of jurors and all of these elements require expert testimony.  *See Guzick*,

869 N.W.2d at 49-50 (finding that duty, breach, and causation must be established with

expert testimony in a professional malpractice case).  Miksic's Second Affidavit was

required to include "the substance of the facts and opinions to which [Cobb] is expected

to testify, and a summary of the grounds for each opinion" in order to comply with the

strict requirements of Minn. Stat. § 544.42.  Miksic's Second Affidavit, however, does

not strictly comply.

First, Miksic's Second Affidavit is only attorney argument and does not actually

include Cobb's opinion.  Miksic's served his Second Affidavit on August 17, 2015.  (Ex.

7).  Cobb, however, testified that he first reached his liability and causation opinions in

early 2016 and his final opinions in February or March 2016.  (Ex. 5, Cobb Dep., 9:5-20).

Miksic's Second Affidavit therefore cannot include the substance of Cobb's opinions or

the summary of the grounds for any opinions from Cobb as required under Minn. Stat. §

544.42, subd. 4, because Cobb first reached his opinions in 2016, several months after

Miksic served his Second Affidavit.  (*Id.*).  Instead, Miksic's Second Affidavit is entirely

speculative, lacks foundation, and is based solely on attorney argument, which is not

evidence of any opinion developed months later by Cobb.  *See, e.g., Williams v. Voss*,

No. 10-2092, 2011 WL 4340851, *7 (D. Minn. Sept. 15, 2011) (finding that attorney

argument is not evidence). Because Miksic's Second Affidavit does not strictly comply

with Minn. Stat. § 544.42, this Court properly dismisses Miksic's Complaint in its

entirety with prejudice. *See Afremov*, 922 F. Supp. 2d at 816 (noting that Minnesota

courts require strict compliance with Minn. Stat. § 544.42 and failure to strictly comply

requires dismissal with prejudice).

Second, Miksic's Second Affidavit of Expert Review includes only conclusory and

conjectural statements with respect to duty, breach, causation, and damages. For

example, it simply states that the defendants had an "accountant-client relationship" with

Miksic without describing the scope of that relationship or any of the duties owed in that

relationship. (Ex. 7, ¶ 4). The Second Affidavit then simply identifies, "[c]ollectively,

the American Institute of Certified Public Accounts ('AICPA') Code of Professional

Conduct, Statements on Quality Control Standards, Professional Standards, and Other

AICPA Standards, Treasury Circular No. 230, and other standards of conduct in the

industry as the 'Standard of Care.'" (*Id*., p. 5, n. 2). It does not identify any professional

duties or care actually owed by the defendants in the undefined "accountant-client

relationship" or any professional duties or care relating to the preparation of the specific

U.S. tax forms at issue in this litigation, i.e. Forms 5471, 3520 and 3520-A or FBAR.

(*Id*., ¶ 10). Miksic's Second Affidavit then simply states that the defendants breached the

"Standard of Care," but it does not specifically state how they breached any standard of

care or professional duties except a single vague reference to the AICPA Statements on

Standards for Tax Services No. 2 and 3. (*Id*., ¶¶ 11-17). Similarly, Miksic's Second

-29-

Affidavit provides only conclusory statements about the defendants' undefined deviations from the undefined "Standard of Care" that then caused Miksic "damage." (*Id.*, ¶¶ 18-19.) There is nothing in Miksic's Second Affidavit that provides any meaningful disclosure as the duty of care required from the defendants, how they actually breached that duty of care, how exactly the alleged breaches caused any alleged damages to Miksic, or any disclosures relating to Miksic's claimed damages. (*See generally, Id.*). As noted by the Minnesota Supreme Court in *Guzick*, these are exactly the type of conclusory statements disapproved of in *Brown-Wilbert*, 732 N.W.2d at 219 (stating that an affidavit must "provide some meaningful information, beyond conclusory statements, that … summarizes the expert's opinion that the defendant's departure was a direct cause of the plaintiff's injuries"). *Id.* at 51.

In short, Miksic's Second Affidavit does not set forth a *prima facie* case of accounting malpractice and does not make the meaningful disclosures required under Minn. Stat. § 544.42. This Court therefore necessarily grants the defendants' Motion for Summary Judgment and dismisses Miksic's Complaint in its entirety with prejudice. *Guzick*, 869 N.W.2d at 51; *Rinke,* 783 N.W.2d at 747.

**C.    Miksic Cannot Maintain His Claims Because Cobb is Properly Excluded Under Rules 702 and 403 of the Federal Rules of Evidence.**

Expert testimony is generally required in cases involving professionals where the conduct complained of cannot be adequately evaluated by the jury absent the expert testimony. *Hill v. Okay Constr. Co.*, 2520 N.W. 2d 107, 116 (Minn. 1977); *see also Brown-Wilbert, Inc. v. Copeland, Buhl & Co., PLLP*, No. A07-2462, 2008 WL 5396832

-30-

at * 4 (Minn. Ct. App. Dec. 30, 2008); *review denied* Mar. 17, 2009. Here, all of Miksic's claims against the defendants rely on the same alleged facts and are therefore derivative of his accounting malpractice claim (Count I). *Afremov*, 922 F. Supp. 2d at 815. As a result, Miksic is required to support all of his claims with expert testimony. *See Brown-Wilbert, Inc.*, 2008 WL 5396832 at *4-5 (noting that expert testimony was required to support the breach of contract and breach of fiduciary duty claims against the accountants).

Miksic's liability and causation expert is Cobb. As discussed extensively in the defendants' concurrently filed Motion to Exclude, Cobb is not qualified to, and cannot reliably opine, on any alleged errors in providing tax preparation services the defendants provided to Miksic or the application of any professional standards to those services. Absent such testimony, Miksic's accounting malpractice (Count 1), breach of contract (Count 2), unjust enrichment (Count 3), negligent misrepresentation (Count 4) and breach of fiduciary duty (Count 6)(sic) claims all fail as a matter of law. *See Brown-Wilbert*, 732 N.W.2d at 218 ("Thus, in order to survive a motion for directed verdict in an accountant malpractice case, a plaintiff must present expert testimony that identifies the applicable standard of care and opines that the accountant deviated from that standard and that the departure caused the plaintiff's damages."). Consequently, this Court properly dismisses Miksic's Complaint in its entirety with prejudice.

**D.    Miksic's Claims Are Barred By His Own Fault and Willful Misconduct.**

The *in pari delicto* doctrine is an equitable defense that "is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct."

-31-

*Pinter v. Dahl*, 486 U.S. 622, 632 (1988); *see also Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2013) ("The doctrine of *in pari delicto* is the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing") (quoting Black's Law Dictionary 806 (8th ed.2004)). When the material facts are undisputed, the doctrine of *in pari delicto* can properly form the basis for dismissal on summary judgment. *Id.* at 837; *see also Zurad v. Lehman Bros. Kuhn Loeb, Inc.*, 757 F.2d 129, 133 (7th Cir. 1985) (describing the application of *in pari delicto* as "a legal question").

Minnesota courts broadly embrace the doctrine "based upon judicial reluctance to intervene in disputes between parties who are both wrongdoers in equal fault." *See, e.g., State by Head v. AAMCO Automatic Transmissions, Inc.*, 199 N.W.2d 444, 448 (Minn. 1972); *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 814 (Minn. Ct. App. 2007). Minnesota courts have also applied the doctrine to professional malpractice cases and found that a case is properly dismissed under the doctrine if the individual is found to be "culpable for her acts in the face of what she knew and what she was on notice of." *In re Hansel*, No. 08-3177, 2012 WL 3113849, *12 (Bankr. D. Minn. June 15, 2012) (dismissing legal malpractice claim based on *in pari delicto doctrine*) *report and recommendation adopted by Seaver v. Frundt*, No. 12-1631, 2012 WL 3113785 (D. Minn. July 31, 2012); *see also Taunton v. Newman*, No. 02-737, 2002 WL 31867706 (Minn. Ct. App. Dec. 24, 2002) (same).

In *Christians*, a company's trustee in bankruptcy brought claims against an auditor asserting that the auditor's erroneous report was the cause of the company's injury. 733

N.W.2d at 807-08.  The company itself, however, failed to disclose material transactions to the auditor that lead to the report inaccurately reflecting the company's value.  *Id*. at 814.  Because the company failed to disclose this critical information, the court determined that *in pari delicto* barred the trustee's claims because the company "bears at least substantially equal responsibility for the injury it seeks to remedy."  *Id*.

Additional persuasive authority addressing the recovery of damages specific to IRS penalties based on a taxpayer's own tax fraud can be found in a series of cases brought by former UBS account holders alleging the Swiss financial institution defrauded them by assisting in the concealment of their assets.  *See, e.g., Thomas v. UBS AG*, 706 F.3d 846 (7th Cir. 2013); *Olenicoff v. UBS AG*, 08-1029, 2012 WL 1192911, *1 (C.D.Cal. Apr. 10, 2012); *Giordano v. UBS, AG*, 134 F. Supp. 3d 697 (S.D.N.Y. 2015).  In dismissing the plaintiff's malpractice and negligence claims in *Thomas*, Judge Posner stated that "[t]he plaintiffs are tax cheats, and it is very odd, to say the least, for tax cheats to seek to recover their penalties … from the source, in this case UBS, of the income concealed from the IRS." 706 F.3d at 850.  In this series of UBS cases, the Southern District of New York applied the *in pari delicto* doctrine in the specific context of a taxpayer's failure to file FBARs. *Giordano*, 134 F. Supp. 3d 697.  The court determined that UBS could not be liable for a taxpayer's failure to file FBARs despite the taxpayer's assertion that UBS owed it a fiduciary duty to inform her of her U.S. tax obligations.  *Id*. at 700.  The *Giordano* court analyzed the straightforward question that U.S. taxpayers are asked in question 7a of Part III, "Foreign Accounts and Trusts", in Schedule B for Form 1040: "did you have a financial interest in or signature authority over a financial account

-33-

(such as a bank account, securities account, or brokerage account) located in a foreign country?"[15]  *Id.* at 700-01.  The taxpayer in *Giordano* answered "no" to this question, and the court found that based on this answer and her failure to disclose her UBS account in her tax forms she had "an insurmountable barrier to proving causation for all of her claims, and it bars recovery under the fundamental doctrine of *in pari delicto*." *Id.* at 709.

Like *Christians* and *Hansel*, Miksic failed to disclose material information when he was well aware of its relevance and impact.  Like *Giordano*, Miksic failed to accurately answer straightforward questions regarding his interest and accounts in foreign financial institutions in his tax filings, specifically questions 7a, b and 8 in Part III, "Foreign Accounts and Trusts", of Schedule B for his Form 1040.  (Ex. 2, Miksic Dep., 61:7-15, 69:12-25, 71:5-72:13, 127:17-128:1; Dkt. 27-6, Miksic Ex. 5, p. BGM000185).

Miksic had a non-delegable duty to review his tax filings and attest to their accuracy, but he neglected to do so.  *See Pritchett v. C.I.R.*, 63 T.C. 149, 174 (1974) ("The general rule is that the duty of filing accurate returns cannot be avoided by placing the responsibility on an agent"); *Metra Chem Corp. v. C.I.R.*, 88 T.C. No. 36 (1987).  The engagement letters from JW clearly state **"[y]ou have the final responsibility for the income tax returns and, therefore, you should review them carefully before you sign them."**  (Ex. 2, Miksic Dep., 57:5-58:5; Dkt. 27-4,  Miksic Ex. 4 (emphasis in original)).  Miksic, however, admitted that he never reviewed his tax returns because his time was "a

---

[15] For the relevant tax years, Miksic's Form 1040 included substantially the same question.  (Dkt. 27-6, Miksic Ex. 5, p. BGM000185).

bit more valuable than that" and because he did not have the patience. (Ex. 2, Miksic Dep., 96:7-97:23). And yet, Miksic admitted that had he reviewed his tax returns as the defendants advised, he would have understood that question 7a in Part III, "Foreign Accounts and Trusts", of Schedule B for his Form 1040 asked for information relating to his foreign accounts and, if question 7a was checked "no," it was a clear misstatement. (Ex. 2, Miksic Dep., 69:12-25, 71:5-72:13; Dkt. 27-6, Miksic Ex. 5, p. BGM000185).

Not only did Miksic fail to review and identify the missing information from his tax returns, but he also affirmatively withheld the information from JW. In response to Schumacher's June 2007 email, Miksic responded by identifying only two financial accounts at Partner Banka in Croatia. (Ex. 2, Miksic Dep., 133:18-135:19; Dkt. 27-7, Miksic Ex. 18; Ex. 4, McGillivray Dep., 64:11-66:24). He did not, however, did not tell JW about his other foreign accounts, including six other separate financial accounts at UBS in Switzerland, Partner Banka in Croatia, Erste & Steiermarkische Bank in Croatia, and Zagrebacka Banka in Croatia. (Ex. 2, Miksic Dep., 135:9-14, 137:2-138:23; Dkt. 27-8, Miksic Ex. 16). When asked at his deposition about what more the defendants should have done to get complete information on all of his foreign accounts, Miksic replied, "they knew what was necessary." (Ex. 2, Miksic Dep., 138:17-141:9). Relying on the information provided by Miksic, JW prepared Miksic's 2006 FBAR identifying the two

-35-

Partner Banka accounts, which Miksic then signed and filed. [16] (*Id.*, 121:1-127:23; Ex. 13, Miksic Ex. 19).

On June 16, 2011, Edmunds sent Miksic's 2010 FBAR to McGillivray for review. (Dkt. 27-11, Miksic Ex. 20). Miksic's 2010 FBAR identified two accounts at the Royal Bank of Canada in Canada, one account at Partner Banka in Croatia and one account at Erste & Steiermarkische Bank in Croatia. (*Id.*, pp. BGM030732-30733). Miksic again signed and filed his 2010 Form FBAR, but still did not disclose his other foreign accounts, including two additional accounts at Partner Banka in Croatia, two additional accounts at Royal Bank of Canada in Canada, and an account at Zagrebacka Banka in Croatia. (Ex. 2, Miksic Dep., 121:1-127:23; Dkt. 27-8, Miksic Ex. 16).

Similarly, Miksic failed to provide JW with any information about the Rust Foundation. (Dkt. 27-18, pp. MIKSIC-003760; MIKSIC-003762). Despite JW's annual questionnaires and question 8 in Part III, "Foreign Accounts and Trusts", of Schedule B for Miksic's Form 1040, which both specifically asked for information relating to Miksic's foreign income and foreign trust involvement, Miksic admittedly never told the defendants about the Rust Foundation. (Dkt. 27-6, Miksic Ex. 5, p. BGM000185; Dkt. 27-4, Miksic Ex. 4, pp. BGM018047-18048). What makes Miksic's failure to disclose the Rust Foundation so egregious is the fact that he took over $1 million in regular disbursements from the Rust Foundation, a Liechtenstein trust, including $13,521 in

---

[16] Generally, tax preparers may rely on information from their clients unless it is apparent that the information supplied was incorrect or incomplete and it is simple to collect additional information. *Brockhouse v. U.S.*, 749 F.2d 1248, 1252 (7th Cir. 1984).

-36-

2005, $10,436 in 2006, $139,189 in 2007 and $845,257 in 2008 (Ex. 5, Cobb Dep., 151:1-153:2; Ex. 14, Cobb Ex. 85, p. 25).  He knew about his potential U.S. tax consequences associated with the Rust Foundation based on letters from a Swiss law firm and the Swiss Federal Tax Administration, he took over $1 million in disbursements from the Rust Foundation, and still he did not tell the defendants or the IRS about his foreign trust involvement or foreign income from the Rust Foundation.  (Dkt. 27-19, Miksic Ex. 21; Dkt. 27-20, Miksic Ex. 22; Dkt. 27-18, p. MIKSIC-003760; Dkt. 27-17, Miksic Ex. 25, p. MIKSIC-003754).

Additionally, Miksic was given notice by the IRS on October 5, 2011 that it was examining his FBAR filings.  (Dkt. 23-2, Ex. 45).  Nevertheless, in April 2014 Miksic, with the assistance of Holland & Knight, filed FBARs for tax years 2005, 2007, 2008, 2009, and an amended FBAR for 2006, but still neglected to disclose all the foreign bank accounts in which Miksic had a financial interest.  (Dkt. 27-15; Ex. 5, Cobb Dep. 224:19-227:14; Ex. 2 Miksic Dep., 167:5-169:23; Dkt. 27-16, Miksic Ex. 23, pp. MIKSIC004246-4247) ("Each of the FBARs that were filed did not include all the foreign bank accounts that he had a financial interest in, or ownership, or other authority over.").  As a result, the IRS assessed "willfulness" penalties against Miksic on March 26, 2015, and only after Miksic repeatedly failed to file FBARs when the IRS gave him notice in 2011 that his FBAR filings were under review.  (Dkt. 27-16, Miksic Ex. 23, p. MIKSIC004248).  Following its investigation, the IRS determined that Miksic knew about his FBAR filing requirements based on his 2006 FBAR filings.  (*Id.*, p. MIKSIC004247).  In assessing these penalties, the IRS noted that when its agents

-37-

questioned Miksic about "why FBARs were not filed, Miksic stated that he did not disclose the bank accounts to his tax preparers because he was not asked about them." (*Id.*, p. MIKSIC004246).

Much like the debtor in *Hansel*, Miksic's willful ignorance and blind reliance is sufficient to find Miksic at fault. Miksic repeatedly failed to review his tax information and affirmatively withheld material information from JW even after it was requested of him. Miksic disregarded the IRS's 2011 notice that it was reviewing his FBAR accounts and proceeded to file incomplete or inaccurate FBARs in April, 2014 with Packman from Holland & Knight. Further, Miksic took more than $1 million in disbursements from the Rust Foundation but never told the defendants or the IRS about that income or his foreign trust involvement even after receiving letters from the Swiss Federal Tax Administration. Under the established *in pari delicto* doctrine, even if JW could be blamed for initially failing to identify and disclose Miksic's foreign bank holdings or trust involvement, Miksic is equally liable for failing to reveal information relating to his foreign accounts, income and trust involvement, failing to review his tax documents, and failing to provide complete FBAR filings even after he was on notice from the IRS and working with new tax attorneys.

By signing his tax documents, Miksic had at least constructive knowledge of their contents. *Williams*, 2012 WL 2948569, *1 (quoting *Greer v. C.I.R.*, 595 F.3d 338, 347 n. 4 (6th Cir. 2010)). Miksic's signature on his 1040 Form is *prima facie* evidence that, at a minimum, he understood questions 7a and 8 in Part III, "Foreign Accounts and Trusts", of Schedule B for his Form 1040, and the directions under those questions regarding any

-38-

FBAR and Forms 3520 filing requirements.  *Id.* (finding that a signature was *prima facie* evidence the taxpayer knew that line 7a put the taxpayer on inquiry notice of FBAR requirements); *U.S. v. McBride*, 908 F. Supp. 2d 1186, 1208 (D. Utah 2012) (finding as a matter of law that a taxpayer who signs his return is charged with having reviewed that return and with having knowledge of his foreign account disclosure requirement); *Thomas v. UBS AG*, 2012 WL 2396866, *5 n. 2 (N.D. Ill. June 21, 2012) (finding that "[t]he simple yes-or-no question of Schedule B makes it inconceivable that [a taxpayer] could misunderstood this question" and, as a result, it was not possible for a taxpayer signing a return to have reasonably or justifiably relied on any negligent or fraudulent misrepresentation concerning foreign reporting requirements").  Miksic therefore knew (or had, at a minimum, constructive knowledge) about his FBAR filing requirements for his foreign accounts, and his Form 3520 and 3520A filing requirements for the Rust Foundation before he filed his taxes for tax years 2005 through 2010.  Like the taxpayer in *Giordano*, Miksic's own fault and willful misconduct bars any recovery under the fundamental doctrine of *in pari delicto*.  134 F. Supp. 3d. at 709.

Tellingly, Cobb confirmed Miksic's fault in not properly making FBAR filings:

Q: In your professional opinion, is Mr. Miksic at fault for not filing complete and accurate FBAR forms with his 2014 filings?

*****

A: Yes.

(Ex. 5, Cobb Dep., 230:7-231:9).  Cobb also confirmed Miksic's fault in not disclosing the Rust Foundation to the defendants:

121697189v2 0966517

> Q: Did Mr. Miksic have some fault in not disclosing the existence of the Rust Foundation to the defendants, especially since he took disbursements from that entity?
>
> A: Yes.

(*Id.*, 235:5-10).  Additionally, Cobb apportions fault to Miksic for not reading his tax returns before filing them.  (*Id.*, 247:3-248:8).  Cobb's testimony confirms Miksic's fault and supports finding that Miksic's claims are barred under the *in pari delicto* doctrine.

As the above discussion illustrates, Miksic was not forthcoming with critical information needed for the defendants to prepare his  Form1040 returns or Forms 3520 and 3520-A or FBAR, including information relating to his numerous foreign bank accounts, foreign trust involvement, and income he took from the Rust Foundation.  He was willfully blind to his own obligations to review his tax returns for any errors or omissions before he filed them.  Miksic and his attorneys at Holland & Knight then willfully failed to disclose all of Miksic's foreign accounts in FBAR filings made in April 2014, after the IRS was already auditing Miksic's personal returns and looking into his previous FBAR filings.  Simply put, Miksic's own fault and willful misconduct, as confirmed by Cobb, prevent any recovery in this action based on the *in pari delicto* doctrine and this Court necessarily dismisses Miksic's Complaint in its entirety with prejudice.

**E.    Miksic's Claims Are Barred by the Doctrine of Laches.**

For the application of the doctrine of laches to bar a lawsuit, the plaintiff must be guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.  *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979)

121697189v2 0966517

(citing *Gardner v. Panama Railroad Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31 (1951)); *Funchie v. Packaging Corp. of America*, 494 F. Supp. 662 (D. Minn. 1980) ("There are two criteria for dismissal for laches: (1) unreasonable delay in bringing the suit and (2) prejudice to the defendant caused by such delay").

The doctrine of laches is premised upon the same principles that underlie statutes of limitation: the desire to avoid unfairness that can result from the prosecution of stale claims. *Costello v. United States*, 365 U.S. 265, 282-83, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *see also Pollard v. Pollard*, No. C8-99-1961, 2000 WL 890473 (Minn. Ct. App. July 3, 2000). However, the operation of laches departs from that of statutes of limitation in that laches is more flexible. *Goodman*, 606 F.2d at 805; *Carlson T.V. v. City of Marble*, 612 F. Supp. 669, 672 (D. Minn. 1985).

"The prejudice normally contemplated in applying laches … stems from such factors as loss of evidence and unavailability of witnesses, which diminish a defendant's chances of success." *Goodman*, 606 F.2d at n. 17 (citing *Powell v. Zuckert*, 125 U.S.App.D.C. 55, 59, 366 F.2d 634, 638 (D.C. Cir. 1966)); *West v. Upper Mississippi Towing Corp.*, 221 F. Supp. 590, 596 (D. Minn. 1963) ("The unavailability of material witnesses is certainly a meritorious defense"). Not only did Miksic sit on his hands for many years before filing this case as noted in the above sections, significant information has been lost through the death of Cliff Lozinski, a critical witness in this malpractice action.

Miksic testified that he worked with Cliff Lozinski – a former partner at JW – since 1988. (Ex. 2, Miksic Dep., 77:5-25). According to Miksic,

-41-

> "Lozinski was [ ] Miksic's primary [CPA], who assisted Miksic with his individual and corporate state and federal filings for over 20 years. Lozinski also provided general accounting and tax advice to Miksic throughout his representation.  Lozinski provided regular advice to Miksic regarding a wide array of United States tax rights and responsibilities."

(Dkt. 1, Complaint, ¶ 11).   Miksic asserts that he and Lozinski entered into a "handshake" agreement every year for tax preparation services and financial advice.  (Ex. 2, Miksic Dep., 77:5-25).  Further, Miksic claims he and Lozinski met frequently each year since 1988, that Lozinski was intimately involved in assisting Miksic with his company, Cortec, and that he used Lozinski exclusively for his tax and financial service needs.  (*Id*.,101:24-102:19).  According to Miksic, Lozinski was a personal friend and "knew everything that was going on because I don't have that kind of expertise."  (*Id*.). Miksic further claims that Lozinski knew all about his foreign accounts and the Rust Foundation.  (*Id*., 132:1-133:15, 150:12-151:17).  Based on Miksic's verified Complaint and his own testimony, Lozinski would have been a critical witness in this action.

Unfortunately, Lozinski cannot testify as to what he knew, what was given to him by Miksic, what was communicated to him, or what he told others at JW regarding Cortec, Miksic, and related entities, because he passed away while Miksic's claims, which accrued at least as early as April 2006 with his 2005 tax filings, grew stale.  (Ex. 1, Parnell Dep., 64:8-19).  With only his lack of action to blame, Miksic has no justification for waiting at least eight years before bringing this action, while evidence was lost, forgotten, and destroyed in the meantime, including the death of Lozinski.  Allowing Miksic's claims to proceed after evidence and critical witness testimony has been lost would not only reward him for his indifference and inattention, it would also be unfairly

-42-

prejudicial to the defendants. Undoubtedly, Lozinski, as a former partner with JW, and purportedly a close personal confidant to Miksic, would have had much to say regarding Miksic's claims and the defendants' actions. The doctrine of laches is therefore properly applied to bar Miksic's action in its entirety.

**E.    Even if this Case Could Proceed, Miksic's Claims and Damages are Necessarily Limited.**

**1.    Miksic's Claims are Necessarily Limited By the Six-Year Statute of Limitations.**

Even if this Court does not follow the *Hermann* and *Reid* decisions, the *Ames* and *Antone* cases make clear that all of Miksic's claims that accrued before November 2008 are time-barred. Miksic first commenced his litigation in November 2014. His claims relating to tax filings made before November 2008 (i.e. more than six years before he commenced this lawsuit) are therefore time-barred. Minn. Stat. § 541.05, subd. 1(5). Consequently, even if this Court were to set aside Minnesota precedent and finds that Miksic's claims are not completely stale and barred, this Court still properly finds that Miksic's claims and damages are limited to tax years 2008 (returns and forms due in April and June 2009), 2009 (returns and forms due in April and June 2010) and 2010 (returns and forms due in April and June 2011) only.

**2.    Miksic's Damages Are Necessarily Limited.**

**a.    Miksic's Claimed FBAR Penalties Are Too Speculative.**

In a professional malpractice action, the proper measure of damages is the amount of damages proximately caused by the defendant's negligence. *Anoka Orthopaedic Associates, P.A. v. Mutschler*, 773 F. Supp. 158, 171 (D. Minn. 1991) (accountant

-43-

malpractice action). The controlling principle governing actions for damages is that "damages which are speculative, remote, or conjectural are not recoverable." *Hornblower & Weeks-Hemphill Noyes v. Lazere*, 301 Minn. 462, 467, 222 N.W.2d 799, 803 (1974).

As part of his claimed damages, Miksic seeks $1,404,862 for FBAR penalties. (Ex. 2, Miksic Dep., 184:17-185:21; Dkt. 27-16, Miksic Ex. 23, p. MIKSIC004257). Miksic, however, testified that he has appealed his FBAR penalties and has not yet paid anything for those penalties. (Ex. 2, Miksic Dep., 186:6-187:2). Cobb testified that the IRS may abate all of Miksic's FBAR penalties and if Miksic were to prevail in this lawsuit, Miksic would receive a double recovery. (Ex. 5, Cobb Dep., 257:7-11). As a result, Miksic's claimed damages of $1,404,862 for FBAR penalties should be considered too speculative and not recoverable in this action. *See, e.g. Lewin v. Wagner & Co., Ltd.*, 151 Ariz. 29, 34, 725 P.2d 736, 741 (Ariz. Ct. App. 1986) (holding that evidence regarding damages due to disallowance of stock straddle losses based on testimony of IRS agent was completely speculative as to the amount of damage caused by the accountants' alleged malpractice absent showing as to whether the agent's determination was likely to be upheld either at higher administrative level or against legal challenge to straddle losses); *Olson, Clough & Straumann, CPA's v. Trayne Properties, Inc.*, 392 N.W.2d 2, 5 (Minn. Ct. App. 1986) (affirming the trial court's determination that a portion of the plaintiff's damages in the accounting malpractice claim was too speculative and not recoverable as a consequence).

-44-

Further, as noted by Cobb, Miksic has set himself up for double recovery of his claimed FBAR penalties of $1,404,862 if he succeeds in both this action against the defendants and his current appeal before the IRS. Such a double recovery is prohibited under the election of remedies doctrine. *See e.g., Vesta State Bank v. Independent State Bank of Minnesota*, 518 N.W.2d 850, 855 (Minn. 1994) ("The purpose of the doctrine is not to prevent recourse to any particular remedy but to prevent double redress for a single wrong"); *Popp Telecom v. American Sharecom, Inc.*, 210 F.3d 928, 934 (8th Cir. 2000).

Accordingly, if this Court were to allow Miksic's lawsuit to go forward, it necessarily precludes any recovery for any FBAR penalties.

### b.    The IRS has Abated Miksic's Form 5471 Penalties.

After Miksic commenced this action, Miksic appealed the IRS' decision to assess $60,000 in penalties associated with Miksic's missed Form 5471 filings. In January 2016, the IRS abated those penalties. (Dkt. 27-14). As a result, Miksic cannot recover for IRS penalties associated with his Form 5471 filings under the election of remedies doctrine. *See, e.g., Vesta State Bank* 518 N.W.2d at 855. If this Court allows this litigation to proceed, it properly excludes any claims for Form 5471 penalties.

### c.    Miksic Cannot Recover for his Payment of any Delinquent Taxes.

As part of his damages, Miksic is claiming $324,225 for legitimate tax deficiencies he had to pay to the IRS and fees he paid to Holland & Knight for a tax court appeal of his legitimate tax deficiencies. (Ex. 2, Miksic Dep., 187:3-189:25, 194:6-197:1; Ex. 11, Miksic Ex. 29; Ex. 12, Taggart Report, p. 2). In a tax malpractice case,

-45-

the general rule is well settled that recovery is available for additional taxes owed by the plaintiff that were avoidable but for the negligence of the defendant, but not for other, unavoidable taxes. *See, e.g., O'Bryan v. Ashland*, 717 N.W.2d 632 (S.D. 2006) (stating that in ordinary circumstance, when a tax advisor's negligence leads to an underpayment of tax, the tax payor cannot recover as damages the tax deficiency itself because the tax liability arose not from the negligent advice but from the ongoing obligation to pay the tax). Accordingly, Miksic cannot recover the amount he paid for legitimate tax deficiencies, $324,225 (Ex. 11) or the $108,829.91 he paid to Holland & Knight for his tax court appeal relating to his legitimate tax deficiencies. (Ex. 2, Miksic Dep., 195:18-196:19; Ex. 10, Miksic Ex. 3, pp. MIKSIC004781-4801).

### d.    Miksic Cannot Recover any Attorneys' Fees for this Action.

As part of his claimed damages in this action, Miksic is demanding recovery of the attorneys' fees he has paid to bring this lawsuit. These include all the fees he has paid to Briggs & Morgan and a portion of the fees he has paid to Holland & Knight. (Ex. 2, Miksic Dep., 197:22-198:4, 198:14-203:22). Under well-settled Minnesota law, Miksic cannot recover these fees. *See, e.g. Whittney v. Buttrick*, 376 N.W.2d 274 (Minn. Ct. App. 1985) (attorney's fees are not generally included in measure of recoverable damages for negligence and cannot be recovered by client in a malpractice action against professional). This Court therefore properly precludes Miksic any recovery for any attorneys' fees paid to Briggs & Morgan or Holland & Knight relating to this malpractice lawsuit.

## VII.   CONCLUSION

For the foregoing reasons, the defendants respectfully request that this Court grant their Motion for Summary Judgment in its entirety and dismiss all of Miksic's claims with prejudice.  However, even if this Court allows this litigation to proceed, which it should not, this Court  necessarily limits Miksic's claims and alleged damages.

Dated:  July 22, 2016.

HINSHAW & CULBERTSON LLP


By:    s/Michael T. Berger
        Michael T. Berger            Reg. No. 350679
        M. Annie Santos            Reg. No. 389206
        Brent D. Kettelkamp        Reg. No. 0394919
        333 South Seventh Street, Suite 2000
        Minneapolis, MN  55402
        Telephone:  612-333-3434
        Fax:  612-334-8888
        mberger@hinshawlaw.com
        asantos@hinshawlaw.com
        bkettelkamp@hinshawlaw.com

        ATTORNEYS FOR DEFENDANTS
        BOECKERMANN GRAFSTROM MAYER,
        LLC, A MINNESOTA LIMITED LIABILITY
        COMPANY, F/K/A JOHNSON, WEST & CO.
        P.L.C., BOECKERMANN GRAFSTROM
        MAYER, P.A., AND JOHNSON WEST & CO.
        P.L.C.

121697189v2 0966517