CONFIDENTIAL

Todd F. Taggart, CPA

5017 Windsor Avenue, Edina, MN 55436

(612) 382-3861

Toddtaggart5017@gmail.com



## Response to Report of Cobb & Associates, Ltd.

I have been retained by Boeckermann Grafstrom Mayer, LLC to assist them in a lawsuit by a former client, Boris Miksic (Miksic), alleging damages as a result of provision of professional services by Boeckermann Grafstrom Mayer, LLC and Johnson, West & Co. P.L.C. (collectively referred to as BGM).[1] In particular, Boris Miksic has been assessed and has either paid or is appealing significant income tax, penalties and interest related principally to foreign bank accounts and foreign businesses.

I have been engaged to utilize my professional background and expertise in the general area of income tax to provide expert witness analysis, statement(s) and possibly testimony. I, as a sole practitioner, have responsibility for this engagement.

Arthur H. Cobb of Cobb & Associates, Ltd. has been retained by Miksic as an expert witness and in that regard, issued a report (Civil File No 15-CV-539, U.S. District Court - Minnesota) expressing certain opinions. This statement, in addition to addressing issues related to this dispute, analyzes and responds to that report and refers to that report as "Cobb".

### Introduction and Expression of Preliminary Opinions

Miksic engaged BGM to assist in the preparation of certain income tax returns. Specifically, Boris Miksic, individually engaged BGM to prepare his personal U.S. Federal and requested state income tax returns. In addition, it is my understanding that Cortec Corporation (Cortec), which is a U.S. S Corporation owned 100% by Miksic, engaged BGM to prepare its U.S. Federal and requested states income tax returns.

In connection with the tax returns for which BGM was engaged, certain forms were not filed. These are as follows:

- Form 5471, which is an IRS form used to report a financial interest in a foreign entity. This form is attached to a relevant tax return and is filed by U.S. citizens or residents who are officers, directors, or shareholders of certain foreign corporations. Penalties were assessed by the IRS in the amount of $60,000 for failure to file these forms for the tax years 2007-2009. Penalties asserted with respect to Boris Miksic's failure to file Forms 5471 for the tax years 2007-2009 were paid, but ultimately abated.

---

[1] Johnson, West & Co. P.L.C. (Johnson West) and Boeckermann Grafstrom Mayer, LLC merged effective October 1, 2012 (Miksic Exhibit 2). Miksic was a client of Johnson West and became a client of Boeckermann Grafstrom Mayer, LLC as a result of this merger.

1

**EXHIBIT 25**



CONFIDENTIAL

- Form TD F 90-22.1, which is a U.S. Department of the Treasury Form used to report a financial interest in or signature authority over a foreign financial account (which includes a bank account, brokerage account, mutual fund, trust, or other type of foreign financial account, exceeding certain thresholds).[2]   This form was filed separately from the income tax returns of relevant taxpayers and is commonly referred to as Foreign Bank Account Reporting (FBAR).  Penalties were assessed by the IRS in the amount of approximately $1,400,000 for willful failure to file these forms for tax years 2005-2010.  Penalties related to failure to file FBARs for the 2005-2010 years were appealed to the IRS (Miksic Exhibit 27) and it is my understanding that appeal has not been resolved.

- Finally, penalties of approximately $540,000 were levied against Boris Miksic related to failure to file Forms 3520 and 3520-A (related to a foreign entity controlled by Miksic known as the Rust Foundation) for the tax years 2005-2008.  Those amounts have been paid (Miksic Deposition, Exhibit 26).

In addition, Boris Miksic's personal Federal income tax returns were audited for the periods ending 2005-2009.  Those audits resulted, after appeals, in additional income taxes of almost $325,000.  Those amounts have been paid (Miksic Deposition, Exhibit 29).

In summary, the IRS has assessed the following penalties and income tax (amounts are approximate):

| | |
|---|---|
| Form 5471 Penalties | $     60,000 |
| FBAR Penalties | $ 1,400,000 |
| Rust Foundation penalties | $    540,000 |
| Total penalties | $ 2,000,000 |
| Income Taxes | $   325,000 |
| Total | $ 2,325,000 |

I have conducted a preliminary analysis of the facts surrounding the above matters, professional standards applicable to the preparation of income tax returns and claims of damages by Miksic.  Based on my preliminary analysis, my opinions include the following:

- BGM was engaged by Miksic with respect to the preparation of income tax returns for himself and Cortec.

- BGM, as the provider of income tax services, has a responsibility to be knowledgeable of and comply with governing professional standards, which include Treasury Department Circular 230 (Circular 230), American Institute of Certified Public Accountants (AICPA)

---

[2] This form has been superseded by FinCEN Form 114 for years which are not relevant to this discussion.

CONFIDENTIAL

Statements on Services for Tax Services and interpretations (SSTS et al) when engaged to provide income tax preparation services.

- BGM acknowledged certain inadvertent and unintentional oversights in the preparation of income tax returns for Miksic. (Affidavits of Cory Parnell (Parnell) and Corey Edmunds (Edmunds), Miksic Exhibit 2). Those oversights, however, relate to a small percentage of the penalties described above. In addition, the failures of Miksic to provide information and review his own tax returns overshadow BGM's oversights.

- BGM was not engaged to provide professional services to the Rust Foundation and was not aware of this entity.

- Penalties, interest, and tax deficiencies assessed against Miksic by the IRS were due to his failures to provide information to BGM (and others), his failure to review his own tax returns, and his inappropriate and ineffective delegation of his personal income tax responsibilities.

In addition, I have conducted a preliminary analysis of the report referred to as Cobb and based on that analysis, my opinions include the following:

- Cobb fails to correctly analyze governing professional standards in that he cites professional standards related to financial statement preparation in the context of standards applying to BGM's preparation of income tax returns.

- Cobb misstates Treasury Department requirements for paid preparers of tax returns.

- Cobb fails to convey the nature of income tax preparation services when he refers repeatedly to BGM as preparing and "filing" income tax returns. Income tax returns are prepared by income tax preparers and then filed by the taxpayer after a review of the information contained in that return.

- Cobb fails to adequately address the responsibility of an individual for their own tax returns and for the adequate review of those returns.

- Cobb fails to address the fact that Miksic attempted to delegate his tax filing responsibilities to an employee.

- Cobb fails to address the fact that tax questionnaires were annually provided to Boris Miksic and he declined to complete them. These questionnaires contained inquiries about foreign bank accounts and foreign trusts.

- Cobb fails to address that Miksic provided incomplete answers to BGM and that this contributed to the penalties he is attempting to recover from BGM.

3

CONFIDENTIAL

- Cobb fails to address that Boris Miksic, in addition to failing to inform his accountants of the existence of Rust Foundation, also failed to inform them that he had reportable income from that entity for the years 2005-2009 that was required to be included in his U.S. income tax returns.

- Cobb places undue reliance on in-person meetings and verbal questions, causing him to draw inaccurate conclusions. Professional standards governing tax preparation do not require that questions be asked verbally, nor that a tax preparer personally meet with a client.

- Cobb errs when he fails to address the fact that disciplinary actions have not been assessed against BGM by the IRS, indicating they believe Miksic is responsible for the failures to report.

- In the quantification of purported damages, Cobb fails to note that certain penalties that have been paid have in fact been abated.

- In the quantification of purported damages, Cobb fails to note that certain penalties asserted by the IRS in connection with FBAR filings approximating $1,400,000 have been appealed by Boris Miksic and that appeal, to the best of my knowledge, has not been resolved. Cobb is claiming compensation for damages not yet incurred.

- In the quantification of purported damages, Cobb may have included additional income taxes paid by Boris Miksic in connection with audits of his personal income tax returns in the amount of almost $325,000. Income tax deficiencies are not the responsibility of income tax preparers.

These opinions are more fully explained below.

My analysis and the preliminary opinions expressed above are part of an on-going process and may include consideration of additional documents and information which may influence or change these preliminary opinions.

## Detailed Analysis

In this section of my report, I will address in detail each of the preliminary opinions expressed above and I have ordered this section of my report in the same order as they are presented above. In most instances, I have summarized the preliminary opinions.

### BGM was engaged by Miksic to prepare tax returns

For the years at issue, Miksic engaged BGM to assist in the preparation of his Federal and requested state income tax returns (see, for example, Miksic Deposition, Exhibit 4). In addition, Cortec presumably engaged BGM to prepare its Federal and requested state income tax returns for those same years.

4

CONFIDENTIAL

### Applicable professional standards

Tax services provided by a CPA to a client are to be performed in accordance with professional rules, regulations, and guidelines. A tax preparer representing taxpayers before the Internal Revenue Service (IRS) is subject to the rules of Circular 230. As noted above, AICPA has issued guidance in the form of 7 SSTS's which set forth certain requirements for tax services performed by members of the AICPA.

In addition, members of the AICPA in public practice are subject to other professional standards that govern their services. These standards are comprehensive. For example, the portion of the AICPA Code of Professional Conduct (AICPA Code) that applies to members in public practice is over 120 pages in length.[3] I will not reiterate the General Standards of this document, set forth at Cobb, page 12, other than to note that the reference is inaccurate. Former ET Section 201.01 is re-numbered at 1.300.001. The General Standards remain the same.

Cobb also cites the AICPA Code as follows:

"Members should be diligent in discharging responsibilities to clients, employer, and the public. Diligence imposes the responsibility to render services promptly and carefully, to be thorough, and to observe applicable technical and ethical standards." (ET Section 56.05)" (Cobb at Page 12).

As part of the re-numbering and re-codification of the AICPA Code, this standard, effective December 15, 2014, now reads:

"The quest for excellence is the essence of due care. Due care requires a member to discharge professional responsibilities with competence and diligence. It imposes the obligation to perform professional services to the best of a member's ability, with concern for the best interest for who the services are performed, and consistent with the profession's responsibility to the public" (AICPA Code Section 0.300.060.02).

BGM was engaged by Miksic to prepare individual and corporate tax returns, as previously set forth. Both Corey Edmunds and Cory Parnell are both members of the AICPA.[4] Therefore, Circular 230 and guidance issued by the AICPA, including SSTS's and their interpretations and AICPA Code, apply to these engagements.

---

[3] The AICPA Code, which was re-numbered and re-codified effective December 15, 2014, contains these parts; the preface, which applies to all members, Part 1 which applies to a member in public practice, Part 2 which applies to members in business, and part 3 which applies to all other members. (AICPA Code Section 0.100.01)

[4] Corey Edmunds deposition, page 29 and Cory Parnell deposition, page 16

Sawers Aff., Ex. 25

CONFIDENTIAL

BGM's compliance with applicable professional standards (Forms 5471)

BGM, by way of an affidavit by Corey Edmunds, makes this statement:

"The failure to file FBARs and forms 5471 with Mr. Miksic's 2007-2010[5] individual tax returns was the responsibility of our CPA firm and was inadvertent and unintentional on our part" (Miksic Complaint at page 9).

Similarly, Cory Parnell in a separate affidavit states:

"On January 27, 2011, the IRS sent correspondence to Mr. Miksic indicating that he had failed to file form 5471 (for his ownership in EcoCortec) for 2007, 2008, and 2009. These omissions from the 2007, 2008, and 2009 tax returns that my firm prepared for Mr. Miksic were inadvertent and not intentional" (Miksic Complaint, at page 7).

As acknowledged by Edmunds and Parnell in their affidavits, it appears that BGM inadvertently and unintentionally missed meeting professional standards when it did not include Forms 5471 in Miksic's 2007, 2008, and 2009 tax returns related to his ownership in EcoCortec D.O.O. (EcoCortec). BGM was aware of the existence of EcoCortec (Parnell deposition, page 78 and Exhibit 60) and had the responsibility to prepare Forms 5471 for the tax years 2007-2009. Accordingly, it appears that BGM could have done more to comply with the applicable professional standards for preparing Form 5471 for EcoCortec

BGM was not aware of Cortec Hrvatska D.O.O (Cortec Croatia) (Parnell Deposition, page 105, Edmunds Deposition, page 82), but became aware of that entity after the IRS issued notices assessing penalties for a failure to file those forms and delinquent Forms 5471 were prepared (Cobb Report, Page 18). Therefore BGM could not have reasonably foreseen the need to include those forms in the returns of Miksic on a timely basis. BGM therefore did not fail to meet any of its professional obligations relating to filing Form 5471 for Cortec Croatia and Miksic is not entitled to claim damages for any costs related to this entity.

In summary, the only appropriate damages that Miksic may be entitled to claim relative to Forms 5471 are professional fees related to appealing the IRS penalties with respect only to EcoCortec.

---

[5] I am puzzled by the reference to 2010 in this affidavit. The IRS did not assess Form 5471 penalties related to that year. In addition, FBARs were transmitted to Miksic for the tax year of 2010 on June 16, 2011 with instructions to file by June 30, 2011. Therefore, for the 2010 year, no penalties were assessed related to Form 5471 filings and BGM prepared an FBAR for timely filing. I am not sure why Mr. Edmunds referenced that year.

CONFIDENTIAL

### BGM's compliance with applicable professional standards (Forms 1040 and FBARs)

BGM unintentionally and inadvertently missed meeting professional standards by not conducting further inquiry into the existence of Miksic's foreign accounts, and filing FBARS, for Miksic's foreign accounts for tax year 2007. They had, or should have had, knowledge of certain foreign bank accounts that may have existed in 2007, based on Miksic's response to questions relating to his foreign accounts held in 2006. BGM could have done more to inquire into the existence of foreign accounts for tax year 2007. [6]

In April of 2009 as it relates to the tax year 2008, Nate Panning of BGM, in an email to Angie McGillivray, inquired about the existence of foreign bank accounts (see discussion at McGillivray Deposition, pages 71-72). There is no evidence of a response to this inquiry. In addition, BGM inquired about the existence of foreign bank accounts in the annual tax questionnaire which Miksic ignored. Despite the fact that the client declined to provide any information, Miksic's tax returns indicated that foreign bank accounts in Croatia did exist. BGM should have done more to resolve these inconsistencies for FBAR filings for tax year 2008.

In the annual tax questionnaire for the tax year 2009, BGM inquired about the existence of foreign bank accounts. Miksic ignored this request. Despite the fact that the client declined to provide any information, Miksic's tax returns indicated the foreign bank accounts in Croatia did exist. BGM could have done more to resolve this inconsistency for FBAR filings for tax year 2009.

However, see discussion below under "The Responsibility of an Individual for their own tax returns" in which Miksic, as part of his deposition, easily identifies the "no" answer to a question regarding FBAR as incorrect. Miksic did not review his own returns, as required by tax law, and therefore erred in this regard.

As noted above, Miksic has been assessed penalties by the IRS totaling approximately $1,400,000 for willful failure to file FBARs. Cobb is claiming that all of these penalties (and related interest and professional fees) are the responsibility of BGM. This is unfair. The only damages that Miksic may be entitled to claim relate to unintentional and inadvertent actions related to the 2007, 2008, and 2009 years as explained above. In addition, Miksic contributed to and is the cause of these penalties for the following reasons and as further explained below:

- Miksic's specific responses to questions about foreign bank accounts were incomplete

- Miksic did not provide information to BGM as required by annual engagement letters

---

[6] An interesting question here is how helpful the responses to those inquiries might have been. According to the IRS, EcoCortec had an account at the Erste & Steiermarkishe Bank ending in 1782 that was never disclosed to them, even in FBAR filings by Holland & Knight in 2014 for the years 2005-2009 (Miksic Deposition, Exhibit 23). In addition, BGM prepared a 2010 FBAR filing in 2011 that also did not disclose this account. These filings occurred after Miksic was well aware of his FBAR filing responsibility. The failure of Miksic to fully disclose all foreign bank accounts was cited by the IRS as a factor in imposing the willfulness penalties for failure to file FBARs (Miksic, Exhibit 23)

**CONFIDENTIAL**

- Miksic did not complete annual tax questionnaires, which contain specific questions about foreign bank accounts

- Miksic failed to review his own tax returns

- Miksic attempted to delegate his tax filing responsibility to his CFO, who was unaware of his expectations and had little tax experience. In fact, when BGM sent both the 2006 FBAR filing to Miksic and the 2010 FBAR filing to Ms. McGillivray for review as directed by Miksic, the result was an incorrect and incomplete filing.

- The IRS is proposing willful penalties for failure to file FBARs and citing Miksic's failure to disclose all of his foreign accounts as a primary reason. Penalties for willful failures are much higher than those for inadvertent failure. Miksic is attempting to blame BGM for penalties caused by his own actions.

BGM's compliance with applicable professional standards (Forms 3520 and 3520-A)

BGM had no knowledge of the Rust Foundation prior to being notified as a result of IRS audits or this litigation (Edmunds Deposition, page 73, Parnell deposition, page 104).

This is acknowledged by Holland & Knight LLP (Holland & Knight), a law firm engaged by Miksic, who states "(the) IRS correctly states that Mr. Miksic did not disclose the existence of the Foundation to his CPA's." (Parnell Exhibit 63).

This is acknowledged by the IRS who states "The taxpayers did not disclose the existence of the trust to his tax advisor" (Miksic Exhibit 25).

There is no evidence to indicate that BGM was engaged to provide professional services to Rust Foundation. As a result, BGM did not fail to meet any professional obligations with respect to the Rust Foundation.

Cobb asserts that BGM "knew that Mr. Miksic had interests in trusts, for example: Mr. Miksic had set up a foundation for Mr. Miksic's parents" and references Parnell deposition, page 104, and Parnell Deposition Exhibit 54 (Cobb, page 27).

The applicable portion of this Parnell Exhibit 54 apparently reads "Set up foundation which will support (not clear) as its sole beneficiary". Mr. Parnell identifies this handwriting as that of Cliff Lozinski (Parnell Deposition, Page 124). I am not able to understand what the portion identified as "not clear" means.

However, what it does not say is very clear. It does not say that this foundation is foreign. More importantly, it does not mention that Miksic had control of the trust, which is the critical tax issue to foreign trusts. And Mr. Parnell has only a vague recollection of "hearing" about a foundation for Miksic's parents (Parnell Deposition, page 104).

The IRS, in assessing penalties related to the Rust Foundation, lays out certain portions of applicable tax law as it relates to foreign trusts. These penalties are based on the fact that Miksic "owns" the trust (Miksic Exhibit 25) and goes on to say "The taxpayer had control of the funds

8

CONFIDENTIAL

and the distributions from the trust". Further "Funds from the trust were distributed to the taxpayer without limitations as to their use". The distributions received by Miksic from Rust Foundation were significant (over $1,000,000 in 2008). The IRS also assessed additional income taxes as a result of unreported taxable income in the years 2006, 2007, and 2008 related to the Rust Foundation.[7]

These are significant transactions that Miksic did not share with BGM. To present a written note in an obscure document that contains little information and a vague recollection as evidence of BGM's duty to know about the Rust Foundation is not credible – especially when Miksic affirmatively tells the IRS that he never disclosed the Rust Foundation to BGM. Because Miksic did not disclose the existence of Rust Foundation to BGM, they are not responsible for any assessed penalties, interest or associated professional fees.

Cobb improperly applies financial statement standards to tax preparation engagements

Cobb at page 12 references AICPA Professional Standards AR Section 100.26 and 100.28. This standard relates to financial statement preparation and does not apply to engagements for the preparation of income tax returns.

AR Section 100, related to Compilation and Review of Financial Statement was superseded in December, 2010 by the issuance of Statements on Standards for Accounting and Review Services (SSARS) No. 19. SSARS No. 19 was superseded by the issuance of SSARS 21, for periods beginning after December 15, 2015.[8]

Engagements for the compilation, review, and audit of financial statements are markedly different from those for the preparation of tax returns and are subject to different standards. A financial statement engagement requires independence and the testing and verification of information.

Tax preparers, on the other hand, are advocates for their clients (SSTS No. 1, paragraph 4) and are not required to test and verify all information presented them by their clients. "In preparing or signing a return, a member may in good faith rely, without verification, on information furnished by the taxpayer or third parties" (SSTS No 3, Paragraph 2).

The inclusion of a standard related to financial statement preparation as a reference in the context of a tax return engagement is not correct and Cobb erred by including it.

He also errs when he refers to it in Cobb, under the heading "Professional Standards" at page 21. There he states "(BGM was responsible to) understand Mr. Miksic's business activities, background and financing interests". This is an obvious reference to former AR Section 100, which as shown above, clearly does not apply to tax return preparation engagements.

Cobb continues to incorrectly apply professional standards at Cobb, under the heading "Public Information", page 30, where he quotes an accounting and review professional standard at

---

[7] Attachment to Letter from Holland & Knight to the IRS dated September 25, 2015

[8] Source – www.aicpa.org

9

CONFIDENTIAL

footnote 10 and makes the assertion "Mr. Miksic's ties to Croatia had been publicly reported and would be expected to be generally understood by Boeckermann" in the initial heading of that sentence. Tax preparation professional standards contain no such requirements.

Cobb errs by including repeated references to professional standards which are not applicable to tax return preparation engagement and reveals himself to be not aware of the distinction between guidance applicable to financial statement engagements and tax return preparation engagements.

<u>Cobb misstates Treasury Department requirements for paid preparer of tax returns</u>

Cobb makes two references that misstate the responsibility of paid preparers of tax returns. Specifically,

- "Beckermann's representations that the 2005, 2006, 2007, and 2010 Forms 1040 were true, correct and complete and, thereby..."[9]

- "Beckermann's representations that the 2005, 2006, 2007, 2008, 2009, and 2010 Forms 1040 were true, correct and complete and, thereby..."[10]

Applicable guidance that applies to tax preparers is not that expressed by Cobb, but instead is

- "Under the penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and **to the best of my knowledge and belief**, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is **based on all information of which preparer has any knowledge**" (emphasis added).[11]

The differences between the expectation expressed by Cobb and the actual requirement is significant. The IRS acknowledges that the taxpayer is responsible only to the extent of their knowledge and belief. In addition, the paid preparer is responsible only to the extent that the preparer has knowledge of pertinent information.

Cobb implies that BGM bore the responsibility to ensure Miksic's tax returns were true, correct, and complete regardless of what information they were provided or were otherwise aware. This misrepresents applicable guidance and further reveals himself to be unaware of the requirements applicable to tax preparation.

<u>Tax return preparation engagements do not include the filing of returns</u>

Cobb frequently refers to BGM as either "filing" tax returns and forms or failing to file tax returns and forms. This is not the case. Tax preparers are responsible, under both professional

---

[9] Cobb at page 24

[10] Cobb at page 24

[11] 2015 Form 1040, page 2

CONFIDENTIAL

standards and the engagement letters between BGM and Miksic, for the preparation of tax returns. The taxpayer is responsible for the review and filing of those returns. [12]

This is clearly indicated in the transmittal letters accompanying Miksic's returns. [13]

By referring to BGM as filing tax returns, Cobb implies that BGM acted unilaterally with respect to tax return engagements, fails to convey the shared responsibility between tax return preparers and their clients, and implies that he does not understand basic concepts related to the practice of tax.

Miksic's responsibility for his own tax returns

Engaging a tax preparer to prepare tax returns does not commit that firm or person to ensure universal compliance with tax laws. A tax preparer is only required to provide services as contracted, through an engagement letter or other type of work arrangement. This is the only possible way that services can be provided without exposing the tax preparer to unknown liability.

In addition, the active participation by the taxpayer in the preparation and filing of tax returns is critical. "Our self-assessment tax system can function effectively only if taxpayers file tax returns that are true, correct, and complete. A tax return is prepared based on a taxpayer's representation of facts, and the taxpayer has the final responsibility for positions taken on the return." [14]

The IRS acknowledges this as part of their report assessing penalties relative to the Rust Foundation:

"Also, reliance on another party to comply on the taxpayer's behalf for filing or paying obligations is not reasonable cause since the taxpayer is responsible for meeting his tax obligations and that responsibility cannot be delegated" [15]

BGM provided engagement letters to Miksic annually that outlined his responsibilities to assist in the preparation of his income tax returns. Miksic signed certain of these letters however "(I) probably didn't even read it, but it is a standard agreement letter they send almost every year to me" [16] These letters required Miksic to provide information to BGM. For example, the

---

[12] It bears mentioning that, in prior years when returns were paper-filed, the physical filing was done by the taxpayer. Most taxing jurisdictions now require electronic filing (e-filing) so that the tax preparer actually transmits the income tax return to the taxing authorities. However, this does not constitute "filing" in the sense that the tax preparer files the returns. Taxpayers engaging tax preparers complete and sign e-filing authorizations, representing to the tax preparer that they have reviewed and agree with the income tax returns and authorize the tax preparer to transmit the returns to the taxing authority. The responsibility of filing the return has not changed. It still rests with the taxpayer.

[13] See Miksic Deposition, Exhibits 5, 7, 11, 12, and 13

[14] SSTS No. 1, Paragraph 10

[15] Miksic Deposition, Exhibit 25

[16] Miksic Deposition, page 58 and Miksic Exhibit 4

11

CONFIDENTIAL

engagement letter related to BGM's preparation of Miksic's 2006 tax return contains this sentence "It is your responsibility to provide all of the information required for the preparation of complete and accurate returns."[17] Similar or identical language is present in BGM's engagement letters for the years 2007 (Miksic Deposition, Exhibit 6), 2009 (Miksic Deposition Exhibit 8, and 2010 (Miksic Deposition, Exhibit 9).[18]

Of particular relevance to these matters is that these engagement letters included documents that contained questions related to foreign income, bank accounts, and trusts. When Miksic is asked, for example, whether he provided information on foreign income or foreign taxes for the 2006 tax year, his response was "I didn't communicate with them on that. That was mostly done through Angie. She provided everything she had that they asked for"[19] Similarly, when asked if he provided information about foreign trusts or foreign bank accounts, he replies "I gave all the information that I had to Angie, and she – she gave it to them"[20]

We know now that, relating to the 2006 tax year:

- Miksic had FBAR reporting responsibilities (according to the IRS) for 11 accounts (Miksic Deposition, Exhibit 23)

- Miksic had disclosure responsibilities related to the Rust Foundation (Miksic Deposition, Exhibit 25)

- Miksic received distributions from the Rust Foundation in the amount of $10,436 (Cobb at page 25)

- Miksic had unreported taxable income from the Rust Foundation of over $50,000[21]

Miksic, according to his own deposition testimony, did not read the legal contracts he entered into with BGM, he did not read requests made to him by BGM, and he did not provide information that was requested. He states that he gave information to his CFO (Angie McGillivray) to supply to BGM, but then goes on to state "Because I travel so much all over the world, you know, I'm never there. So I gave all of my receipts at the end of the year to her. And she's supposed to give it to them."[22]

---

[17] Miksic Deposition Exhibit 4, page one

[18] I presume this language was also present in the engagement letters for 2005 and 2008, but I was not provided those documents.

[19] This reference is to Angie McGillivray, identified by Boris Miksic as the CFO for Cortec (Miksic Deposition, Exhibit 31). This quotation comes from Miksic Deposition, page 62

[20] Miksic Deposition, page 63

[21] See attachment to letter from Holland and Knight dated September 25, 2015 entitled "Unreported Income" listing, under the heading "PFIC – other income, account number 230-611936" in the amount of $2,224 and "Capital Gain and Loss, account number 230-611936" in the amount of $49,758. This account number is identified by the IRS as belonging to the Rust Foundation (see Miksic Deposition, Exhibit 23)

[22] Miksic Deposition, pages 63 and 64

12

<u>CONFIDENTIAL</u>

Miksic also did not review his tax returns prior to filing. With respect to his 2006 tax returns, he states "They gave me a stack of paper like this (indicating) to sign. That's what I did."[23] He also believed that his time was too valuable to review his own tax returns (Miksic Deposition, page 96). Yet when asked during his deposition whether he believed that a question related to foreign accounts was accurate, he was easily able to identify a "no" answer as incorrect.[24] Had Miksic read his tax returns to ensure that they were true, correct and complete (to the best of his knowledge) he would have filed returns with correct answers to questions relating to foreign activity. Miksic's failure to provide requested information to BGM and failure to review his tax filings for any omissions or misstatements before filing, as directed by BGM, caused any penalties or damages he claims to have suffered.

<u>Miksic attempted delegation of his tax responsibilities</u>

In addition to not reviewing his income tax returns, Miksic attempted to delegate his responsibilities for understanding and providing information to Angie McGillivray, the CFO of Cortec. In a question about what role Ms. McGillivray played in providing tax information to BGM, he states "Just about all of it she did."[25]

Ms. McGillivray was not aware of Miksic's expectations and, per her deposition, viewed her role quite differently.

Per Miksic, he expected Ms. McGillivray to:

- Read and understanding BGM engagement letters (Miksic Deposition, page 65)

- Furnish information regarding his foreign income and foreign taxes (Miksic Deposition, page 62)

- Provide information regarding his personal taxes (Miksic Deposition, page 28)

- Review his Federal income tax returns to make sure there were no omissions or misstatements in the returns before Miksic signed them (Miksic Deposition, page 85)

- Be fully aware of all of his financial accounts in which he had an interest (Miksic Deposition, page 85 and again at page 136)

Ms. McGillivray responses to these expectations are:

- Miksic did not ever discuss engagement letters with her (McGillivray Deposition, page 32)

---

[23] Miksic Deposition, page 67

[24] Miksic Deposition, page 71

[25] Miksic Deposition, page 49

**CONFIDENTIAL**

- Was not under the impression that that she was responsible for completing the annual tax questionnaires (McGillivray Deposition, page 38)

- Was never asked to fill out the annual tax questionnaires (McGillivray Deposition, pages 38 and 39)

- Did not read BGM engagement letters (McGillivray Deposition, page 39)

- Did not know all the financial accounts in which Miksic had an interest (McGillivray Deposition, page 30)

- Does not recall any discussions with Miksic about his 2005 through 2010 tax returns (McGillivray Deposition, page 40)

- Did not review Miksic's completed 1040 forms before he signed them (McGillivray Deposition, page 44 and again at page 47)

- Did not know about Miksic's personal items (McGillivray Deposition, page 45)

- Cannot think of any reason that Miksic believed she was fully aware of his financial accounts (McGillivray Deposition, page 49)

Instead, Ms. McGillivray viewed her role as a messenger. "Q. He would just give you information and – A. And ask me to forward it to Johnson West or Cory Parnell specifically" (McGillivray Deposition, page 33 and similarly when she describes her role as that of conduit at page 102). She did not fill out the questionnaire "Because I did not think that was part of my job duties as the corporate controller" (McGillivray Deposition, page 38).

I agree with Cobb that Miksic was responsible to file true, correct, and complete tax returns (to the best of his knowledge) (see, for example, this statement at Cobb 22). It is clear that Miksic failed to properly explain his expectations to Ms. McGillivray, to ensure that she followed through on his expectations, and to provide to her the necessary information that would have allowed her to fulfill his expectations. These failures contributed to the filing of incorrect tax returns by Miksic and the failure to file certain returns.

Tax questionnaires were provided annually to Miksic

Tax questionnaires were provided annually to Miksic that included questions about foreign income, foreign taxes, foreign bank accounts, and foreign trusts[26] Miksic apparently declined to read, understand, or complete these questionnaires.[27]

---

[26] See, for example Miksic Deposition, Exhibit 4,6,8 and 9

[27] All of the questionnaires provided to me are completely blank and Cobb also references this at page 29

.14

CONFIDENTIAL

Cobb, at page 29, asserts that "Mr. Edmunds "had no communication with Mr. Miksic during the preparation of his tax returns" (Affidavit of Corey W. Edmunds, paragraphs 4 and 12) and, thereby, is understood to have not addressed interests or signature authority over a financial account in a foreign country or Mr. Miksic's U.S. ownership of and distributions from the Rust Foundation with Mr. Miksic." This is not correct. Miksic was provided annual tax questionnaires containing questions directly on point with these issues and declined to respond. In addition, Edmunds was directed by Miksic to communicate through Ms. McGillivray and the above discussion illustrates the ineffectiveness of that arrangement.

<u>Incomplete answers provided by Miksic</u>

Cobb states, at page 32, that "(BGM) did not ask Mr. Miksic about financial accounts in foreign countries." This is not accurate. Miksic was asked each year to provide complete information in the engagement letter, to provide information on foreign accounts in the tax questionnaire, and was asked to review his own tax returns in the transmittal letter accompanying his tax returns.

In addition, Miksic was specifically asked for information related to his foreign accounts for the 2006 tax year in an email from Ryan Schumacher and responded that he had two such accounts, both at Partner Banka (Miksic Deposition, Exhibit 18). We now know that, according to the IRS, for the 2006 tax year:

- Three personal accounts at Partner Banka,

- One personal account at UBS

- One joint account at UBS[28]

In addition, he had a financial interest in six other foreign bank accounts owned by other entities.[29] Miksic states that he did not provide the additional information because he was traveling and did not have time to look for it (Miksic Deposition, pages 135 and 136) and that he relied on Ms. McGillivray to supply that information (Miksic Deposition, page 136).

See above, under "Miksic attempted delegation of his tax responsibilities" for a discussion of the ineffectiveness of Miksic's attempted delegation to Ms. McGillivray.

In a second instance, BGM prepared and forward Miksic's 2006 FBAR and forwarded it to him for review. This contained 2 disclosures (Miksic Deposition, Exhibit 19) when the IRS asserts there were 11 (Miksic Deposition, Exhibit 23).

Similarly, in a third instance, BGM prepared Miksic's 2010 FBAR and, at the direction of Miksic, forwarded it to Ms. McGillivray for her review (Miksic Deposition, Exhibit 11). This contained 4 disclosures when in fact the IRS asserts that 12 were required (Miksic Deposition, Exhibit 23).

---

[28] Miksic Deposition, Exhibit 23

[29] Id.

CONFIDENTIAL

Cobb does not explain how these incomplete filings, based on information from Miksic, reconcile with his assertion that BGM did not ask Miksic about foreign accounts.

In a fourth instance, after the IRS notified Miksic that it was examining his FBAR filings and he retained Holland & Knight to file corrected or previously unfiled FBAR filings, Miksic did not disclose all of the accounts in which he had a foreign interest (see Appendix A) which indicates 17 separate failures to report for the years 2005-2010.[30] It is apparent that the willfulness aspect of the FBAR penalties assessed by the IRS came as a direct result of Miksic's failure to fully disclose his foreign accounts in the Holland & Knight filing.[31]

Therefore, Cobb errs by not addressing the incomplete answers by Miksic to BGM and again to Holland & Knight and, by that omission, attributes all of the fault for these failures to BGM, which is incorrect.

Miksic had unreported income from the Rust Foundation

The IRS discovered, as part of their income tax examinations of Miksic's tax returns, significant unreported taxable income for the years 2005-2009 from the Rust Foundation.[32] This fact was cited by the IRS as a contributing factor to why they believe that penalties for willful failure to file FBARs are appropriate.[33]

Cobb fails to address the fact that Miksic not only failed to tell BGM about the existence of the Rust Foundation (a fact acknowledged by the IRS[34] and Holland and Knight[35]) but he also failed to report to them that his income tax returns during the years 2005-2009 should have included taxable income from that entity as result of significant and ongoing cash distributions to him – especially after the engagement letters asked for information relating to foreign income. Had Boris Miksic disclosed his reportable income from the Rust Foundation to BGM, they would have had the opportunity to identify his foreign trust reporting obligations.

Cobb's reliance on verbal questions and in-person meetings

Cobb places emphasis on the fact that, in certain instances, BGM did not verbally ask certain questions of Miksic or personally meet with him.

---

[30] This is an astounding failure. At the time of the 2014 FBAR filings, Miksic was fully aware of his FBAR filing requirements and had purportedly spent hundreds of thousands of dollars in professional fees to address his IRS problems. He had apparently suffered a physical collapse when informed of possible criminal charges in connection with failure to file FBAR. If anyone was motivated to fully disclose any and all interests in foreign accounts in his 2014 filings, one would think it would be Miksic.

[31] Miksic Deposition, Exhibit 23 contains this statement by the IRS in explaining why the willfulness penalty for failure to file FBARs applies (in their judgment) "Each of the FBARs that were filed did not include all the foreign bank accounts that he had a financial interest in, or ownership or other authority over."

[32] Miksic Deposition, Exhibit 25

[33] Id.

[34] Id.

[35] Parnell Deposition, Exhibit 63

16

CONFIDENTIAL

- "Boeckermann did not have a policy or practice to meet with clients prior to filing a return"[36]
- "Mr. Parnell had not "ever asked Mr. Miksic if he had any personally owned foreign accounts"[37]
- "Mr. Edmunds "had no communications with Mr. Miksic during the preparation of his tax returns"[38]
- "Mr. Parnell and Mr. Edmunds did not ask Mr. Miksic about financial accounts in foreign countries"[39]

I am not aware of any professional standard or Treasury Department guidance which require a tax preparer to verbally ask a question or personally meet with a client. In fact, in my experience it is common for communication to take other forms, such as email, text, or other written communication.

In addition, as discussed above at "Tax Questionnaires were provided annually to Miksic", I show that Miksic was indeed asked to provide information, through a tax questionnaire, but declined to do so.

Therefore, Cobb errs when he relies on personal communications that are not required by applicable professional standards and applies those incorrect conclusions to fault BGM.

Preparer Penalties have not been assessed

The IRS has a wide variety of disciplinary actions that can be taken with respect to tax return preparers who do not discharge their required duties under Circular 230. These include financial penalties[40], suspension or disbarment from practice before the IRS[41], or censure.[42]

Cobb fails to address the issue that the IRS, despite ample opportunity to do so, has declined to assess any disciplinary action or penalty against BGM. On the contrary, they make an affirmative statement that Miksic did not share crucial information with BGM regarding the Rust Foundation:

"The taxpayers did not disclose the existence of the trust to his tax advisor."[43]

---

[36] Cobb, at page 9

[37] Id, at page 29

[38] Id.

[39] Id., at page 32

[40] Internal Revenue Code Section 6694

[41] 31 U.S.C. Section 330(b)

[42] Id.

[43] Miksic Deposition, Exhibit 25

17

CONFIDENTIAL

It is also relevant to note that Holland & Knight, in their appeal of FBAR penalties, urge the IRS to levy penalties against BGM (Miksic Deposition, Exhibit 27 at page 7) and, to date, the IRS has refused to do so.

Therefore, by declining to discipline BGM in any way, the IRS, through their actions and above, with their words, asserts that the responsibilities for assessed penalties lies with Miksic.

Penalties included in damage claims that have been abated

In his damages number, Cobb appears to have included penalties related to failure to file Forms 5471 that in fact have been abated. It appears that the IRS abated all previously assessed penalties for failure to file Forms 5471 in the amount of $60,000.[44]

Cobb at page 2 presents a line item in the claim for damages in the amount of $2,338,392 for "IRS penalties and Interest". Cobb, however, does not provide any details behind this number. If abated penalties are included in this number, they should be removed along with any refunded interest.

Penalties included in damage claims that are currently under appeal

In his damages number, Cobb appears to have included penalties for willful failure to file FBARs that are currently under a Formal Protest and Request for Appeals with the IRS (Miksic Deposition, Exhibit 27, prepared by Holland & Knight and dated May 26, 2015). Cobb has not provided any evidence to indicate this appeal has been resolved. If the appeal remains unresolved, Miksic has not yet incurred these damages.

As noted above, Cobb at page 2 presents a line item in the claim for damages in the amount of $2,338,392 for "IRS penalties and Interest". Cobb has not provided the details behind this number. If penalties are included in this number which have not been incurred by Miksic by reason of appeal to the IRS for abatement, they should be removed along with any related interest.

Penalties included in damage claims may be income tax deficiencies

Above, at Introduction and Expression of Preliminary Opinions, I list penalties and taxes, in approximate amounts that I am aware of as result of reviewing documents provided to me. These total $2,325,000. As noted above, Cobb at page 2 presents a line item in the claim for damages in the amount of $2,338,392 for "IRS penalties and Interest". Cobb has not provided with the details behind this number.

The total that I present above and Cobb's total are similar in amount. My total includes the payment of an income tax deficiency of approximately $325,000, which should not be included in the claim for damages as it does not relate to Form 5471, 3250, 3250-A or FBAR filings.

Tax preparers are not responsible for the tax liabilities of their clients.[45]

---
[44] IRS letter dated January 13, 2016 at MIKSIC 006713

18

CONFIDENTIAL

If Cobb has included an income tax deficiency in the quantification of damages, it should be removed along with any related interest.

### Summary

Miksic has been assessed Federal penalties, interest and income tax deficiencies of approximately $2,325,000 (as summarized in the opening paragraphs of this statement) and is claiming related professional fees as his damages in this lawsuit. Cobb would have us believe that BGM is responsible for all of these alleged damages. Yet, as shown above, a significant portion of the penalties he cites:

- Have been abated

- Are the result of Miksic's own failures to provide information, failure to adhere to the terms of his engagement of BGM, ineffective attempts to delegate his own tax responsibilities, and failure to inform or engage BGM in certain matters related to the Rust Foundation

- Are currently under appeal to the IRS and that appeal is unresolved

He may have also included an income tax deficiency in his heading "IRS penalties and interest", which is a liability of Miksic that cannot be transferred to BGM.

BGM could have done more to meet professional standards as they relate to the Form 5471 filings for EcoCortec in 2007, 2008 and 2009, and to resolve inconsistencies in foreign bank account reporting in Miksic's 2007, 2008 and 2009 tax returns. These actions, or inadvertent and unintentional inactions, however are over-shadowed by Miksic's persistent failures as described above.

Penalties and Interest, Fees and Costs and Financial Damages

Form 5471

BGM acknowledged responsibility for 5471 filings for EcoCortec. BGM, however, filed those forms and any penalties related to 5471 forms for EcoCortec and Cortec Croatia have been abated. BGM is therefore not responsible for any financial damages, except potentially some portion of professional fees related to a penalty appeal.

FBAR

BGM acknowledged responsibility for FBAR filings. Based on 2006 filings, BGM may have been under inquiry notice for 2007, but it sent its questionnaire to Miksic who was aware of his FBAR filing requirements. Similarly, BGM sent a questionnaire to Miksic in 2008 and Panning sent his email asking for information on Miksic's foreign accounts, like Schumacher did in 2007

---

[45] It is not possible to transfer this liability from taxpayer to tax preparer. If it were possible, the business of professional tax preparation would not exist. Taxpayers who agree, as in this instance, with their tax liabilities as determined by taxing authorities are responsible to pay those taxes.

19

**CONFIDENTIAL**

for 2006 tax year, and Miksic failed to respond. They also sent a questionnaire for 2009. Finally, BGM sent questionnaires in 2010 and prepared an FBAR report which Miksic filed. As noted by the IRS, despite Miksic's knowledge of FBAR filing requirements Miksic did not disclose his foreign accounts to BGM. Further, the IRS only issued its willfulness penalties after Miksic failed to disclose all of his foreign accounts to Holland & Knight. However, had Miksic read his tax returns as required by tax law and instructed by BGM, no penalties would have been assessed as he readily recognized that the answer to whether he had foreign accounts was "yes". Any financial damages suffered by Miksic was the result of, and exacerbated by, his own failure to disclose his financial accounts to BGM, Holland & Knight and the IRS.

<u>3520 and 3520-A</u>

BGM has no responsibility for any potential damages as Miksic never told BGM about the Rust foundation.

### Data or Other Information Considered

In developing my opinions and conclusions, and in preparing this report, I relied upon my educational and professional experience, discussions with other professionals, and reading and analysis of certain documents and information, including, but not limited to:

- Verified Complaint and Jury Demand

- Answer

- 8/17/2015 Letter from Plaintiff's counsel

- Second Affidavit of Expert Review

- Email thread from Monica Yang to Angie McGillivray and Nathan Panning dated April 11, 2011 regarding Boris' Foreign Bank Accounts, Bates numbered BGM000506-507

- Letter from the Internal Revenue Service Large Business & International Division to Boris A. Miksic dated October 5, 2011, Bates numbered BGM018453-18464

- Email from Monica Yang to Angie McGillivray and Nathan Panning dated April 11, 2011 regarding Boris' Foreign Bank Accounts, Bates numbered BGM030738

- Email thread from Ivana Radic Borsic to Angie McGillivray dated April 12, 2011 regarding Boris' Foreign Bank Accounts, Bates numbered BGM030739

- Report of Foreign Bank and Financial Accounts, Bates numbered BGM030740-30741

- Email from Kevin Packman to Corey Edmunds and Cory Parnell regarding 2011 FBAR dated June 13, 2012, Bates numbered BGM031669-31676

CONFIDENTIAL

- Letter from Johnson, West & Co., PLC to Cortec Corporation, dated June 21, 2012, regarding Form F 90-22.1, Bates numbered BGM036000-36010

- Deposition Transcript of Boris A. Miksic and Exhibits 1-30

- Deposition Transcript of Angie McGillivray and Exhibits 31-34

- Deposition Transcript of Cory Parnell and Exhibits 35-68

- Deposition Transcript of Corey Edmunds and Exhibits 69-78

- Documents related to FBAR penalties, Bates numbered Miksic-003783-3861

- FBAR filings, Bates numbered Miksic-006734-6831

- Treasury Department Circular 230

- American Institute of Certified Public Accountants (AICPA) Statements on Services for Tax Services and interpretations (SSTS et al)

- AICPA Code of Professional Conduct

- FinCEN Form 114

- Report of Cobb & Associates, Ltd. dated March 31, 2016

- www.aicpa.org

- 2015 Form 1040

- Internal Revenue Code Section 6694

- 31 U.S.C. Section 330(b)

- Engagement letters between Cortec and BGM, Bates numbered BGM026227-26229, BGM026661-26663, BGM028708-28709, BGM029614-29616, BGM031052-31056, BGM033140-33143, and BGM034085-34086

- Boris A. Miksic Forms 5471 regarding EcoCortec, D.O.O. for 2007, 2008 and 2009

- Holland & Knight Memorandum and Exhibits dated August 6, 2014, Bates numbered Miksic-001448-1494

- Holland & Knight Memorandum dated August 11, 2014, Bates numbered Miksic-001442-1447

CONFIDENTIAL

- Documents Bates numbered BGM036253 - 36276, Miksic-003609 - 3682, and Miksic-003686 – 3782

- Cortec Corporation v. Erste Bank der oesterreichischen Sparkassen AG, United States District Court Southern District of New York Complaint and Jury Trial Demand, June 28, 2007, and Decision and Order Granting Defendant's Motion to Dismiss, February 11, 2008

- irs.gov; and Forms TD F 90-22.1, Forms 5471, Forms 3520 and Forms 3520-A

### Qualifications

I spent almost all of my professional career as a CPA in the Minneapolis office of Grant Thornton LLP (GT). GT is an international accounting firm with over 50 offices in the United States. GT is the U.S. member firm of Grant Thornton International (GTI), which has member firms in over 130 countries around the world. My functional role with Grant Thornton was in tax. I was promoted to partner in 1997. During my career, I principally served companies in the real estate, construction, manufacturing and transportation industries. I also served the owners of those business entities. Many of my clients had international operations. I assisted my clients with their world-wide tax compliance obligations and consulted with them on numerous tax issues.

I retired from Grant Thornton in 2014 and now work part time as a consultant. I serve a small number of clients, principally high net worth individuals, manage a piece of residential real estate, and serve on the board of a for-profit company. For my client's compliance needs, I utilize the staff and software of a local CPA firm.

My work at GT consisted, at least in the last 17 years of my career, principally in coordination of various services provided to my clients by experts within the firm, identification of tax saving and minimization opportunities, and risk management.

I have no prior experience as an expert witness. During my career I was involved in client related litigation on rare occasion. I can only recall two instances; testimony in a marital dispute and a deposition related to a client lawsuit. But, I do have over three decades of experience in managing client relationships and dealing with complex tax issues. I believe I am qualified to provide the services for which I am contracted.

22

CONFIDENTIAL

**Listing of Cases in Which Trial or Deposition Testimony Was Provided Within the Proceeding Four Years**

None.

## Compensation

I am compensated at the rate of $290.00 per hour for professional fees in connection with this matter, plus expenses.

Todd F. Taggart, CPA

April 27, 2016

23

**CONFIDENTIAL**

**Resume**

24

Sawers Aff., Ex. 25

## TODD F. TAGGART, CPA, CCIFP



Todd has over 30 years of experience serving as the principal tax and business adviser to closely and family held businesses. He has extensive experience in the construction and real estate industries, in addition to his work with transportation companies, manufacturers, distributors and others. Todd also has a specialty practice serving high net worth individuals, working with them on a wide variety of income tax, estate and gift tax, and other strategies designed to minimize their overall tax burden.

After a fulfilling career as a tax partner in an an international accounting firm, Todd left Grant Thornton LLP in 2014 to work as an independent contractor on a part time basis. He currently consults with clients on a variety of tax and business matters and works with a local CPA firm on compliance aspects. He also serves on the Board of Directors of a large heavy equipment dealer.

Todd has a Masters degree in Accounting from the University of Nebraska and a Bachelor of Science in Accounting from Union College. He is a CPA and was one of the first individuals to earn the credential of Certified Construction Industry Financial Professional. Todd is a frequent speaker and writer of topics of interest to his clients. He belongs to the American Institute of CPAs and the Minnesota Society of CPAs.

**Contact Information**

Toddtaggart5017@gmail.com

Cell phone: 612.382.3861
5017 Windsor Avenue
Edina, MN 55436

**CONFIDENTIAL**

Appendix A

25



REDACTED