# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Boris A. Miksic,                                    Civil File No. 15-CV-539

     Plaintiff,

v.

Boeckermann Grafstrom Mayer, LLC, a
Minnesota limited liability company, f/k/a
Johnson, West & Co. P.L.C., Boeckermann
Grafstrom Mayer, P.A., and Johnson West
& Co. P.L.C.,

     Defendants.

---

### Report of Cobb & Associates, Ltd.

---

     Cobb & Associates, Ltd., a professional corporation, has been retained by Briggs and

Morgan, P.A. to assist representation of Boris A. Miksic in the above matter. Arthur H. Cobb

has had primary responsibility for this engagement.

1



EXHIBIT 29

## OPINIONS TO BE EXPRESSED AND THE BASIS AND REASON THEREFOR

### INTRODUCTION

Boris A. Miksic is the sole shareholder of Cortec Corporation, a Minnesota corporation (Cortec). Mr. Miksic is the sole shareholder of EcoCortec D.O.O. (EcoCortec), a Croatian company, and Mr. Miksic and Cortec each own 50 percent of Cortec Hrvatska D.O.O. (Cortec Croatia or Cortec Hrvatska), a Croatian company. Mr. Miksic had financial accounts in Croatia. Mr. Miksic was the grantor, creator, and received distributions from the Rust Foundation, a Liechtenstein foundation.

Boeckermann Grafstrom Mayer, LLC (Boeckermann) prepared and filed tax returns and accompanying schedules and statements and forms for Mr. Miksic (and Cortec). Boeckermann did not prepare and file or advise Mr. Miksic of the requirements to prepare and file Internal Revenue Service Reports of Foreign Bank and Financial Accounts (FBAR), Forms 5471, regarding EcoCortec and Cortec Croatia and Forms 3520 and Forms 3520-A regarding Rust Foundation. "The failure to file FBARs and forms 5471 with Mr. Miksic's 2007-2010 individual tax returns was the responsibility of (Boeckermann) and was inadvertent and unintentional on our (Boeckermann's) part." (Affidavit of Corey W. Edwards, paragraph 8)

Damages, through February 2, 2016, in connection with the failures to file or timely file FBARs, Forms 3520, Forms 3520-A and Forms 5471 include the following:

| | |
|---|---:|
| IRS Penalties and Interest | $2,338,392 |
| Minnesota Penalties and Interest | 29,952 |
| Payments to Boeckermann | 141,482 |
| Payments to Accountants | 49,931 |
| Payments to Tax Counsel | |
|   Florida | 554,415 |
|   Minnesota | 22,726 |
| Payments to Legal Counsel | 146,001 |
| Payments to Accounting Expert | 14,725 |
|     Total | $3,297,624 |

2

Mr. Miksic alleges that Boeckermann was aware or should have been aware of Mr. Miksic's financial accounts in Croatia, ownership interests in and control of EcoCortec and Cortec Croatia, and creation and U.S. ownership of and distributions from the Rust Foundation. Mr. Miksic alleges that Boeckermann failed to advise of requirements or to properly file, file or timely file IRS forms regarding EcoCortec, Cortec Croatia and Rust Foundation and that these failures violated professional standards and caused penalties, interest and costs.

We have conducted a preliminary analysis of a) the accountant-client relationship and engagements conducted by Boeckermann Grafstrom Mayer, LLC, Boeckermann Grafstrom Mayer, P.A., and Johnson, West & Co. P.L.C. (together Boeckermann) regarding tax services, including preparation and filing of tax returns and forms; b) Professional Standards applicable to the engagement; and c) damages sustained by Boris A. Miksic. Based on the preliminary analysis, our opinions include the following:

- Boeckermann and Mr. Miksic had an accountant-client relationship;
- Boeckermann was responsible to comply with AICPA Professional Standards, AICPA Statements on Standards for Tax Services, Minnesota Rules (1105.0250), and Internal Revenue Service Regulations. Boeckermann was responsible to Mr. Miksic to provide complete professional services; understand Mr. Miksic's financial and business activities, background and financial interests; exercise due professional care; obtain sufficient relevant data and render diligent and thorough professional services and to make reasonable effort to obtain information to provide appropriate answers to the questions on the return that are applicable to taxpayer; and to promptly advise of the fact of noncompliance, error, or omission;

3

- Boeckermann did not comply with AICPA Professional Standards, AICPA Statements on Standards for Tax Services, and Internal Revenue Service Regulations related to preparation and filing of tax returns and accompanying schedules and statements and forms, for Mr. Miksic. Boeckermann a) did not appropriately exercise due professional care, b) did not obtain sufficient relevant data, c) was not appropriately knowledgeable and thorough, and d) did not promptly advise Mr. Miksic of noncompliance, error, or omission. Boeckermann failed to comply with professional standards and to exercise the average ability and skill of certified public accountants engaged in the providing tax services in Minnesota;

- Assessment of penalties and interest, incurrence of fees and costs and financial damages were foreseeable consequences of the tax services provided by Boeckermann; and

- Boeckermann's failure to comply with professional standards was a direct and proximate cause of penalties and interest assessed by the Internal Revenue Service, fees and costs related to responding to IRS inquiries regarding late filings, and financial damages; which total approximately $3,300,000 through February 2, 2016.

Our analysis is ongoing and may include consideration of additional documents and information including documents, information and opinions offered by or on behalf of defendants.

4

## BACKGROUND

### BORIS A. MIKSIC

Boris A. Miksic came to the United States in 1974 from his native country, Croatia. (Cortec Press, NACE Press Release, February 2004)  Mr. Miksic has dual United States and Croatian citizenship. (Miksic Deposition, page 14)

Mr. Miksic "was appointed an honorary consul to the U.S. in 1995" (promoting trade between the United States and Croatia). (Shoreview Press, January 13, 2009)  Mr. Miksic started spending more and more time in Croatia in the fall of 2004 in order to obtain resident status.  In 2004, Mr. Miksic joined the race to be elected as President of Croatia, investing nearly $1,000,000 of his own money, and Mr. Miksic finished third.  (Mr. Miksic had "tested the waters in Croatia by entering the 2003 parliamentary elections.)  Mr. Miksic was "a member of the Zabreb City Council" since 2005 and as of approximately June 2007, Mr. Miksic was "spend(ing) about a week each month in Croatia." (Twin Cities Business, June 1, 2007 and Miksic Deposition, pages 40 and 44)

Mr. Miksic is the shareholder of Cortec Corporation, a Minnesota corporation.  Mr. Miksic is the shareholder of EcoCortec D.O.O., a Croatian company. (Miksic Deposition, page 20 and 33)  Mr. Miksic and Cortec Corporation each own 50 percent of Cortec Hrvatska D.O.O., a Croatian company. (Form 5471)  Mr. Miksic was the grantor, creator, and U.S. owner of and received distributions from the Rust Foundation, a Liechtenstein foundation.

Mr. Miksic established Cortec Corporation in 1977, incorporated EcoCortec D.O.O. on October 24, 2004, incorporated Cortec Hrvatska D.O.O. on March 2, 2007 and created Rust Foundation on or about February 16, 1998.  "Mr. Miksic had ... bank accounts in Croatia." (Affidavit of Corey W. Edmunds, paragraph 7)

5

Boeckermann, Cory M. Parnell, knew that Mr. Miksic was not a tax expert. (Parnell Deposition, page 66) Mr. Miksic was a client of Boeckermann. (Affidavit of Cory M. Parnell, paragraph 4)

## CORTEC CORPORATION

Cortec Corporation (Cortec) is a Minnesota corporation with its principal executive office in Minnesota. Cortec elected S-corporation status. (IRS Form 886-A, February 4, 2014) Cortec manufactures anti-corrosion chemicals, films and packaging products that are sold worldwide. As of December 2006, Cortec had five plants (four in Minnesota and Wisconsin and one in Croatia) and "its own sales offices in China, Japan, Korea, India, Croatia and Italy." (Twin Cities Business, December 2010) On or about October 20, 2004, Cortec identified Cortec's European warehouse, CorteCros Warehouse, Split, Croatia. (Cortec News Alert, October 20, 2004)

Angela McGillivray serves as Chief Financial Officer of Cortec. (Miksic Deposition, page 46) Ms. McGillivray forwarded information from Mr. Miksic to Boeckermann. (Miksic Deposition, pages 46, 47, 49 and 62, McGillivray Deposition, pages 27 and 33)

Cortec was a client of Boeckermann. (Affidavit of Cory M. Parnell, paragraph 4)

## ECOCORTEC D.O.O.

EcoCortec D.O.O. (EcoCortec) has its principal place of business in Croatia. EcoCortec was incorporated on October 24, 2004. (Form 5471 Information Return of U.S. Persons with Respect to Certain Foreign Corporations) Mr. Miksic owns and served as Chief Executive Officer of EcoCortec.

On or about July 13, 2005, Cortec announced plans for the development of EcoCortec, a state-of-the-art facility located in Croatia. (Cortec News Alert, July 13, 2005) On or about

6

August 14, 2006, Cortec announced that the Croatian Plant was scheduled to start production in January 2007. (Cortec News Alert, August 14, 2006 and August 29, 2006 and Twin Cities Business, December 2006) EcoCortec commenced operations in May of 2007 and held a grand opening on October 11, 2007. (IRS Form 886-A, February 4, 2014)

In 2005, Cortec sought financing for EcoCortec through a program to be administered by the Croatian Bank for Reconstruction and Development (the CBRD). A €3,000,000 loan for the EcoCortec facility in Croatia was financed by Erste Bank Croatia, Erste Bank AG. Erste Bank Croatia, Erste Bank AG, effectively terminated the loan in 2007,[1] delaying the beginning of operations of the EcoCortec facility.

## CORTEC HRVATSKA D.O.O.

Cortec Hrvatska D.O.O. (Cortec Hrvatska or Cortec Croatia) was incorporated on March 2, 2007. Cortec Croatia is owned 50 percent by Mr. Miksic and 50 percent by Cortec. Cortec Croatia was formed to obtain financing for construction of EcoCortec's facility in Croatia and became dormant in 2008. (IRS Form 886-A, February 4, 2014)

## RUST FOUNDATION

Mr. Miksic created the Rust Foundation, a Liechtenstein foundation, on or about February 16, 1998. Mr. Miksic was the grantor and served as trustee for the Rust Foundation. The Rust Foundation was set up for the benefit of Mr. Miksic's parents. (Miksic 003753) Mr. Miksic is the U.S. owner of the Rust Foundation. (Form 3520-A) Mr. Miksic received distributions from Rust Foundation in, at least, 2005, 2006, 2007 and 2008. (Forms 3520-A and 3520 - 2005, 2006, 2007 and 2008)

---

[1] Cortec Corporation brought suit against Erste Bank AG in the United States District Court Southern District of New York seeking, among others: compensatory damages and a declaratory judgment that Cortec was not in default under the terms of the personal guaranty associated with the loan. (Cortec Corporation v. Erste Bank Complaint)

7

## BOECKERMANN GRAFSTROM MAYER, LLC

Boeckermann Grafstrom Mayer, LLC (Boeckermann) is an accounting firm, licensed by the Minnesota Board of Accountancy (boa.state.mn.us), which provided accounting and tax services to individuals and corporations. Boeckermann is "a firm of entrepreneurial proactive CPAs and advisors" with "Core Values" including "Quality and timely results." (bgm-cpa.com)

Regarding "Tax," Boeckermann sets forth "we work with the 'extended client' [the individual, their family and all related entities] to clarify, quantify and achieve client goals and objectives and recommend and implement a strategy to minimize the tax liabilities of the entire group" and "our objective is to go beyond the traditional compliance process to identify potential tax savings and generate future planning opportunities." Regarding "International Taxation," Boeckermann sets forth "Boeckermann Grafstrom Mayer, LLC can assist you with business decisions on foreign transactions and reporting." (bgm-cpa.com)

In December 2012, Boeckermann announced Boeckermann and Johnson, West & Co. "have merged effective immediately." (Boeckermann-Client Memo December 2012)

## Johnson, West & Co. P.L.C.

Johnson, West & Co. P.L.C. (Johnson West) was an accounting firm that provided "skills and expertise as a full-service CPA firm." Related to the merger, Johnson, West & Co. P.L.C. became known as Boeckermann Grafstrom Mayer, LLC.

Johnson West partners had experience in "tax consulting and preparation" and "income taxation." (Boeckermann-Client Memo Vol. 32 No. 2) Johnson West set forth "We provide total financial services to individuals, large and small businesses and other agencies." (web.archive.org-www.johnsonwest.com)

8

Regarding "Federal Corporate Tax Services," Johnson West set forth "You can rely on us to thoroughly review your financial position, identify the most beneficial tax strategy, prepare all applicable forms and plan for future developments. You can trust that our work will be timely, creative and of the highest quality." Regarding "Tax Preparation and Compliance Services," Johnson West set forth "We pledge to keep you informed on your personal and professional reporting requirements," (we will provide you an) "understanding of your tax obligations" and "Ensuring compliance with all the rules and regulations." (web.archive.org-www. johnsonwest.com)

<u>Policies</u>

Boeckermann's policies, practices and processes during the period of 2005 through 2010 included, among others, the following:

- Boeckermann did not have a policy or practice to meet with clients prior to filing a return. (Parnell Deposition, page 46) "On certain returns (Boeckermann) might have a follow-up conversation with a client." (Parnell Deposition, page 47) Mr. Parnell met with Mr. Miksic once per year. (Parnell Deposition, page 60)

- Boeckermann did not have a written policy to respond to a client questionnaire that was blank or missing significant information. However, Boeckermann purportedly "would follow up with the client." (Parnell Deposition, pages 37 and 38) (Based on Boeckermann policy as of March 9, 2016, a blank client questionnaire would be unacceptable. (Edmunds Deposition, pages 84 and 85))

- Boeckermann "did not have a due date tracking system in place at that time to make sure all required FBARs were filed" and did not have an electronic alert for FBARs. (Edmunds Affidavit, paragraph 11 and Edmunds Deposition, pages 68 and 69)

- Boeckermann had a policy or practice to keep returns for seven years. (Parnell Deposition, page 44) The Boeckermann reviewer "would review the draft of the tax return and all the supporting information, along with last year's, their prior year's return." (Parnell Deposition, pages 44 and 47 and Edmunds Deposition, pages 35 and 36)

- The Boeckermann partner would "review and sign" the return and ensure the return is accurate. (Parnell Deposition, pages 45 and 46)

9

Services

Boeckermann prepared and filed tax returns and accompanying schedules and statements and forms for Mr. Miksic (and Cortec), including: for 2005 by Mr. Parnell, for 2006 by Clifford S. Lozinski and/or Ryan L. Schumacher (including a FBAR filing prepared by Ryan L. Schumacher (Parnell Deposition, pages 75 and 76)), for 2007 by Cory M. Parnell and for 2008, 2009 and 2010 by Corey W. Edmunds.

Boeckermann, "the taxpayer's representative is also the tax return preparer of the taxpayer's wholly owned S corporation, Cortec. The taxpayer's representative's firm also conducts a financial review of Cortec's financial statements." (McGillivray Deposition, page 99, IRS Form 886-A, February 4, 2014, Parnell Deposition, Exhibit 60, and Edmunds Deposition, Exhibit 71)

10

Clifford S. Lozinski, CPA,[2] Corey M. Parnell, CPA,[3] Cordell W. Edmunds, CPA,[4] and Ryan L. Schumacher,[5] CPA provided accounting and tax services for Mr. Miksic (and Cortec) on behalf of Boeckermann.[6] (Edmunds Deposition, page 26 and Parnell Deposition, pages 76 and 85)

**Affidavits**

On September 26, 2013, Mr. Parnell and Mr. Edmunds executed Affidavits related to the IRS's examination of Mr. Miksic's and Cortec's income tax returns and in support of abatement of IRS penalties related to the failures to prepare and file FBARs and Forms 5471. On March 8, 2016, Mr. Parnell agreed that everything in the Affidavit of Cory M. Parnell is true, accurate and complete. (Parnell Deposition, page 68)  On March 9, 2016, Mr. Edmunds agreed that the information in the Affidavit of Corey W. Edmunds is truthful and accurate. (Edmunds Deposition, page 60)

---

[2] Clifford S. Lozinski, CPA, joined Johnson West in 1973 and continued with Johnson West to September 2007. (Mr. Lozinski died on March 16, 2014 at age 80.) (StarTribune, March 20, 2014 and Affidavit of Cory M. Parnell, September 26, 2013, paragraph 8)  Mr. Lozinski was the managing partner of Johnson West. (Answer)  Mr. Lozinski's "Areas of Expertise" included "Tax Planning." (web.archive.org-www.johnsonwest.com)

[3] Cory M. Parnell, CPA, was Managing Partner of Johnson West and continued as Chief Executive Officer of Boeckermann.  Mr. Parnell's "Areas of Expertise" include "Personal & Corporate Taxes." (bgm-cpa.com)  Mr. Parnell has been licensed by the Minnesota Board of Accountancy since 1989 and is a member of the American Institute of Certified Public Accountants. (Affidavit of Cory M. Parnell, paragraph 2 and Parnell Deposition, pages 16, 17 and 18)

[4] Cordell "Corey" W. Edmunds, CPA, MBT, was a Partner in Johnson West and continued as a Partner-Principal in Boeckermann.  Mr. Edmonds' "Areas of Expertise" include "Income Tax & Accounting" and "International Taxation." (bgm-cpa.com)  (Mr. Edmunds testified "I don't know that I profess that I'm an international (tax) expert" (Edmunds Deposition, page 14) and "I didn't have any international tax matters before then during that time period (between 2007 and 2010)." (Edmunds Deposition, page 28))  Mr. Edmunds has been licensed by the Minnesota Board of Accountancy since 1993 and is a member of the American Institute of Certified Public Accountants. (Affidavit of Corey W. Edmunds, paragraph 4)

[5] Ryan L. Schumacher, CPA, was with Johnson West for, at least, the period of 2005 to 2007. (Parnell, page 41)  Mr. Schumacher has been licensed by the Minnesota Board of Accountancy since 2002. (boa.state.mn.us)

[6] Boeckermann also prepared 2005 and 2006 Forms 1040 for Stjepan and Nina Miksic, Boris Miksic's parents. (BGM036254, BGM036266 and Parnell Deposition, page 104)

11

## PROFESSIONAL STANDARDS

### American Institute of Certified Public Accountants

American Institute of Certified Public Accountants (AICPA) Professional Standards are included by reference in Minnesota Rules (1105.0250) and are applicable to certified public accountants licensed by the Minnesota Board of Accountancy. (See Parnell Deposition, pages 33, 34 and 35 and Edmunds Deposition, pages 30 and 31)

AICPA Professional Standards, General Standards, set forth:

> "A member shall comply with the following standards and with any interpretations thereof by bodies designed by Council.
>
> A. *Professional Competence.* Undertake only those professional services that the member or the member's firm can reasonably expect to be completed with professional competence.
> B. *Due Professional Care.* Exercise due professional care in the performance of professional services.
> C. *Planning and Supervision.* Adequately plan and supervise the performance of professional services.
> D. *Sufficient Relevant Data.* Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed." (Italics in the original) (ET § 201)

AICPA Professional Standards set forth:

- "Members should be diligent in discharging responsibilities to clients, employers, and the public. Diligence imposes the responsibility to render services promptly and carefully, to be thorough, and to observe applicable technical and ethical standards" (ET § 56.05) and

- "The accountant should possess ... an understanding of the entity's business that will provide, through the performance of inquiry and analytical procedures, a reasonable basis for expressing limited assurance that there are no material modifications that should be made to the financial statements in order for the statements to be in conformity with generally accepted accounting principles." "The accountant's understanding of the entity's business should include a general understanding of the entity's organization, its operating characteristics, and the nature of its assets, liabilities, revenues, and expenses. This would ordinarily involve a general knowledge of the entity's production, distribution ... operating locations, and material transactions with related parties. An accountant's understanding of an entity's business is ordinarily obtained through experience with the entity or its industry and inquiry of the entity's personnel." (Footnote omitted) (AICPA Professional Standards AR § 100.26 and 100.28)

12

The AICPA's Statements on Standards for Tax Services (SSTSs) "apply to all (AICPA) members providing tax services." (See Parnell Deposition, page 34 and Edmunds Deposition, page 30) "The SSTSs and their interpretations are intended to complement other standards of tax practice, such as Treasury Department Circular No. 230." SSTS No. 2 identifies "A member should make a reasonable effort to obtain from the taxpayer the information necessary to provide appropriate answers to all questions on the return before signing as preparer" and "A request for information may require a disclosure necessary for a complete return or to avoid penalties." SSTS No. 3 sets forth "a member should not ignore the implications of information furnished and should make reasonable inquiries if the information furnished appears to be incorrect, incomplete, or inconsistent either on its face or on the basis of other facts known to the member. Further, a member should refer to the taxpayer's returns for one or more prior years whenever feasible." (Statements on Standards for Tax Services, November 2009 and aicpa.org)

**Internal Revenue Service**

Treasury Department Circular No. 230, Regulations Governing the Practice of Attorneys, Certified Public Accountants, Enrolled Agents, Enrolled Actuaries, and Appraisers before the Internal Revenue Service (Circular No. 230) "contains rules governing the recognition of ... certified public accountants ... representing tax payers before the Internal Revenue Service," (see Parnell Deposition, page 36 and Edmunds Deposition, page 31) including:

> "A practitioner who, having been retained by a client with respect to a matter administered by the Internal Revenue Service, knows that the client has not complied with the revenue laws of the United States or has made an error in or omission from any return, document, affidavit, or other paper which the client submitted or executed under the revenue laws of the United States, must advise the client promptly of the fact of such noncompliance, error, or omission. The practitioner must advise the client of the consequences as provided under the Code and regulations of such noncompliance, error, or omission." (§ 10.21)

13

"*(a) In general.* A practitioner must exercise due diligence --

(1) In preparing or assisting in the preparation of, approving, and filing tax returns, documents, affidavits, and other papers relating to Internal Revenue Service matters." (§ 10.22)

"*(a) Best practices.* Tax advisors should provide clients with the highest quality representation concerning Federal tax issues by adhering to best practices in providing advice and in preparing or assisting in the preparation of a submission to the Internal Revenue Service. In addition to compliance with the standards of practice provided elsewhere in this part, best practices include the following: ...

(2) Establishing the facts, determining which facts are relevant, evaluating the reasonableness of any assumptions or representations, relating the applicable law (including potentially applicable judicial doctrines) to the relevant facts, and arriving at a conclusion supported by the law and the facts....

*(b) Procedures to ensure best practices for tax advisors.* Tax advisors with responsibility for overseeing a firm's practice of providing advice concerning Federal tax issues or of preparing or assisting in the preparation of submissions to the Internal Revenue Service should take reasonable steps to ensure that the firm's procedures for all members, associates, and employees are consistent with the best practices set forth in paragraph (a) of this section.

*(c) Applicability date.* This section is effective after June 20, 2005." (Treasury Department Circular No. 230, Revised 6-2014 § 10.33)

"*Advising clients on potential penalties.* A practitioner ... take a position on a tax return, or preparing or signing a tax return as a preparer, must inform the client of the penalties reasonably likely to apply to the client with respect to the position advised, prepared, or reported. The practitioner also must inform the client of any opportunity to avoid any such penalty by disclosure, if relevant, and of the requirements for adequate disclosure. This paragraph (b) applies even if the practitioner is not subject to a penalty with respect to the position." (Treasury Department Circular No. 230, Revised 6-2005 § 10.34)

"The practitioner must be knowledgeable in all of the aspects of Federal tax law relevant to the opinion being rendered...." (Treasury Department Circular No. 230, Revised 6-2005 § 10.35)

"A practitioner must possess the necessary competence to engage in practice before the Internal Revenue Service. Competent practice requires the appropriate level of knowledge, skill, thoroughness, and preparation necessary for the matter for which the practitioner is engaged ... (A)pplicable beginning June 12, 2014." (Treasury Department Circular No. 230, Revised 6-2014 § 10.35)

14

CONFIDENTIAL

### IRS Reports

Mr. Miksic was responsible to file true, correct, and complete IRS Forms 1040, Forms TD F 90-22.l (FBARs), Forms 5471, Forms 3520 and Forms 3520-A.

### Form 1040

Form 1040 U.S. Individual Tax Return, including accompanying schedules and statements, is to be "true, correct, and complete" to the best of the taxpayer's and preparer's knowledge and belief.

### Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts - FBAR

"United States persons are required to file an FBAR if:

1. the United States person had a financial interest in or signature authority over at least one financial accounts located outside of the United States; and
2. the aggregate value of all foreign financial accounts exceeded $10,000 at any time during the calendar year reported.

United States person includes U.S. citizens; U.S. residents; entities, including but not limited to, corporations, partnerships, or limited liability companies, created or organized in the United States or under the laws of the United States; and trusts or estates formed under the laws of the United States." "No report is required if the aggregate value of the accounts did not exceed $10,000." (irs.gov, FBAR and TD F 90-22.1 Instructions)

"Those required to file an FBAR who fail to properly file a complete and correct FBAR may be subject to a civil penalty not to exceed $10,000 per violation for nonwillful violations that are not due to reasonable cause. For willful violations, the penalty may be the greater of $100,000 or 50 percent of the balance in the account at the time of the violation." (irs.gov, Report of Foreign Bank and Financial Accounts [FBAR])

Form TD F 90-22.1 is referenced in Form 1040, Schedule B - Interest and Ordinary Dividends, Part III Foreign Accounts and Trusts, question 7a.

15

## Form 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations

Internal Revenue Code § 6038(a) provides that the Form 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations, is required to be filed by any U.S. person who controls any foreign business entity. Treasury Regulation § 1.6038-2(i) provides that Form 5471 "shall be filed with the United States person's income tax return on or before the date required by law for the filing of that person's income tax return." (Italics omitted) (IRS Form 886-A, February 4, 2014)

Instructions for Form 5471 (Revised December 2013) provides "A $10,000 penalty is imposed for each annual accounting period of each foreign corporation for failure to furnish the required information within the time prescribed ..." and "Any person who fails to file or report all of the information required within the time prescribed will be subject to a reduction of 10% of the foreign taxes available for credit under sections 901, 902, and 960." (See also IRS letter, dated January 27, 2011)

## Form 3520, Annual Return of Report Transactions With Foreign Trusts

Form 3520 Annual Return of Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts must be filed by "(g)enerally, a U.S. Person (including: a citizen or resident of the U.S. and a domestic corporation) who:

- creates a foreign trust,
- transfers money or property, directly or indirectly to a foreign trust, or
- receives, directly or indirectly, any distribution from a foreign trust." (IRS Letter 3804 [Rev. 4-2008])

16

A penalty generally applies if Form 3520 is not timely filed or if the information is incomplete or incorrect. Generally, the initial penalty is equal to the greater of $10,000 or:

- 35% of the gross value of any property transferred to a foreign trust for failure by a U.S. transferor to report the creation of or transfer to a foreign trust or
- 35% of the gross value of the distributions received from a foreign trust for failure by a U.S. person to report receipt of the distribution or
- 5% of the gross value of the portion of the trust's assets treated as owned by a U.S. person for failure by the U.S. person to report the U.S. owner information.

"No penalties will be imposed if the taxpayer can demonstrate that the failure to comply was due to reasonable cause and not willful neglect." (Instructions for Form 3520, 2014 and IRS letter, dated May 18, 2012)

<u>Form 3520-A, Annual Information Return of Foreign Trust with a U.S. Owner</u>

"A foreign trust ("A foreign trust is any trust other than a domestic trust") with a U.S. owner must file Form 3520-A (Annual Information Return of Foreign Trust with a U.S. Owner) in order for the U.S. owner to satisfy its annual information reporting requirements under section 6048(b)."

"The U.S. owner is subject to an initial penalty equal to the greater of $10,000 or 5% of the gross value of the portion of the trust's assets treated as owned by the U.S. person at the close of that tax year, if the foreign trust: (a) fails to file a timely Form 3520-A or (b) does not furnish all of the information required by section 6048(b) or includes incorrect information. See section 6677(b). Additional penalties will be imposed if the noncompliance continues after the IRS mails a notice of failure to comply with the required reporting...."

"No penalties will be imposed if the taxpayer can demonstrate that the failure to comply was due to reasonable cause and not willful neglect." (Instructions for Form 3520-A, 2014 and IRS letter, dated May 18, 2012)

17

## IRS EXAMINATION

On March 17, 2010, the IRS issued a notice to Cortec Corporation that Cortec's federal income tax returns for the years 2008, 2009 and 2010 had been selected for examination. The IRS identified failures to file and/or timely file Forms 5471, 3520 and 3520-A related to EcoCortec, Rust Foundation and Cortec Croatia, summarized as follows:

- EcoCortec - On January 27, 2011, the IRS issued a "Failure to File Form 5471" notice that Mr. Miksic "failed to file a complete separate annual information return on Form 5471 ... or the Form 5471 that you did file was substantially incomplete with respect to EcoCortec d.o.o. [Croatia] for the taxable year[s] ending December 31, 2007, December 31, 2008 and December 31, 2009." The notice also imposed a $10,000 penalty for each of the taxable years.

  Boeckermann prepared and filed delinquent Forms 5471 related to EcoCortec on or about April 13, 2011.

- Rust Foundation - On May 18, 2012, the IRS issued a notice that Mr. Miksic was "required to timely file, a complete and accurate Form 3520 and/or Form 3520-A, because our information shows you operated or had transactions with Rust Foundation. Our records show you failed to file complete and accurate" Form 3520 and Form 3520-A for taxable years 2005, 2006, 2007 and 2008. The notice stated "we will charge you an Initial Penalty."

  "Miksic's new CPA prepared and counsel for Miksic filed the delinquent Forms 3520/3520-A related to ... the Rust Foundation on or about August 2012." (Complaint)

- Cortec Croatia - On May 25, 2012, the IRS issued a "Failure to File Form 5471" notice that Mr. Miksic "failed to file a complete separate annual information return on Form 5471 ... or the Form 5471 that you did file was substantially incomplete with respect to Cortec Hrvatska D.O.O. [Croatia] for the taxable year[s] ending December 31, 2007, December 31, 2008 and December 31, 2009." The May 25, 2012 notice also imposed a $10,000 penalty for each of the taxable years.

  Boeckermann prepared and filed delinquent Forms 5471 related to Cortec Croatia on or about August 24, 2012.

Mr. Edmunds deposed "The failure to file FBARs and forms 5471 with Mr. Miksic's 2007-2010 individual returns was the responsibility of our CPA firm (Boeckermann) and was inadvertent and unintentional on our part." (Affidavit of Corey W. Edmunds, paragraph 8)

18

**Penalties and Abatement**

The IRS levied penalties related to the failures to file or timely file FBARs, Forms 5471, Forms 3520 and Forms 3520-A.

Boeckermann advised Mr. Miksic and Cortec that reasonable cause existed to abate the IRS penalties and, along with filing delinquent Forms 5471, Forms 3520 and Forms 3520-A, Boeckermann requested abatement of the IRS penalties on the basis of reasonable cause.

Mr. Edmunds and/or Mr. Parnell deposed that a) the failure to file FBARs and Forms 5471 with Mr. Miksic's tax returns was the responsibility of Boeckermann and b) failures, omissions to file FBARs and Forms 5471 related to EcoCortec with the 2007, 2008, 2009 and 2010 tax returns prepared by Boeckermann were "inadvertent and not intentional." (Affidavit of Corey W. Edmunds, paragraph 8, and Affidavit of Cory M. Parnell, paragraph 5)

Mr. Miksic believed he had "reasonable cause for the failure to file Form 5471 regarding Cortec Croatia" and asserted that he "hired outside advisors on which he relied to ensure his compliance with US tax law." Mr. Miksic understood that the "advisors were aware of the existence of Cortec Croatia and were given access to records showing fund transfers, the advisors should have known there was a filing requirement." (IRS Form 886-8, page 6)

On February 4, 2014, the IRS reported that statements "that requested reasonable cause for non-filing of Forms 5471 for the years 2007 through 2009 for the foreign entities of EcoCortec D.O.O. and Cortec Hrvatska D.O.O. ... do not establish reasonable cause" and "(t)he information submitted does not show you exercised due diligence." On February 4, 2015, the IRS reported that the statement regarding Rust Foundation "does not establish reasonable cause" and the "information submitted does not show you exercised due diligence."

19

## ANALYSIS

### ACCOUNTANT-CLIENT RELATIONSHIP

Boeckermann and Mr. Miksic (and Boeckermann and Cortec) had an accountant-client relationship. Boeckermann provided accounting and tax services to Mr. Miksic (and Cortec), including preparation and filing of 2005, 2006, 2007, 2008, 2009, and 2010 income tax returns and accompanying schedules and statements and related forms. Boeckermann, Mr. Parnell, set forth "Boris Miksic ['Miksic'] is a client of our accounting firm (Boeckermann)." (Affidavit of Cory M. Parnell, paragraph 4; see also Affidavit of Corey W. Edwards, page 4)

Clifford S. Lozinski, CPA, "was Mr. Miksic's primary certified public accountant ... who assisted Miksic with his individual and corporate state and federal tax filings for over 20 years." (Affidavit of Cory M. Parnell, paragraph 8) (Answer) Ryan L. Schumacher, CPA, prepared the 2006 individual tax return for Mr. Miksic (and) also prepared an FBAR filing in 2006." (Parnell Deposition, pages 75 and 76) Responsibility for Mr. Miksic's and Cortec's tax services was assigned to Corey M. Parnell, CPA, following the resignation of Mr. Lozinski from Johnson West. As of September 2013, Mr. Parnell had "worked with Mr. Miksic and his businesses for over eighteen years, but ... only had responsibility for review of his individual and corporate federal income tax returns for 2007." Cory W. Edmunds, CPA, "began to provide services (to Mr. Miksic) in 2008" and had "responsibility for reviewing the individual and corporate federal income tax returns that were prepared by the firm (Boeckermann) for Miksic and his entities." (Affidavit of Corey W. Edmunds, paragraph 4 and Edmunds Deposition, page 27)

Boeckermann, "the taxpayer's representative is also the tax return preparer of the taxpayer's wholly owned S corporation, Cortec (and) ... conducts a financial review of Cortec's financial statements." (McGillivray Deposition, page 99, IRS Form 886-A, February 4, 2014, Parnell Deposition, Exhibit 60, and Edmunds Deposition, Exhibit 71)

20

**PROFESSIONAL STANDARDS**

Boeckermann; Clifford S. Lozinski, CPA, Ryan L. Schumacher, CPA, Corey M. Parnell, CPA, and Cory W. Edmunds, CPA; were responsible for providing accounting and tax services to Mr. Miksic (and Cortec), including preparing and filing income tax returns and accompanying schedules and statements and related forms. Boeckermann has been licensed by the Minnesota Board of Accountancy, Mr. Schumacher since 2002, Mr. Parnell since 1989 and Mr. Edmunds since 1993. Mr. Parnell and Mr. Edmunds are members of the AICPA.

Boeckermann; Mr. Lozinski, Mr. Schumacher, Mr. Parnell and Mr. Edmunds; were responsible to comply with AICPA Professional Standards, AICPA Statements on Standards for Tax Service, Minnesota Rules (1105.0250), and Internal Revenue Service Regulations. (Edmunds Deposition, pages 30 and 31) Boeckermann was responsible to Mr. Miksic to provide complete professional services; understand Mr. Miksic's business activities, background and financing interests; exercise due professional care; obtain sufficient relevant data and render diligent and thorough professional services, to make reasonable effort to obtain information to provide appropriate answers to the questions on the return that are applicable to taxpayer and to promptly advise of the fact of noncompliance, error, or omission.

Treasury Department Circular No. 230, Regulations Governing the Practice of Attorneys, Certified Public Accountants, Enrolled Agents, Enrolled Actuaries, and Appraisers before the Internal Revenue Service "contains rules governing the recognition of ... certified public accountants ... representing taxpayers before the Internal Revenue Service." Boeckermann was responsible to Mr. Miksic to provide services with the exercise of due diligence; adhering to best practices; promptly advising of the fact of noncompliance, error or omission; and be knowledgeable and thorough.

21

## COMPLIANCE

Boeckermann did not comply with AICPA Professional Standards, AICPA Statements on Standards for Tax Services, and Internal Revenue Service Regulations related to preparation and filing of tax returns and accompanying schedules and statements and forms, for Mr. Miksic and Cortec. Boeckermann a) did not appropriately exercise due professional care, b) did not obtain sufficient relevant data, c) was not appropriately knowledgeable and thorough, and d) did not promptly advise Mr. Miksic of noncompliance, error, or omission. Boeckermann failed to comply with professional standards and to exercise the average ability and skill of certified public accountants engaged in the providing tax services in Minnesota.

### Forms 1040 and Form TD F 90-22.1 or FBAR

Mr. Miksic was responsible to file true, correct, and complete IRS Forms 1040 and Forms TD F 90-22.1 Report of Foreign Bank and Financial Affairs (FBAR). Boeckermann did not prepare and file true, correct and complete Forms 1040 U.S. Individual Tax Returns and accompanying schedules and statements and forms. Boeckermann did not prepare and file Forms TD F 90-22.1 to report Filer Information and Information on Financial Account(s) Owned Separately regarding "a financial interest in, signature authority, or other authority over one or more financial accounts in foreign countries." (Form TD F 90-22.1) Boeckermann did not advise Mr. Miksic that he was required to file Forms TD F 90-22.1 or FBARs.

Boeckermann, Mr. Edmunds, deposed and said "The failure to file FBARs (Forms TD F 90-22.1) ... with Mr. Miksic's individual tax returns was the responsibility of our CPA firm (Boeckermann) and was inadvertent and unintentional on our part." (Affidavit of Corey W. Edmunds, September 26, 2013, paragraph 8)

22

Mr. Miksic's Form 1040, Schedule B - Interest and Ordinary Dividends, Part III Foreign Accounts and Trusts, question 7a, states:

> "At any time during 2005 (2006, 2007, 2008, 2009 and 2010), did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See page B-2 for exceptions and requirements for Form TD F 90-22.1."

Question 7a was answered "No" for 2005, 2006, 2007 and 2010 and "Yes" and "CROATIA" for 2008 and 2009. Mr. Miksic's Form 1040 for 2005, 2006, 2007 and 2010 incorrectly reported that Mr. Miksic did not have an interest or signature or other authority over a financial account in a foreign country. (See Parnell Deposition, pages 83, 86, 90, 91 and 100) Boeckermann, Mr. Parnell, did not know if the preparer or the software checked questions 7a and 8 during the 2005-2010 time frame. (Parnell Deposition, page 83) Boeckermann, Mr. Parnell, did not know if the preparer or the software checked questions 7a and 8 during the 2005-2010 time frame. (Parnell Deposition, page 83) Question 7a specifically references Form TD F 90-22.1 (FBAR).

Boeckermann's representations that the 2005, 2006, 2007 and 2010 Forms 1040 were true, correct and complete and, thereby, complied with the Internal Revenue Code and IRS Regulations fully were misrepresentations.

23

## Forms 5471

Mr. Miksic was responsible to file true, correct, and complete IRS Forms 5471 regarding EcoCortec and Cortec Croatia. Boeckermann did not prepare or file Forms 5471 and "did not advise Miksic that he was required to file Forms 5471 ... with his 2007," "2008 and 2009 tax returns." (Answer)

Boeckermann, Mr. Edmunds, deposed and said "The failure to file ... Forms 5471 with Mr. Miksic's individual tax returns was the responsibility of our CPA firm (Boeckermann) and was inadvertent and unintentional on our part." (Affidavit of Corey W. Edmunds, September 26, 2013, paragraph 8)

Mr. Miksic is the sole shareholder of EcoCortec, a Croatian company. Mr. Miksic and Cortec Corporation each own 50 percent of Cortec Hrvatska, a Croatian company. EcoCortec commenced operations in May of 2007 and held a grand opening on October 11, 2007. (IRS Form 886-A, February 4, 2014) Cortec Croatia was formed to obtain financing for construction of EcoCortec's facility in Croatia and became dormant in 2008. (IRS Form 886-A, February 4, 2014)

Boeckermann's representations that the 2005, 2006, 2007, 2008, 2009 and 2010 Forms 1040 were true, correct and complete and, thereby, complied with the Internal Revenue Code and IRS Regulations fully were misrepresentations.

## Forms 3520 and Forms 3520-A

Mr. Miksic was responsible to file true, correct, and complete IRS Forms 3520 and Forms 3520-A. Boeckermann did not prepare and file Forms 3520 and Forms 3520-A. Boeckermann "did not advise Miksic that he was required to file Forms ... 3520 (or 3520-A)

24

regarding Rust Foundation with his 2007," "2008 and 2009 tax returns." (Answer) Form 1040, Schedule B - Interest and Ordinary Dividends, Part III Foreign Accounts and Trusts, question 8, specifically references Form 3520.

Mr. Miksic's Form 1040, Schedule B - Interest and Ordinary Dividends, Part III Foreign Accounts and Trusts, question 8 states:

> "During 2005 (2006, 2007, 2008, 2009 and 2010) did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If "Yes," you may have to file Form 3520. See page B-2" or "See instructions on back."

Question 8 was answered "No" for 2005, 2006, 2007, 2008 and 2010 and was left blank for 2009. Mr. Miksic's Form 1040 for 2005, 2006, 2007, 2008 and 2010 incorrectly reported, and for 2009 did not report, that Mr. Miksic did not receive distributions and was not the grantor of, or transferor to, a foreign trust. Boeckermann, Mr. Parnell, did not know if the preparer or the software checked questions 7a and 8 during the 2005-2010 time frame. (Parnell Deposition, page 83) Question 8 specifically references Form 3520.

Mr. Miksic was the grantor, creator (in 1998), and U.S. owner of and received distributions from the Rust Foundation, a Liechtenstein foundation. Mr. Miksic received distributions from the Rust Foundation, including as follows: $13,521 for 2005, $10,436 for 2006, $139,189 for 2007, and $845,257 for 2008. (Forms 3520 and Forms 3520-A)

Boeckermann's representations that the 2005, 2006, 2007, 2008, 2009 and 2010 Forms 1040 were true, correct and complete and, thereby, complied with the Internal Revenue Code and IRS Regulations fully were misrepresentations.

25

## <u>KNOWLEDGE, INQUIRIES, PUBLIC INFORMATION, AND IRS NOTICES</u>

During the period of 2005 through 2010, Boeckermann knew of Mr. Miksic's financial accounts in foreign countries and foreign interests.

<u>Boeckermann Knowledge</u>

Boeckermann knew that Mr. Miksic had interests in foreign financial accounts as of, at least, June 29, 2007. (Parnell Deposition, pages 129 and 140)  Boeckermann, Mr. Parnell, thought a bank account with the United Bank of Switzerland and a Croatian bank account, each, would qualify for an FBAR. (Parnell Deposition, page 57)  Boeckermann learned of Mr. Miksic's foreign UBS account in late 2009 or early 2010. Mr. Parnell set forth "I was not aware that Mr. Miksic may have had any accounts at UBS until late 2009 or early 2010." (Affidavit of Cory M. Parnell, paragraph 6)  Boeckermann learned of Mr. Miksic's accounts at UBS prior to the IRS notice regarding "audit of Mr. Miksic's 2008 tax return," dated December 16, 2010. (Affidavit of Cory M. Parnell, paragraph 5) and prior to the IRS notice that Mr. Miksic "failed to file a complete separate annual information return on Form 5471 ... with respect to EcoCortec d.o.o. [Croatia].

Boeckermann had conducted reviews of Cortec's financial statements (including as of November 3, 2007[7] and October 31, 2006), which included information regarding EcoCortec. (IRS Form 886-A, February 4, 2014 and Parnell Deposition, Exhibit 60)  Boeckermann was familiar with Mr. Miksic's ownership interest in EcoCortec, including as follows:

- "In the review of Cortec's financial statements, (Boeckermann) discusses the operations of the foreign entity, EcoCortec, and provides a summary of the operations of EcoCortec. The review specifically acknowledges and states that the taxpayer is the 100% owner of EcoCortec." (IRS Form 886-A, February 4, 2014)

---

[7] EcoCortec is referenced in Boeckermann's "Inquiry and Analytical Procedures Form," dated November 3, 2007. (Parnell Deposition, Exhibit 58)

## Summary

Boeckermann breached the duty of care to Mr. Miksic and deviated from the standard of care

owed Mr. Miksic by in, among others:

- Failing to exercise due professional care, to be careful, to be thorough or to obtain sufficient relevant data to prepare and file the required IRS forms for Mr. Miksic or to advise Mr. Miksic of requirements to file IRS forms;

- Failing to prepare and file required forms;

- Failing to timely detect and correct errors in Mr. Miksic's income tax and reporting forms;

- Failing to conduct appropriate further inquiry into Mr. Miksic's foreign holdings after receiving the IRS's audit notice to Mr. Miksic on March 17, 2010;

- Failing to conduct appropriate further inquiry into Mr. Miksic's foreign accounts and holdings after receiving the IRS's April 13, 2011 notice regarding Boeckermann's failure to prepare and file a Form 5471 related to EcoCortec;

- Failing to conduct appropriate further inquiry in Mr. Miksic's foreign holdings after receiving the IRS's May 25, 2012 notice regarding Boeckermann's failure to prepare and file a Form 5471 related to Cortec Croatia; and

- Failing to conduct appropriate further inquiry into Mr. Miksic's foreign holdings after receiving the IRS's Letter 3084 in the summer of 2012 regarding Boeckermann's failure to prepare and file Forms 3520 and Forms 3520-A.

## POST SCRIPT

Mr. Parnell did not know: if Boeckermann had done anything to ensure that failures to file

required forms regarding accounts in foreign countries and foreign trusts do not happen in the future

to Boeckermann clients, or if Boeckermann adapted any new policies or procedures as a result of this

lawsuit. (Parnell Deposition, pages 20 and 21) Mr. Edmunds testified "we have required our clients

to send us at least the (answers to the) questions that we've asked. (Edmunds Deposition, page 17)

As a result of the merger of Johnson West with Boeckermann in 2012, Johnson West adopted

Boeckermann policies and procedures and software. (Parnell Deposition, pages 21 and 22)

33

## PENALTIES AND INTEREST, FEES AND COSTS, AND FINANCIAL DAMAGES

Assessment of penalties and interest, incurrence of fees and costs, and financial damages were foreseeable consequences of the tax services provided by Boeckermann. Boeckermann's failure to comply with professional standards was a direct and proximate cause of penalties and interest, fees and costs and financial damages.

IRS Regulations include "A practitioner ... preparing or signing a tax return as a preparer, must inform the client of the penalties reasonably likely to apply to the client with respect to the position ... prepared, or reported. The practitioner also must inform the client of any opportunity to avoid any such penalty by disclosure, if relevant, and of the requirements for adequate disclosure." (Treasury Department Circular No. 230, Revised 6-2005 § 10.34)

Penalties were foreseeable, including as identified by the IRS, summarized as follows:

- *FBAR* - "Those required to file an FBAR who fail to properly file a complete and correct FBAR may be subject to a civil penalty not to exceed $10,000 per violation for nonwillful violations that are not due to reasonable cause." (irs.gov, Report of Foreign Bank and Financial Accounts [FBAR])

- *Form 5471* - "A $10,000 penalty is imposed for each annual accounting period of each foreign corporation for failure to furnish the required information within the time prescribed ..." and "Any person who fails to file or report all of the information required within the time prescribed will be subject to a reduction of 10% of the foreign taxes available for credit under sections 901, 902, and 960." (Instructions for Form 5471 (Revised December 2013), see also IRS letter, dated January 27, 2011)

- *Form 3520* - A penalty generally applies if Form 3520 is not timely filed or if the information is incomplete or incorrect. Generally, the initial penalty is equal to the greater of $10,000 or: a) 35% of the gross value of any property transferred to a foreign trust for failure by a U.S. transferor to report the creation of or transfer to a foreign trust, b) 35% of the gross value of the distributions received from a foreign trust for failure by a U.S. person to report receipt of the distribution or c) 5% of the gross value of the portion of the trust's assets treated as owned by a U.S. person for failure by a U.S. person to report the U.S. owner information." (Instructions for Form 3520, 2014 and IRS letter, dated May 18, 2012)

- *Form 3520-A* - "The U.S. owner is subject to an initial penalty equal to the greater of $10,000 or 5% of the gross value of the portion of the trust's assets treated as owned by the U.S. person at the close of that tax year, if the foreign

34

trust: (a) fails to file a timely Form 3520-A or (b) does not furnish all of the information required by section 6048(b) or includes incorrect information." (Instructions for Form 3520-A, 2014 and IRS letter, dated May 18, 2012)

## Financial Damages

Damages through approximately February 2, 2016 in connection with the failures to file or timely file FBARs, Forms 3520, Forms 3520-A and Forms 5471 include the following:

| | |
|---|---|
| IRS Penalties and Interest | $2,338,392 |
| Minnesota Penalties and Interest | 29,952 |
| Payments to Boeckermann | 141,482 |
| Payments to Accountants | 49,931 |
| Payments to Tax Counsel | |
| Florida | 554,415 |
| Minnesota | 22,726 |
| Payments to Legal Counsel | 146,001 |
| Payments to Accounting Expert | 14,725 |
| Total | $3,297,624 |

Damage amounts, except Payments to Legal Counsel, have been traced to supporting invoices and statements.

## Penalties and Interest

Mr. Miksic expended $2,368,344 regarding penalties and interest to the IRS ($2,338,392) and Minnesota ($29,952) authorities.

## Fees and Costs

Mr. Miksic expended $577,141 ($554,415 + $22,726) in tax counsel fees and costs responding to the IRS inquiries and $146,001 in legal counsel fees and costs.

Mr. Miksic expended $64,656 ($49,931 + $14,725) in accounting and tax services and accounting expert fees and costs.

## Other

Mr. Miksic's other damages include, among others: business disruption; and interest and earnings related to payments.

35

## DATA OR OTHER INFORMATION CONSIDERED

The data or other information considered by Mr. Cobb are his educational and professional experience, discussions with other professionals, and reading and analysis of certain documents and information including, but not limited to:

- Verified Complaint and Jury Demand;
- Answer;
- Affidavit of Cory M. Parnell, dated September 26, 2013;
- Affidavit of Corey W. Edmunds, dated September 26, 2013;
- Cory Parnell deposition transcript, dated March 8, 2016, and exhibits thereto;
- Corey Edmunds deposition transcript, dated March 9, 2016, and exhibits thereto;
- Boris A. Miksic deposition transcript, dated January 28, 2016;
- Angie McGillivray deposition transcript, dated February 19, 2016;
- AICPA Professional Standards;
- AICPA Standards for Tax Services;
- Minnesota Rules, 1105.0250;
- Treasury Department Circular No. 230;
- Boris A. Miksic U.S. Individual Income Tax Returns, accompanying schedules and statements, and related documents for 2005, 2006, 2007, 2008 and 2009;
- Internal Revenue Service letter to Cortec Corporation and/or Boris A. Miksic and related documents, dated March 17, 2010, January 27, 2011, May 18, 2012, May 25, 2012, February 4, 2014 (including Form 886-A), February 4, 2014, February 4, 2014 and October 1, 2014;
- Internal Revenue Service letter to Cory M. Parnell, dated January 27, 2011;
- Boris A. Miksic Forms 5471 regarding EcoCortec, D.O.O. for 2007, 2008 and 2009; Forms 5471 regarding Cortec Hrvatska D.O.O. for 2007, 2008 and 2009; Forms 3520-A regarding Rust Foundation for 2005, 2006, 2007 and 2008; and Forms 3520 regarding Rust Foundation for 2005, 2006, 2007 and 2008;
- Holland & Knight Memorandum and Exhibits, dated August 6, 2014 and August 11, 2014;
- Documents with Bates numbers BGM036253 - 36276, Miksic003609 - 3682, 003686 - 3782 and 006734 - 6817;
- Letters to Hon. Becky R. Thorson, dated October 27, 2015 and February 2, 2016;
- cortecvci.com;
- Twin Cities Business, "Boris Miksic's Double Life," June 2007;
- Twin Cities Business, "Combating Corrosion Worldwide," December 2006;
- The Network News, Tri-State Manufacturer's Association, "Cortec Corporation," March 2005;
- Cortec Corporation v. Erste Bank der oesterreichischen Sparkassen AG, United States District Court Southern District of New York Complaint and Jury Trial Demand, July 28, 2007, and Decision and Order Granting Defendant's Motion to Dismiss, February 11, 2008;
- bgm-cpa.com;
- web.archive.org;
- irs.gov; and Forms TD F 90-22.1, Forms 5471, Forms 3520 and Forms 3520-A.

Sawers Aff., Ex. 29

## QUALIFICATIONS

Arthur H. Cobb is a certified public accountant and president of Cobb & Associates, Ltd.

Mr. Cobb received a Bachelor of Business Administration degree with a major in accounting and a Master of Arts degree with a major in accounting from the University of Iowa. Since 1974, Mr. Cobb has completed an average of forty qualifying continuing professional education hours annually, including regarding professional practice and accounting and business ethics. (A copy of Mr. Cobb's resume is attached.)

Mr. Cobb was a partner in KPMG LLP, formerly Peat, Marwick, Mitchell & Co., and was a member of the professional staffs of Deloitte & Touche, LLP, formerly Touche Ross & Co. and PricewaterhouseCoopers LLP, formerly PriceWaterhouse & Co., each an international firm of certified public accountants and management consultants.

Mr. Cobb was a Lecturer-Assistant Professor in the Department of Accounting at the University of Minnesota and a Teaching Assistant and Research Assistant in the Department of Accounting at the University of Iowa.

Mr. Cobb has presented seminars including regarding: accountants' professional practice and accountants' liability on behalf of the University of St. Thomas and the Minnesota Society of Certified Public Accountants; and accounting and business ethics on behalf of the Minnesota Society of Certified Public Accountants and the University of Minnesota.

Mr. Cobb served as a member and chairperson of the Minnesota Society of Certified Public Accountants' Committee for Cooperation with the Bar and a member of the Minnesota Society of Certified Public Accountants' Professional Ethics Committee.

Since 1974, Mr. Cobb has been engaged in providing professional services in financial matters, with emphasis in the areas of litigation support and capital finance. Mr. Cobb has conducted engagements regarding the American Institute of Certified Public Accountants' Professional Standards and Minnesota Rules regarding Licensure and Regulation of Accountants, accountants' professional practice, and accountants' liability. Mr. Cobb has assisted representation of plaintiffs and defendants and has testified in state and federal courts and arbitrations.

LISTING OF CASES IN WHICH TRIAL OR DEPOSITION TESTIMONY
WAS PROVIDED WITHIN THE PRECEDING FOUR YEARS

**Arthur H. Cobb**

| | | |
|---|---|---|
| Ergotron, Inc. v. Rubbermaid Commercial Products, LLC | United States, Minnesota | 0:10-cv-2010 (ADM/JJG) |
| In Re: the Marriage of: Jeffrey Scott Hamelink and Bonnie Jean Marie Hamelink | Scott County, Minnesota | 70-FA-10-12284 |
| LaBella Winnetka, Inc. v. The Village of Winnetka and Douglas Williams and | United States, Illinois | 07C6633 |
| LaBella Winnetka, Inc. v. Avondale Group, Inc. | Cook County, Illinois | 07L11382 (2008 L1249, 2009 L5426) |
| Power Electric Distribution, Inc. v. Hengdian Group Linix Motor Co., Ltd. | Arbitration | 50 155 T 00886 11 |
| Thomas D. Kraemer v. Edward Kraemer & Sons, Inc. and Scott W. Peterson | Dane County, Wisconsin | 2011-CV-3523 |
| Sahai Pty. Ltd. v. Sassy, Inc. | United States, Illinois | 09-cv-7350 |
| Deepak Kademani, DMD, MD, FACS v. Mayo Clinic, Mayo Foundation, Michael Sarr and John or Jane Doe | United States, Minnesota | 09-cv-00119 |

39

In Re: Genmar Holdings, Inc., Debtor and Charles W. Ries,
Chapter 7 Trustee v. Bjorn Ahlstrom, James Berkebile,
Breakwater Marine - Genmar Holdings, Breakwater
Marine - Marine Media LLC, Warren Erdman, Alexandra
Jacobs, Irwin Jacobs, Jacobs Management Corporation,
Jacobs Trading, LLC, John Paul DeJoria Family Trust, Daniel
Lindsay, Jeff Melby, Operation Bass - Genmar Holdings, Inc.,
Operation Bass - Triumph Boats, Operation Bass - Genmar
Michigan, Operation Bass - Genmar Tennessee, Operation Bass -
Wood Manufacturing Co., Inc., VEC Technology - Genmar Holdings,
Inc., VEC Technology - Genmar Michigan, VEC Technology -
Genmar Minnesota (11-3390), VEC Technology - Genmar
Minnesota (11-3391), VEC Technology - Genmar Tennessee,
Donald Wood and Tom Grimmett, in His Capacity as
Trustee of the J.P. Nevada Trust

| | | |
|---|---|---|
| | United States, Minnesota | 09-43537 |

In the Matter of the Arbitration Between: Chad Wolsmann and
Daniel Wood, individually and as the UBS team known as the
"W Group," v. UBS Financial Services, Inc.

| | | |
|---|---|---|
| | FINRA | |
| SME Consolidated, Ltd. v. Sweet People Apparel, Inc. | Arbitration | Arbitration No. 13 130 Y |

DQ Wind-up, Inc., Trust for the Benefit of Shareholders of ACI
Telecentrics, Inc. as successor to ACI Telecentrics, Inc. v.
Gary S. Kohler, John Doe 1, John Doe 2

| | | |
|---|---|---|
| | Hennepin County, Minnesota | 27-CV-10-27509 |
| Farmers Cooperative Company v. Rembrandt Enterprises, Inc. | Winnebago County, Iowa | LACV 017018 |

Pioneer Wireline Services, LLC v. Go Wireline LLC,
Markham G. Gjovig and Arlan A. Arnson

| | | |
|---|---|---|
| | Cass County, North Dakota | 09-2011-CV-0706 |

40

| | | |
|---|---|---|
| Eidos Display, LLC and Eidos III, LLC v. AU Optronics Corporation, AU Optronics Corporation America, Chi Mei Innolux Corporation, Chi Mei Optoelectronics USA, Inc., Chunghwa Picture Tubes, Ltd., HannStar Display Corporation and Hannspree North America, Inc. | United States, Texas | 6:11-cv-00201-LED |
| AGinformationData, LLC v. Integrated Solutions Group, Inc., AgTrax Technologies, Inc., AgWorks, Inc. and AgWorks, LLC | United States, Minnesota | 0:11-cv-03673 |
| Ulteig Engineers, Inc. v. Apex Engineering Group, Inc.; Jonathan Bach; Michael Berg; Thomas Demke; Kristina Dietz-Nicholson; Jason Gullicks; Stephen Hoetzer; Michael Johnson; Sarah Kautzman; Matthew Kinsella; Seth Lynne; Dain Miller; Peter Moch; Joshua Olson; Karla Olson; Scott Olson; Timothy Paustian; Scott Schneider; Craig Wald; Thomas Welle; Scott Wilcox; David Wood; and ABC Corporation, XYZ Partnership and John Doe or Mary Row, whose true names are unknown to Plaintiff at this time | Cass County, North Dakota | 09-2011-CV-00861 |
| National Material Company, L.L.C. v. The GSI Group, LLC | Christian County, Illinois | 10 CH 64 |
| Sage Electrochromics, Inc. v. John A. Baccich, Matthew M. Callahan, Duane Robert Donaldson, Paul M. Friedman, Stephen J. Harper, James C. Jarocki, F. James Neil, Jr., Christopher Alan Reich, Deborah Cryer Reich, Elizabeth Karen Reich, Jeffrey Reich, Individually and as Custodian for the shares held by Lauren Ann Reich and the shares held by Gregory Robert Reich, William Thompson, Thomas H. Roberts III Trust, Stolat Management, Inc., and Reicher Capital Management Company, Inc. | Mercer County, New Jersey | MER-C-81-12 |

41

| | | |
|---|---|---|
| Menard, Inc. v. Wells Fargo Insurance Services USA, Inc. and Swett & Crawford | Milwaukee County, Wisconsin | 10-cv-7592 |
| R. Wynn Kearney, Jr., M.D., v. The Orthopaedic and Fracture Clinic, P.A. and Steven B. Curtis, Edwin D. Harrington, Paul C. Matson, Clinton A. Muensch, Robert W. Shepley, John A. Springer, Scott R. Stevens, Erik A. Stroemer, Gene E. Swanson, Kyle C. Swanson, Gordon D. Walker and Bradley R. Willie | Blue Earth County, Minnesota | 07-CV-13-1832 |
| Daniel Mahoney v. William Telkamp, Leann Telkamp and Todd Hottovy, individually, and Hottovy Agency, Inc. | Stevens County, Minnesota | 75-CV-12-203 |
| Sarah Louise Borchardt and Jeffrey Bruno Borchardt | Hennepin County, Minnesota | 27-FA-14-2244 |
| Thomas L. Taylor III, solely in his capacity as court-appointed receiver for Evolution Capital Advisors, LLC, Evolution Investment Group I, LLC and Damian Omar Valdez v. U.S. Bank National Association | United States, Texas | 4:12-cv-3550 |
| Moon Mountain Farms LLC v. Rural Community Insurance Company | United States, Arizona | CV-13-00349 |
| Caribou Coffee Company, Inc. v. Richard Fearon, Jr., Aisling Bernadette Fearon and Accretive Capital Partners, LLC | Hennepin County, Minnesota | 27-cv-13-15070 |
| Brady Meyer v. Interstate Improvement, Inc., Steven Knish and Patricia Knish | United States, Minnesota | 13-CV-3197 |
| JRF, Inc. v. Cold Stone Creamery, Inc. | Arbitration | AAA Case No. 65 114 Y 73 14 |
| Versique Acquisition, Inc. v. Paul Beard | Hennepin County, Minnesota | 27-CV-14-20377 |

42

Meredith Poland, individually and as Trustee for the Next-of-Kin of
Jerome D. Poland, Deceased v. Bankers Standard Insurance Company,
an Ace Group Company                                      Arbitration

Motio, Inc. v. BSP Software LLC                    .        United States, Texas              4:12-cv00647

Matthew Serrino and Lucille Serino, individually and on behalf of
All others similarly situated, v. Kenneth Lipper, Lipper Holdings, LLC,
PricewaterhouseCoopers LLP, Lipper & Company, Inc., Abraham
Biderman, Lawrence Block, Edward Strafaci and Michael Visovsky      Supreme Court, New York            02/604396

In Re the Marriage of Mandeep Sodhi and Leisa Lynn-Ketelson Sodhi   Hennepin County, Minnesota         FA-15-4017

43

<u>**COMPENSATION**</u>

Cobb & Associates, Ltd. is compensated for professional fees and expenses, based on standard rates. The standard rate for Arthur H. Cobb is $510 per hour.

_____
Arthur H. Cobb
March 31, 2016

44

**ARTHUR H. COBB**
3710 IDS Center
Minneapolis, Minnesota 55402
(612) 337-5454

---

**PRESENT POSITION:**         Cobb & Associates, Ltd.

**PREVIOUS POSITIONS:**       Cobb, Ludington & Associates, Ltd.
1987 to 1994
Churchill Advisors, Inc.
1985 to 1987
KPMG, formerly Peat, Marwick, Mitchell & Co.
1980 to 1985
Touche Ross & Co.
1977 to 1980
Price Waterhouse & Co.
1974 to 1977

**ACADEMIC EXPERIENCE:**      University of Minnesota, Lecturer - Assistant Professor
Department of Accounting - 1975 to 1980
University of Iowa, Teaching Assistant - 1972 to 1974

**EDUCATION:**                University of Iowa - MA, 1974
University of Iowa - BBA, 1972

**PROFESSIONAL:**             Certified Public Accountant

American Institute of Certified Public
Accountants

Minnesota Society of Certified Public
Accountants, Past Chairperson - Committee
for Cooperation with the Bar, Past Member -
Professional Ethics Committee

**SEMINARS:**                 Presented and attended seminars on calculation
of lost profits in business litigation, intellectual
properties, financial forecasting, financial analysis
and statistical analysis, due diligence, accountant's
legal liability and valuation of businesses.
Participated in panel discussions regarding
tax-exempt bonds, real estate financing and
health care financing.

45