# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| BORIS A. MIKSIC, | Civil No. 15-539 (JRT/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY** |
| BOECKERMANN GRAFSTROM MAYER, LLC, *a Minnesota limited liability company f/k/a Johnson, West & Co. P.L.C.*, BOECKERMANN GRAFSTROM MAYER, P.A., and JOHNSON WEST & CO. P.L.C., | |
| Defendants. | |

Gregory J. Stenmoe and Michael M. Sawers, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN  55402, for plaintiff.

Kyle A. Eidsness and Russell S. Ponessa, **HINSHAW & CULBERTSON LLP**, 333 South Seventh Street, Suite 2000, Minneapolis, MN  55402, for defendants.

The Internal Revenue Service ("IRS") assessed substantial taxes, monetary penalties, and interest against Plaintiff Boris Miksic for his failure to file U.S. tax forms during tax years 2005 to 2010, and not disclosing his interests in and income from foreign trusts, businesses, and bank accounts.  Miksic filed this accounting malpractice action alleging those errors were due to negligent tax preparation by Defendants Boeckermann Graftstrom Mayer LLC, formerly known as Johnson, West & Co. P.L.C., Boeckermann Graftstrom Mayer, P.A., and Johnson West & Co. P.L.C. (collectively "Defendants").

Miksic also contends that as a result of Defendants' negligence, he changed accountants and retained legal counsel to respond to the IRS audit and to bring this action.

Defendants move for summary judgment on Miksic's malpractice action and move to exclude testimony by Miksic's causation and liability expert, Arthur H. Cobb. Specifically, Defendants assert that: the six-year statute of limitations bars Miksic's malpractice action; Miksic failed to provide meaningful expert testimony as required by Minn. Stat. § 544.42; the doctrines of *in pari delicto* and laches bar Miksic's action; and Miksic cannot recover certain IRS penalties, all delinquent tax liabilities, and all attorneys' fees expended to bring the instant action.

The Court will deny in part and grant in part Defendants' motion for summary judgment. The Court will deny the motion as the Court finds that Miksic's claim is timely, Cobb's expert testimony provides a meaningful summary of his accounting malpractice opinion, and the *in pari delicto* and laches doctrines do not apply to the instant action. The Court, however, will grant Defendants' motion for summary judgment to preclude Miksic from recovering as damages abated Form 5471 penalties, payment for delinquent taxes, and attorneys' fees expended in the instant action. The Court finds Cobb is qualified to offer his expert opinion in this case and that his opinion will not confuse or mislead the jury, the Court will deny Defendants' motion to exclude Cobb's expert testimony.

**BACKGROUND**

## I.      MIKSIC'S RELATIONSHIP WITH DEFENDANTS

Miksic is a Croatian-American entrepreneur who lives in the United States.  (Aff. of Michael M. Sawers ("Sawers Aff."), Ex. 1 ("Miksic Dep.") at 14:12-19, 18:22-19:25, Aug. 12, 2016, Docket No. 45.)   English is not his first language.   (*Id.* at 14:19-20.) Miksic owns several American and Croatian companies, including a Minnesota-based corporation named Cortec Corporation ("Cortec"), of which he is the sole shareholder, as well as a Croatian-based company named EcoCortec.  (*Id.* at 18:24-20:21; 28:2-32:20.) Defendants provided accounting services for both Miksic and Cortec since 1988.  (*Id.* at 49:9-50:18.)[1]

When Miksic first retained Defendants, his primary Certified Public Accountant ("CPA") was Cliff Lozinski.  (Miksic Dep. at 76:20-77:20.)   Once Lozinski retired in approximately 2006 (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 3, Aug. 12, 2016, Docket No. 43), CPAs Cory Parnell and Corey Edmunds took on a substantial role in providing Miksic accounting advice and services, (Miksic Dep. at 76:20-77:20; Sawers Aff., Ex. 8 ("Edmunds Aff.") ¶¶ 3-4; Ex. 9 ("Parnell Aff.") ¶ 4).

## II.     THE DELINQUENT IRS FORMS

In March 2010, the IRS notified Cortec that its federal return had been selected for examination.  (Sawers Aff., Ex. 10.)   As a result of that examination, the IRS notified

---

[1] In 1988, Miksic retained Johnson, West & Co. P.L.C., which later merged with Boeckermann Graftstrom Mayer, LLC, in 2012.  (*Id.* at 50:2-18; Sawers Aff., Ex. 7.)

Miksic that he failed to file various forms pertaining to his foreign interests, including (1) Form 5471 ("Information Return of a U.S. Person With Respect to Certain Foreign Corporations"), (*id.*, Ex. 11); (2) Form 3520 ("Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts"), (*id.*, Ex. 12); (3) Form 3520-A ("Annual Information Return of Foreign Trust With a U.S. Owner"), (*id.*, Ex. 12); and (4) Form TD F 90-22.1 ("Report of Foreign Bank and Financial Accounts") (hereinafter "FBAR"), (*id.*, Ex. 13), (collectively the "Delinquent Forms").  Miksic alleges that the IRS assessed substantial monetary penalties, interest, and taxes as a result of Miksic's failure to file the Delinquent Forms between tax years 2005 to 2010.[2]  Miksic asserts he may recover those amounts as damages, as well as costs, fees, and expenses to change accountants and retain legal counsel to respond to the IRS audit and to bring this action.

## III.   TAX YEARS AT ISSUE

The parties agree that during tax years 2005 to 2010, Defendants sent Miksic an engagement letter and a questionnaire.  (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 8, July 22, 2016, Docket No. 35; Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 9.)  Miksic, however, signed Defendants' engagement letter only for tax year 2006. (Miksic Dep. at 57:5-58:5; Decl. of Michael T. Berger ("Berger Decl.), Ex. 4 at 2-3,

---

[2] The Court was unable to determine, based on the parties' briefings and a thorough review of the record, the exact amount of IRS penalties, interest, and delinquent taxes assessed during the 2005 to 2010 tax years relating to the Delinquent Forms.  The parties themselves offered different amounts, (*compare* Compl. ¶¶ 44-50, Feb. 18, 2015, Docket No. 1, *with* Defs.' Mem. in Supp. of Mot. for Summ. J. at 17-19, July 22, 2016, Docket No. 35, *and* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 5-6, Aug. 12, 2016, Docket No. 43), and the Court was unable to resolve the discrepancies based on the parties' citations to the record.

Apr. 7, 2016, Docket No. 27.)   That engagement letter states: "[y]ou have the final responsibility for the income tax returns and, therefore, you should review them carefully before you sign them."   (Berger Decl., Ex. 4 at 2.) The questionnaire attached to that letter asked, "[d]id you have any foreign income or pay any foreign taxes during the year?," and "[w]ere you a grantor or transferor for a foreign trust, have an interest in or a signature or other authority over a bank account, securities account, or other financial account in a foreign country?"   (*Id.* at 5-6.)   Miksic asserts he did not return completed questionnaires for several of the tax years at issue.   (*See* Sawers Aff., Ex. 4 at 67:4-10; 71:23-72:9.)

Instead, Miksic explained that he likely gave the questionnaire to Angie McGillivray, the Chief Financial Officer of Cortec.   (Miksic Dep. at 46:20-24, 62:19-23, 63:16-65:6; *see also* Berger Aff., Ex. 5 at 33:10-34:9.)   According to Miksic, McGillivray was "fully aware of all of the financial accounts in which [he] had an interest in the 2005 through 2010 timeframe," and he provided her with tax information to give to Defendants.   (Miksic Dep. at 85:8-12; 48:7-49:8; 63:4-64:12.)   Defendants counter that on three separate instances, one of Defendants' tax preparers (other than Parnell and Edmunds) inquired with McGillivray about Miksic's foreign financial accounts for tax years 2006, 2008, and 2010.   (Berger Decl., Ex. 7, Ex. 10, Ex. 11; *see* Defs.' Mem. in Supp. of Mot. for Summ. J. at 13-14.)   However, Defendants maintain, McGillivray and Miksic did not disclose Miksic's foreign accounts which should have been reported on his FBARs.

Miksic, on the contrary, asserts that Defendants did not follow up with him regarding his blank questionnaires (Sawers Aff., Ex. 4 at 67:4-10; 71:23-72:9), that Parnell and Edmunds never asked Miksic about foreign accounts (Parnell Aff. ¶ 9; Edmunds Aff. ¶ 12), that Defendants' tax return software defaulted to an inaccurate statement of Miksic's foreign interests (Edmunds Aff. ¶ 12), and – notwithstanding that Defendants filed an FBAR for Miksic in 2006 and indicated on Miksic's 2008 and 2009 tax returns that he had foreign accounts – Defendants failed to file FBARS in the tax years at issue succeeding 2006 (Sawers Aff., Ex. 4 at 83:10-84:20; Edmunds Aff. ¶ 7-8, 11). Miksic also contends that Defendants knew about Miksic's ownership interest in EcoCortec – which needed to be disclosed on Miksic's Form 5471 – but that Defendants failed to file that form for tax years 2007 to 2009.[3] (Edmunds Aff. ¶ 8.) Lastly, Miksic argues Defendants never inquired whether he owned a foreign trust and that Miksic did not know his interest in and distributions from a Lichtenstein foundation required filing Forms 3520 and 3520A in tax years 2005 through 2008. (Miksic Dep. at 116:16-18; 152:3-154:5.)

## IV.    PROCEDURAL BACKGROUND

On November 24, 2014, Miksic sued Defendants in Minnesota state court, and Defendants removed that action to federal court on December 22, 2014. (Case No. 14-5047 (DWF-TNL), Notice of Removal, Dec. 22, 2014, Docket No. 1.) The parties

---

[3] The IRS, however, ultimately abated the $60,000 it initially assessed in penalties for Miksic's late Form 5471 filing. (Berger Decl., Ex.14.)

stipulated for dismissal of that action on February 17, 2015, and it was dismissed without prejudice on February 18, 2015.  (Case No. 14-5047 (DWF-TNL), Joint Stipulation of Dismissal, Feb. 17, 2015, Docket No. 5; Dismissal Order, Feb. 18, 2015, Docket No. 6.) Miksic refiled this action on February 18, 2015, before the Court and asserted five claims against Defendants: accounting malpractice; breach of contract; unjust enrichment; negligent misrepresentation; and breach of fiduciary duty.  Defendants moved for summary judgment and to exclude expert testimony on July 22, 2016.

## DISCUSSION

## I.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009).  If the plaintiff's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.      Statute of Limitations

The parties dispute whether the applicable statute of limitations bars Miksic's state-law cause of action for accounting malpractice against Defendants.  Minn. Stat. § 541.05, subd. 1(5) provides a six year limitation period for a professional malpractice claim.  *Bonhiver v. Graff*, 248 N.W.2d 291, 296 (Minn. 1976) (stating the statute of limitations for an accounting malpractice action is six years and citing to Minn. Stat. § 541.05, subd. 1(5)).  Although the statute does not specifically state when that period begins, the Minnesota Supreme Court has "consistently held that the statute begins to run when the cause of action accrues, that is, when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted."  *Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn. 2006).  The Minnesota Supreme Court

also explained that a malpractice action accrues when the plaintiff sustained "some damage" as the result of the defendant's negligence. *Id.* at 335-36.[4]

Miksic first sued Defendants on November 24, 2014, and thus any claim that accrued as early as six years from then – *i.e.*, November 24, 2008 – is timely. Defendants assert that Miksic's claims accrued in April 2006 when he filed his tax forms for tax year 2005 and allegedly suffered "some damage," due to Defendants' tax preparation. Additionally, Defendants contend that the tax years at issue comprise a single course of representation such that all of Defendants' alleged negligence relates back to filing of Miksic's tax return in April 2006. Defendants rely upon *Ames & Fischer Co., II v. McDonald*, 798 N.W.2d 557, 563-64 (Minn. Ct. App. 2011) (finding that the applicable statute of limitations for an accounting malpractice claim accrued upon the filing of a tax return), *Reid Enterprises, Inc., v. Deloitte & Touche, LLP*, No. C8-99-1801, 2000 WL 665684, at *3 (Minn. Ct. App. May 23, 2000) (rejecting plaintiff's argument that there was separate negligence in each year the returns were prepared), and *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643-44 (Minn. 1999) (holding malpractice cause of action accrued when plaintiff took first prohibited tax action when such transactions spanned several years).

Miksic responds that his claims accrued no earlier than January 27, 2011, when the IRS issued its first penalty because prior to that date, not only would he have had no

___

[4] Although *Antone* was a legal malpractice case and the instant action is an accounting malpractice case, the parties agree that the statute of limitations – Minn. Stat. § 541.05, subd. 1(5) – applies to both kinds of professional negligence cases. (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 21; Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 19.)

notice of the claim, but his damages would have been "[s]peculative, remote, or conjectural." *See Anderson v. Benson*, 394 N.W.2d 171, 175 (Minn. Ct. App. 1986) (rejecting buyer's alleged damages where buyer introduced no evidence that seller's failure to file a corporate tax return exposed the corporation to present or future tax liability to the IRS).

The Court finds that none of Defendants' proffered cases are controlling with regard to the statutes of limitations issue in the instant action. *Ames* is inapplicable because the certified question before the Minnesota Court of Appeals in that case was: "[d]oes a cause of action for professional malpractice arising out of a failure to make a [Internal Revenue Code] Section 754 election accrue when the tax return is filed without the election rather than when the automatic extension period expires?" *Ames*, 798 N.W.2d at 561-62. In deciding that narrow question, the *Ames* court held that the statute of limitations began to run "when the returns were filed without the Section 754 elections, which resulted in the immediate overpayment of taxes and the loss of the use of those funds." *Id.* at 564. In contrast to *Ames*, the failure to file the Delinquent Forms did not affect Miksic until January 27, 2011, the first date when the IRS levied penalties against him.

Furthermore, Defendants' attempt to fix the accrual date of Miksic's claims in April 2006 by characterizing the nature of Defendants' services as a continuous representation is misguided. Defendants assert *Herrmann* is apposite in that Miksic's opportunity to identify his interest in and income from foreign accounts and entities was identical in each of the relevant tax years and that this error related to damages Miksic

allegedly suffered in April 2006.   However, the tax professionals in *Herrmann* gave negligent advice once and the taxpayer acted on that advice for nearly a decade, 590 N.W.2d at 642-44; whereas in the instant action, Defendants were under a new obligation every year to conduct an investigation of the facts and prepare the appropriate tax documents for Miksic.   Moreover, the *Reid* decision is factually distinguishable because in that case the IRS levied a single penalty "regardless of how many conformity violations Reid had during [a] six years [period]," 2000 WL 665684, at *2; whereas Defendants' supposed malpractice caused the IRS to assess substantial penalties for each tax year at issue.

According to Defendants, upon the failure to file the Delinquent Forms, Miksic should have sued Defendants, even though he was unaware of the failure, the IRS had not yet assessed penalties, and may never have assessed penalties.   The Court is unpersuaded by Defendants' position.   As the Supreme Court stated in *United States v. Boyle*, "[m]ost taxpayers are not competent to discern error in the substantive advice of an accountant or attorney.   To require the taxpayer to challenge the [accountant or] attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place." 469 U.S. 241, 251 (1985).   Accordingly, it would have been impossible for Miksic to discover the omission of his Delinquent Forms at any time earlier than receipt of his first IRS penalty notice.

Only once the IRS first assessed penalties on January 27, 2011, Miksic incurred "some damage" to begin the statute of limitations period as the Minnesota Supreme Court

described in *Antone*, 720 N.W.2d at 335.  The *Antone* court explained that a malpractice cause of action accrues upon occurrence of "any compensable damage," not just the damage for which the precise relief is sought in the complaint. *Id.* at 336.  "[T]he ability to ascertain the exact amount of damages is not dispositive with respect to the running of the statute of limitations." *Id.* at 338.  Thus, at the time Miksic received his first assessed IRS penalty – although the extent of that and related penalties were unascertainable, and even if the IRS may later abate those penalties – Miksic incurred "some damage."[5]  Thus, as Miksic's claim did not accrue until January 27, 2011, his instant action filed on November 24, 2014, is within the six year statute of limitations set forth in Minn. Stat. § 541.05, subd. 1(5).

### C.     Minnesota Statute §  544.42

Defendants also advocate for dismissal of Miksic's action on the grounds that Cobb's second affidavit fails to meet the Minnesota statutory requirements.  Minnesota law requires a party asserting a claim for professional malpractice to serve a second affidavit of expert review, within 180 days after discovery begins, which sets forth the "substance of the facts and opinions to which the expert is expected to testify, and a

---

[5] Defendants also contend that Miksic's claims are barred by the doctrine of laches because Miksic waited many years before filing this case and significant information was lost through the death of Cliff Lozinski, a critical witness in this malpractice action.  However, because Miksic's accounting malpractice action is a legal action governed by an applicable statute of limitations, the equitable doctrine of laches has no application.  *See Aronovitch v. Levy*, 56 N.W.2d 570, 573-574 (Minn. 1953) ("Where a party is seeking a legal remedy upon a legal right, we have held that the doctrine of laches has no application and that the remedy will be barred only by the statute of limitations.") (collecting cases).

summary of the grounds for each opinion." Minn. Stat. § 544.42, subds. 2, 4. Defendants rely upon *Guzick v. Kimball*, 869 N.W.2d 42, 51 (Minn. 2015), and *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 219 (Minn. 2007), in which the Minnesota Supreme Court held that the expert affidavits failed to provide meaningful information beyond conclusory statements and summaries of the expert's opinions.[6]

However, Cobb's second affidavit belies Defendants' reliance on *Guzick* and *Brown-Wilbert*. In *Guzick*, the plaintiff did not provide a second affidavit of expert disclosure and instead referred back to the first affidavit in place of its second affidavit. 869 N.W.2d at 45-46.[7] Moreover, the first affidavit did not provide any information regarding the expert's causation theory but instead stated in a conclusory manner that the defendants' negligent acts "caused damages." *Id.* at 45, 51. Similarly, in *Brown-Wilbert*, the Minnesota Supreme Court held allegations in a complaint and answers to interrogatories did not satisfy the requirements for a second affidavit under Minn. Stat. § 544.42 when such information did "not identify or define any specific accounting

---

[6] Defendants also assert that Cobb's second affidavit is speculative and did not include the substance of his opinions because he testified during his deposition that he reached those opinions after serving his second affidavit. (*See* Decl. of Michael T. Berger, Ex. 5 at 9:5-20, July 22, 2016, Docket No. 40; *see also* Aff. of Arthur H. Cobb, Ex. 1, Aug. 17, 2016, Docket No. 51.) However, there is no reason to doubt that Cobb's second affidavit reflected his analysis at the time it was submitted and that his expert opinions had not been cemented at that time because discovery was ongoing. This is consistent with the statutory requirement that a second affidavit of expert review be served within 180 days after discovery begins. Minn. Stat. § 544.42, subd. 2.

[7] In *Guzick*, the Minnesota Supreme Court refers to the first affidavit required by Minn. Stat. § 544.42 as the "affidavit of expert review" and the second affidavit as the "affidavit of expert disclosure." 869 N.W.2d at 46-47.

standard of care, state how [the defendants] deviated from that standard of care, or allege how that deviation caused injury."  732 N.W.2d at 219.

In contrast to those cases, Cobb's second affidavit lists several different accounting standards that form the applicable standard of care Defendants owed to Miksic, including specific provisions from the American Institute of Certified Public Accountants ("AICPA") Statements on Standards for Tax Service and the AICPA Code of Professional Conduct.  (*See* Aff. of Arthur H. Cobb, Ex. 1 ¶¶ 8-10, Aug. 17, 2016, Docket No. 51.)  The affidavit describes how Defendants breached that standard of care by not obtaining sufficient relevant data, not making a reasonable inquiry, not referring to Miksic's previous returns, allowing unanswered questions to default to "no," and not filing or advising Miksic to file various IRS forms.  (*Id.* ¶¶ 11-17.)  Furthermore, Cobb opines that Defendants' deviations from the applicable standards of care proximately and directly caused scrutiny by the IRS which caused Miksic to incur significant damages, including penalties and interest, as well as other costs, fees, and expenses.  (*Id.* at ¶¶ 18-19.)  Thus, Cobb's second affidavit goes well beyond conclusory statements that negligent acts "caused damages," as was the issue in *Guzick*, 869 N.W.2d at 51, and also meaningfully opines that Defendants' departure from the standard of care caused Miksic's injuries, as was the issue is *Brown-Wilbert*, 732 N.W.2d at 219.

### D.     In Pari Delicto

Defendants next seek to invoke the equitable defense of *in pari delicto*, a doctrine which bars a plaintiff's recovery due to his own wrongful conduct.  *See Pinter v. Dahl*,

486 U.S. 622, 632 (1988).   Defendants argue that Miksic is barred from recovering damages because not only did he fail to review and identify missing information from his tax returns, he also affirmatively withheld information about his foreign accounts and ownership in the Rust Foundation despite having received letters from a Swiss law firm about potential U.S. tax consequences associated with the foundation.

Defendants assert that *Christians v. Grant Thornton, LLP* is an instructive case. 733 N.W.2d 803 (Minn. Ct. App. 2007).   In *Christians*, a company's Chief Executive Officer ("CEO") entered into a transaction contrary to his company's best interest, which he later concealed from the company's auditor, Grant Thornton, LLP.   *Id.* at 806-07. Grant Thornton's audit resulted in an overstatement of the company's equity.   *Id.*   The company later went bankrupt and its trustee brought an auditor malpractice action against Grant Thornton.   *Id.* at 807-08.   The Minnesota Court of Appeals determined that *in pari delicto* barred such recovery because the CEO's inequitable conduct to deceive outsiders was imputed to the company, and thus the company bore "at least substantially equal responsibility for the injury it s[ought] to remedy [in the action]."   *Id.* at 810, 814-15.

The Court finds *Christians* distinguishable from the instant action.   In *Christians*, it was undisputed that the auditor was never presented with critical information about the company, despite the CEO's dishonest assertion that he had provided the auditor with all relevant financial records and related data.   *Id.* at 814.   In the instant action, however, the parties dispute whether Defendants inquired about Miksic's foreign financial accounts and entities during the tax years at issue.   Although Defendants assert that they made such an inquiry for tax years in 2006, 2008, and 2010 regarding Miksic's foreign

financial information (which primarily relates to FBARs), Defendants do not offer any argument regarding such an inquiry in tax years 2005, 2007, 2009.  Furthermore, Miksic disputes Defendants' version of the facts and asserts that Defendants did not follow up with him – despite intimate and longstanding knowledge of his foreign affairs – to ensure the Delinquent Forms were timely filed.  Miksic also asserts neither Parnell nor Edmunds ever asked Miksic if he had any foreign accounts, and that Defendants' tax return software defaulted to an inaccurate statement of Miksic's foreign interests.

The other cases Defendants rely upon in support of the *in pari delicto* defense are also distinguishable.  *Giordano v. UBS, AG*, involved a plaintiff who sought to hold a Swiss bank responsible for the consequences of the plaintiff's own filing of false tax returns when the Swiss bank was not involved in preparing those returns. 134 F. Supp. 3d 697, 701, 708-09 (S.D.N.Y. 2015).  The *Giordano* court found that the plaintiff failed to "allege[] any facts that would relieve her of her own culpability for knowingly filing false tax returns." *Id.* at 710.  *In re Hansel* is also distinguishable. No. 08-3177, 2012 WL 3113849, at *10 (Bankr. D. Minn. June 15, 2012) (holding debtor did not plead facts negating wrongdoing on her part).

In contrast, Miksic asserts that Defendants – despite their intimate history of working with Miksic and general knowledge of his involvement with foreign entities – failed to inquire about Miksic's foreign financial accounts.  Miksic specifically notes that notwithstanding that Defendants filed an FBAR for Miksic in 2006 – and indicated on Miksic's 2008 and 2009 tax returns that he had foreign accounts – Defendants failed to file FBARS in the tax years at issue succeeding 2006.  Miksic also contends that

Defendants knew about Miksic's ownership interest in EcoCortec – which needed to be disclosed on Miksic's Form 5471 – but that Defendants failed to file that form for tax years 2007 to 2009. Lastly, Miksic argues Defendants never inquired whether he owned a foreign trust and that Miksic did not know his interest in and distributions from a Lichtenstein foundation required filing Forms 3520 and 3520A in tax years 2005 through 2008. Based on this genuine material factual dispute of which party is at fault for the failure to file Miksic's Delinquent Forms, it is improper for the Court to apply the *in pari delicto* doctrine at this time.[8]

### E.      Damages

Defendants next contend that if this case proceeds, the Court must limit Miksic's claimed damages regarding FBAR penalties, Form 5471 penalties, delinquent taxes, and attorneys' fees. The Court will address each issue in turn.

---

[8] Defendants also contend that Miksic's signature on his tax return serves as his constructive notice of the contents and is *prima facie* evidence that he understood questions on his tax return regarding FBAR and Form 3520 filing requirements. Defendants cite to *United States v. Williams*, 489 F. App'x 655, 659 (4th Cir. 2012) (finding that a signature was *prima facie* evidence the taxpayer reviewed the return and that line 7a put the taxpayer on inquiry notice of FBAR requirements); *United States v. McBride*, 908 F. Supp. 2d 1186, 1208 (D. Utah 2012) (finding as a matter of law that a taxpayer who signs his return is charged with having reviewed that return and with having knowledge of his foreign account disclosure requirement); *Thomas v. UBS AG*, No. 11-4798, 2012 WL 2396866, at *5 n. 2 (N.D. Ill. June 21, 2012) (finding that "[t]he simple yes-or-no question of Schedule B makes it inconceivable that [a taxpayer] could have misinterpreted this question"). However, none of these cases were accounting malpractice cases or discussed the *in pari delicto* defense, and thus, they do not assist the Court in making such a determination. These cases instead generally involved whether the IRS could assess penalties against taxpayers for willfully violating the Internal Revenue Code section requiring an annual report of foreign financial interests.

### 1.   FBAR Penalties

Defendants assert that because Miksic has appealed his FBAR penalties with the IRS, those damages should be considered too speculative and unrecoverable.  In support of that argument, Defendants rely upon *Lewin v. Miller Wagner & Co.*, 725 P.2d 736 (Ariz. Ct. App. 1986), and *Olson, Clough & Straumann, CPA's v. Trayne Properties, Inc.*, 392 N.W.2d 2 (Minn. Ct. App. 1986).  However, neither case is persuasive.  In *Lewin*, the court held that the plaintiff's claimed accounting malpractice damages were speculative when the IRS agent had not levied any penalties and there was no evidence whether that agent's determination would be upheld at a higher IRS administrative level or in litigation.  725 P.2d at 740-41.  In contrast, the IRS assessed substantial and fixed penalties based on Miksic's failure to file FBARs.  Also unlike the instant action, in *Olson*, the court held reputation and loss of business damages which could not be reliably calculated were too speculative.  392 N.W.2d at 4.

Thus, the Court finds that Miksic's damages are not unduly speculative.  *See, e.g., J & M Assocs., Inc. v. Callahan*, 753 F. Supp. 2d 1183, 1216 (S.D. Ala. 2010) (stating damages were "not speculative simply because [the taxpayer] ha[d] not paid the penalties, especially since the IRS ha[d] determined a specific amount owed").  Nevertheless, if this case proceeds to trial while Miksic's appeal with the IRS is still pending and if, as a result of trial, Miksic is entitled to recover from Defendants relating to his FBAR penalties, then the Court will order that amount of recovery be placed into escrow with the Court.  The Court will require this because it recognizes that Miksic could doubly recover if the IRS abates Miksic's FBAR penalties.  Furthermore, during

the pendency of this case, Miksic's counsel is to provide a written report to the Court every six months providing any developments with Miksic's appeal with the IRS.

## 2. Form 5471 Penalties and Delinquent Taxes

Defendants assert that after Miksic commenced this action, the IRS abated his Form 5471 penalties; thus that amount must be excluded to prevent double recovery. Defendants also contend that Miksic cannot recover the amount he paid to the IRS as tax deficiencies. Miksic does not offer any counter argument.

The Court finds Miksic is precluded from recovering any of these amounts. As the IRS abated Miksic's Form 5471 penalties, he may not seek that amount as damages in this action. *See e.g.*, *Vesta State Bank v. Indep. State Bank of Minn.*, 518 N.W.2d 850, 855 (Minn. 1994) ("[I]f inconsistent remedies are sought and it is doubtful which one will bring relief, a party may claim either or both alternatively until one remedy is pursued to a determinative conclusion."). Holding otherwise would improperly permit a double redress for a single claim. Furthermore, Miksic cannot recover as damages the amount he paid to the IRS as tax deficiencies because, "when a tax advisor's negligence leads to an underpayment of tax, the taxpayer cannot recover as damages the tax deficiency itself because the tax liability arose not from the negligent advice, but from the ongoing obligation to pay the tax." *O'Bryan v. Ashland*, 717 N.W. 2d 632, 633 (S.D. 2006). Thus, the Court finds that Miksic may not recover as damages his abated Form 5471 penalties or his payment of delinquent taxes.

### 3.   Attorneys' Fees

Defendants finally assert Miksic cannot recover any attorneys' fees he paid to bring the instant accounting malpractice action and cite to *Whitney v. Buttrick*, 376 N.W.2d 274 (Minn. Ct. App. 1985).   Defendants, however, do not address whether Miksic may claim damages for attorneys' fees paid to respond to the IRS audit.   Miksic counters he is entitled to recover attorneys' fees he paid during his tax appeal with the IRS, citing to *Hill v. Okay Constr. Co.*, 252 N.W.2d 107, 121 (Minn. 1977), as well as attorneys' fees in the instant case to mitigate damages caused by Defendants' malpractice.

The Minnesota Supreme Court explained in *Hill* that, "[a]ttorneys fees and expenses are not generally included in the measure of recoverable damages for negligence. An exception is recognized, however, when the attorneys fees and expenses claimed are incurred in other litigation which is necessitated by the act of the party sought to be charged."   252 N.W.2d at 121 (citation omitted).   Likewise, the Minnesota Court of Appeals in *Whitney* held that "appellant's claim that respondent is liable to him for attorney fees in suing respondent for legal malpractice fails in the absence of authorization by statute or case law.   Attorney fees and expenses are not generally included in the measure of recoverable damages for negligence."   376 N.W.2d at 281 (citing *Hill*, 252 N.W.2d at 121).

Thus, although *Hill* appears to support Miksic's position that his attorneys' fees paid during his tax appeal with the IRS are recoverable – which Defendants do not contest – clearly under both *Hill* and *Whitney*, attorneys' fees expended in the instant

accounting malpractice action are not recoverable.  Miksic does not cite to any Minnesota case holding otherwise.  The Court will therefore grant Defendant's motion for summary judgment that Miksic's request for attorneys' fees in connection with this action fails as a matter of law.

## II.    MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY

Defendants move to exclude testimony from Miksic's expert witness, Cobb. Defendants assert that Cobb is not qualified to offer an expert opinion on the specific tax preparation issues involved in this litigation, that Cobb employs the wrong professional standards in reaching his liability and causation theories, and that Cobb's testimony is legally deficient.

### A.    Standard of Review

Expert testimony is governed by Federal Rule of Evidence 702.  Rule 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The district court has a gate-keeping obligation to make certain that all testimony admitted under Rule 702 satisfies these prerequisites and that "any and all

scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified, that his or her methodology is scientifically valid, and that "the reasoning or methodology in question is applied properly to the facts in issue." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). The reliability inquiry is "designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at 757 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

The Eighth Circuit has held that "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Id.* at 758; *see also Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)).

### B.     Cobb's Qualifications

The parties do not dispute that Cobb is not a tax preparer. Defendants assert Cobb is not qualified to offer an expert opinion because he has no education, training, or

experience in tax preparation of the specific forms at issue and, as a result, has no experience in complying with the specific professional standards governing tax preparation services. Defendants principally rely on *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1081 (D. Minn. 2015) (holding "general background" and "common sense" were "not adequate methods or techniques for formulating specific opinions," especially where the expert had not personally preformed any software downloads or used the websites at issue), and *Noske v. Friedberg*, 713 N.W.2d 866, 872 (Minn. Ct. App. 2006) (affirming the trial court's decision to preclude a law professor who taught torts and professional responsibility from testifying in a legal malpractice case because "lack of practical or academic experience in the criminal-law area" rendered his testimony about the duty of a criminal defense attorney inadmissible).

However, Defendants argument is refuted by Cobb's deposition testimony. Cobb indicated that some of his continuing education credits related to the preparation of individual tax returns and that he took a course within the last year specifically on tax preparation for individuals with foreign accounts or foreign investments. (Sawers Aff., Ex. 6 ("Cobb Dep.") at 40:11-41:5.) Cobb also testified that he has advised and analyzed FBAR and Form 5471 filings, analyzed tax returns, and served on the professional ethics committee of the Minnesota Society of Certified Public Accountants where he analyzed accountants in practice. (*Id.* at 34:7-36:18, 43:8-45:4.) Furthermore, Cobb explained that he applied various AICPA professional standards for tax services – including preparation of individual tax forms – and that he has had many instances throughout his career to analyze tax preparation and tax returns. (*Id.* at 43:8-48:25, 59:13-24.)

Thus, unlike *Khoday*, 93 F. Supp. 3d at 1081, and *Noske*, 713 N.W.2d at 872, the Court finds that Cobb has sufficient educational and practical experience relating to tax accounting and the applicable professional standards to testify regarding the professional duties applicable to the tax accountants in this dispute.

### C.     Cobb's Opinion Regarding AICPA AR § 100

Defendants also assert that Cobb's liability and causation views, which are based in part upon AICPA AR § 100, should be excluded because that standard was erroneously applied and will confuse the jury.  (*See* Sawers Aff., Ex. 29 ("Cobb Report.") at 12; Cobb Dep. at 106:1-5.)  Defendants specifically note that AICPA AR § 100 applies to audit and financial review services, whereas the instant malpractice action involves Defendants' performance of tax services.  (*See* Cobb Dep. at 105:4-22.)   Thus, Defendants assert, Cobb's liability or causation views are not derived from any reliable or accepted application of AICPA AR § 100 to this case.

However, Defendants' argument misunderstands Cobb's application of AICPA AR § 100 in this action.  Cobb does not opine that AICPA AR § 100 applied to Defendants' tax preparation services specifically.  (*See* Cobb Report. at 12.)  Instead, Cobb explained during his deposition that, pursuant to its audit and financial review services of Cortec, Defendants had an independent duty to investigate and obtain a general understanding of Cortec's organization and financial dealings.  (Cobb Dep. at 106:6-17.)   That knowledge, Cobb asserts, should have informed Defendants' tax preparation services for Miksic and would have prevented many of the tax filings errors

at issue. (*Id.* at 106:6-109:8.)  As the Court does not find that this distinction would confuse a jury or would render Cobb's opinion unreliable, the Court will deny Defendants' motion to exclude Cobb's expert testimony.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendants' Motion for Summary Judgment [Docket No. 33] is **GRANTED in part** and **DENIED in part** as follows:

a.     To the extent the motion seeks to preclude Miksic from recovering as damages abated Form 5471 penalties, payment for delinquent taxes, and attorneys' fees expended to bring the instant action, the motion is **GRANTED.**

b.     In all other respects, the motion is **DENIED.**

2.     Defendants' Motion to Exclude Expert Witness Testimony [Docket No. 37] is **DENIED**.

DATED:  March 28, 2017                    ___s/ *John R. Tunheim*___
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                               Chief Judge
                                        United States District Court